Stuart J. Baskin (pro hac vice)
    sbaskin@shearman.com
Jaculin Aaron (SBN 133983)
    jaaron@shearman.com
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Tel: (212) 848-4000
Fax:  (212) 848-7179

*Attorneys for Defendants James A. Bell;
Crandall C. Bowles; Stephen B. Burke;
James S. Crown; Timothy P. Flynn; Ellen V.
Futter; Laban P. Jackson, Jr.; David C.
Novak; Lee R. Raymond; and William C.
Weldon*

Gary W. Kubek (pro hac vice)
    gwkubek@debevoise.com
Johanna Skrzypczyk (pro hac vice)
    jnskrzyp@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000

*Attorneys for Nominal Defendant
JPMorgan Chase & Co. and Defendants
James Dimon, William B. Harrison, Jr., and
Robert I. Lipp*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re JPMORGAN CHASE DERIVATIVE LITIGATION<br><br>This Document Relates To:  All Actions. | Master File No. 2:13-cv-02414-KJM-EFB<br><br>DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2), 12(b)(3), 12(b)(6), AND 23.1 OR, IN THE ALTERNATIVE, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §§ 1404(a) and 1406(a)<br><br>Date:          September 12, 2014<br>Time:         10:00 a.m.<br>Courtroom:  3<br>Judge:        Hon. Kimberly J. Mueller |

DEFS.' MOT. TO DISMISS COMPL.          MASTER FILE NO.
                                                                    2:13-cv-02414-KJM-EFB

1

## <u>TABLE OF CONTENTS</u>

2                                                                                                                                          **Page**

3    TABLE OF AUTHORITIES ...............................................................................................iii

4    INTRODUCTION.............................................................................................................2

5    FACTUAL BACKGROUND ...........................................................................................3

6

7                A.       The Defendants ...............................................................................................3

8                B.       The Alleged Wrongdoing.................................................................................3

9    ARGUMENT ....................................................................................................................4

10        I.       THERE IS NO PERSONAL JURISDICTION OVER THE DEFENDANTS
                   WITH RESPECT TO THE STATE LAW CLAIMS.............................................4

11

12                A.       General Jurisdiction Is Unavailable ..........................................................5

13                B.       Specific Jurisdiction Is Unavailable ..........................................................5

14        II.      PLAINTIFFS' NEWLY ADDED SECTION 14(a) CLAIM FAILS TO
                   STATE A CLAIM AND CANNOT SERVE AS A BASIS FOR
                   PERSONAL JURISDICTION ................................................................................8

15

16                A.       The Section 14(a) Claim Fails To State a Claim and Should Be
                           Dismissed ................................................................................................8

17                    1.       The Complaint Does Not Plead Causation......................................9

18                    2.       The Complaint Does Not Allege Material Misrepresentations .....11

19                    3.       The Complaint Does Not Plead the Section 14(a) Claim with
                               the Particularity Required by the PSLRA ...................................13

20

21                B.       The Section 14(a) Claim Cannot Provide a Basis for Personal
                           Jurisdiction ............................................................................................14

22

23        III.     VENUE IS IMPROPER IN THIS DISTRICT WITH RESPECT TO THE
                   STATE LAW CLAIMS .......................................................................................16

24        IV.      THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
                   ALLEGE THAT DEMAND ON THE BOARD IS EXCUSED..........................18

25

26                A.       Collateral Estoppel Precludes Plaintiffs from Relitigating Demand
                           Futility with Respect to the State Law Claims.........................................18

27

28

---

B. Even if Collateral Estoppel Did Not Preclude Plaintiffs from Relitigating the Issue of Demand Futility, Plaintiffs Have Failed To Plead that Demand on the Board Is Excused ...................................21

1. Demand Is Required Unless the Complaint Alleges Particularized Facts Raising a Reasonable Doubt that a Majority of the Directors Could have Independently and Disinterestedly Considered the Demand ......................................21

2. Plaintiffs Fail to Plead that a Majority of the Board Members Lack Independence or Have an Interest in the Transactions at Issue......................................................................................................22

3. Plaintiffs Fail to Plead with Particularity that a Majority of the Board Face a Substantial Likelihood of Liability, Especially in View of the Section 102(b)(7) Exculpatory Clause in JPMorgan's Charter.......................................24

   a. The Complaint Does Not Plead with Particularity a Claim for Breach of the Fiduciary Duty of Care, and Any Such Claim Is Barred by the Exculpatory Provision in JPMorgan's Charter ...........................................25

   b. The Complaint Fails To Plead with Particularity that the Director Defendants Face a Substantial Likelihood of Liability for Breach of the Fiduciary Duty of Loyalty Based on a Failure of Oversight ...........................................26

      i. The Complaint Does Not Allege that JPMorgan "Utterly Failed" To Implement a System of Internal Controls, But Instead Affirms that Such a System Was in Place…………………………..........27

      ii. The Complaint Fails To Allege that the Director Defendants Consciously Ignored "Red Flags"...........28

   c. The Complaint Does Not Allege with Particularity that the Director Defendants Face a Substantial Likelihood of Liability for Breach of Fiduciary Duty Based on Alleged Misrepresentations ...................................................32

4. Plaintiffs' Remaining State Law Claims Do Not Give Rise to a Substantial Likelihood of Director Liability .............................33

V. IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. §§ 1404(a) AND 1406(a)....................................................................34

A. Public Factors Favor Transfer to the SDNY ............................................35

B. Private Factors Favor Transfer to the SDNY ............................................37

CONCLUSION ....................................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919 (N.D. Cal. 2010)........22, 23, 26, 33

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004) ............14, 15, 16

*Ader v. Belimed, Inc.*, 2012 WL 3234206 (E.D. Cal. Aug. 6, 2012) .........................................37, 39

*Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142 (E.D. Cal. 2010)......................................34

*Allen v. Similasan Corp.*, 2013 WL 2120825 (S.D. Cal. May 14, 2013)...........................................15

*In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 174119 (C.D. Cal. Jan. 16, 2013) ....................12

*In re Am. Int'l Grp., Inc. Deriv. Litig.*, 415 F. App'x 285 (2d Cir. 2011)......................................22

*Anderson v. McGrath*, 2012 WL 5381406 (D. Ariz. Nov. 1, 2012) ...............................................14

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *abrogated on other grounds by
    Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)........................................................................24, 25

*Asbestos Workers Philadelphia Pension Fund v. Bell*, 43 Misc. 3d 1024(A), 2014
    WL 1272280 (N.Y. Sup. Ct. Mar. 28, 2014)...................................................................2, 18, 20

*In re Autodesk, Inc., S'holder Deriv. Litig.*, 2008 WL 5234264 (N.D. Cal. Dec. 15,
    2008)..................................................................................................................................22, 26

*Balanced Body Univ., LLC v. Zahourek Sys., Inc.*, 2014 WL 744105 (E.D. Cal. Feb.
    24, 2014)....................................................................................................................................36

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) ............................................................................7

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040
    (Del. 2004) ...................................................................................................................21, 22, 24

*In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.*, 763 F. Supp. 2d 423 (S.D.N.Y.
    2011)............................................................................................................................................2

*Beene v. Beene*, 2012 WL 3583021 (N.D. Cal. Aug. 20, 2012) .................................................6, 24

*In re Bidz.com, Inc. Deriv. Litig.*, 773 F. Supp. 2d 844 (C.D. Cal. 2011) ....................................34

*Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157 (3d Cir. 2012) ...........................................17

*Braddock v. Zimmerman*, 906 A.2d 776 (Del. 2006)......................................................................3

*Brautigam v. Blankfein*, 2014 WL 1244701 (S.D.N.Y. Mar. 29, 2014) ..........................................33

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)..................................................................22, 24, 34

*Brown v. Abercrombie & Fitch Co.*, 2014 WL 715082 (N.D. Cal. Feb. 14, 2014) ............36, 37, 39

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979) .......................................................12

*In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996) ...............................27

*Carpenters Pension Trust Fund v. Barclays PLC*, 2014 WL 1646511 (2d Cir. Apr.
   25, 2014)..........................................................................................................13

*Carroll ex rel. Pfizer, Inc. v. McKinnell*, 859 N.Y.S.2d 901, 2008 WL 731834 (Sup.
   Ct. Mar. 17, 2008) ........................................................................................19, 20

*Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*,
   964 F. Supp. 2d 1128 (N.D. Cal. 2013) ..............................................................12

*In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106 (Del. Ch. 2009) ..................21, 27, 28, 31

*In re Citigroup Inc. S'holders Litig.*, 2003 WL 21384599 (Del. Ch. June 5, 2003),
   *aff'd*, 839 A.2d 666 (Del. 2003) ........................................................................28

*City of Roseville Emps.' Ret. Sys. v. Dimon*, Index No. 650294/2012 (N.Y. Sup. Ct.
   July 12, 2012)....................................................................................................2

*In re CNET Networks, Inc.*, 483 F. Supp. 2d 947 (N.D. Cal. 2007)....................................31

*In re Computer Scis. Corp. Deriv. Litig.*, 2007 WL 1321715 (C.D. Cal. Mar. 26,
   2007)...............................................................................................................22

*In re Computer Scis. Corp. Deriv. Litig.*, 244 F.R.D. 580 (C.D. Cal. 2007), *aff'd*,
   310 Fed. App'x 128 (9th Cir. 2009) ......................................................................26

*Cont'l Grain Co. v. FBL-585*, 364 U.S. 19 (1960) .......................................................36

*In re Corinthian Colls., Inc. S'holder Deriv. Litig.*, 2012 WL 8502955 (C.D. Cal.
   Jan. 30, 2012)....................................................................................................23

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2012 WL 1322884 (C.D.
   Cal. Apr. 26, 2012)..............................................................................................7

*Ctr. for Food Safety v. Vilsack*, 2011 WL 996343 (N.D. Cal. Mar. 17, 2011) ...............36

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ............................................................5

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977) ....................6

*David B. Shaev Profit Sharing Account v. Armstrong,* 2006 WL 391931 (Del. Ch. Feb. 13, 2006), *aff'd*, 911 A.2d 802 (Del. 2006) .......................................................28

*Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152 (9th Cir. 2012) ......................................26

*Davis v. Social Serv. Coordinators, Inc.*, 2013 WL 4483067 (E.D. Cal. Aug. 19, 2013)...............................................................................................................................37, 38

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ...........34, 35

*Desaigoudar v. Meyercord*, 223 F.3d 1020 (9th Cir. 2000)..............................................11

*Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007) ...............................................21, 27

*In re Diamond Foods, Inc. Deriv. Litig.*, 2012 WL 1945814 (N.D. Cal. May 29, 2012)..............................................................................................................................10, 11

*In re Dow Chem. Co. Deriv. Litig.*, 2010 WL 66769 (Del. Ch. Jan. 11, 2010) .........22, 31, 32

*Duffer v. United Cont'l Holdings, Inc.*, 2013 WL 2147802 (S.D. Cal. May 16, 2013)..............................................................................................................................35, 39

*ECA, Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187206 (2d Cir. 2009) ..........................................................................................................12

*Echols v. Morpho Detection, Inc.*, 2013 WL 1501523 (N.D. Cal. Apr. 11, 2013) .............18

*Fabus Corp. v. Asiana Express Corp.*, 2001 WL 253185 (N.D. Cal. Mar. 5, 2001) ...........37

*In re First Solar, Inc. Deriv. Litig.*, 2013 WL 817132 (D. Del. Mar. 4, 2013).................17

*Fisher v. Kanas*, 467 F. Supp. 2d 275 (E.D.N.Y. 2006) .................................................13

*Foster v. Nationwide Mut. Ins. Co.*, 2007 WL 4410408 (N.D. Cal. Dec. 14, 2007).......38, 39

*Freedman v. Adams*, 2012 WL 1345638 (Del. Ch. Mar. 30, 2012), *aff'd*, 58 A.3d 414 (Del. 2013) ...................................................................................................................24

*Gaines v. Haughton*, 645 F.2d 761 (9th Cir. 1981), *overruled in part on other grounds, In re McLinn*, 739 F.2d 1395 (9th Cir. 1984).........................................................11, 12

*Gamboa v. USA Cycling, Inc.*, 2013 WL 1700951 (C.D. Cal. Apr. 18, 2013) ...................17

*Gen. Elec. Co. v. Cathcart*, 980 F.2d 927 (3d Cir. 1992) ...........................................9, 10

*In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104 (Del. Ch. Oct. 12, 2011).............................................................................................................................24, 26

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011) .....................5

*In re Google, Inc. S'holder Deriv. Litig.*, 2012 WL 1611064 (N.D. Cal. May 8, 2012)..................................................................................................................31

*Grobow v. Perot*, 539 A.2d 180 (Del. 1988), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ......................................................23

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ............................................................35

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) .................................................22, 28

*Hall v. Nelson Aircraft Sales, Inc.*, 2006 WL 624907 (E.D. Cal. Mar. 9, 2006) ...........14

*Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426 (S.D.N.Y. 2005) .................2, 31

*Harold Grill 2 IRA v. Chenevert*, 2013 WL 3014120 (Del. Ch. June 24, 2013) ...........30

*Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208 (S.D. Cal. 2013)..................36, 40

*Henik ex rel. LaBranche & Co. v. LaBranche*, 433 F. Supp. 2d 372 (S.D.N.Y. 2006)..................................................................................................................19, 20

*Henson v. Fid. Nat'l Fin., Inc.*, 2014 WL 641978 (E.D. Cal. Feb. 18, 2014) ...........35, 36

*Hoefer v. U.S. Dep't of Commerce*, 2000 WL 890862 (N.D. Cal. June 28, 2000) ....38, 40

*Hope v. Otis Elevator Co.*, 389 F. Supp. 2d 1235 (E.D. Cal. 2005) ...............................16

*In re HP Deriv. Litig.*, 2012 WL 4468423 (N.D. Cal. Sept. 25, 2012)...............9, 10, 21, 33

*Hulliung v. Bolen,* 548 F. Supp. 2d 336 (N.D. Tex. 2008) ..............................................9

*In re iBasis, Inc. Deriv. Litig.*, 532 F. Supp. 2d 214 (D. Mass. 2007) ...........................10

*Israni v. Bittman*, 473 Fed. App'x 548 (9th Cir. 2012)............................................21, 23

*Italian Colors Rest. v. Am. Express*, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003)...................39

*IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993) ......................15

*J.I. Case Co. v. Borak*, 377 U.S. 426 (1964)...................................................................12

*Johns v. Panera Bread Co.*, 2008 WL 2811827 (N.D. Cal. July 21, 2008)...............38, 39

*Johnson v. Dynamics Info. Tech., Inc.*, 675 F. Supp. 2d 236 (D.N.H. 2009)..................17

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ......................................35

*In re JPMorgan Chase & Co. Deriv. Litig.*, 2014 WL 1297824 (S.D.N.Y. Mar. 31, 2013)..................................................................................................2, 24, 31

*In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808 (Del. Ch. 2005),
    *aff'd on other grounds*, 906 A.2d 766 (Del. 2006) ................................................2, 24

*Kanter v. Barella,* 388 F. Supp. 2d 474 (D.N.J. 2005), *aff'd,* 489 F.3d 170 (3d Cir.
    2007) ...................................................................................................................28

*Karam v. Corinthian Colls., Inc.*, 2012 WL 8499135 (C.D. Cal. Aug. 20, 2012) .........................13

*Kelley v. Rambus*, 2008 WL 5170598 (N.D. Cal. Dec. 9, 2008), *aff'd,* 384 F. App'x
    570 (9th Cir. 2010) ...........................................................................................10, 11

*Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947)..............................................37

*In re Lear Corp. S'holder Litig.*, 967 A.2d 640 (Del. Ch. 2008) ......................................25, 26

*Lengacher v. Reno*, 75 F. Supp. 2d 515 (E.D. Va. 1999) ...................................................17

*LeRoy v. Great W. United Corp.*, 443 U.S. 173 (1979) ....................................................17

*Leroy-Garcia v. Brave Arts Licensing*, 2013 WL 4013869 (N.D. Cal. Aug. 5, 2013) .............17, 38

*Levin ex rel. Tyco Int'l Ltd. v. Kozlowski*, 831 N.Y.S.2d 354, 2006 WL 3317048
    (Sup. Ct. Nov. 14, 2006), *aff'd,* 357 N.Y.S.2d 987 (App. Div. 2007) .................................19, 20

*Levine v. Smith*, 591 A.2d 194 (Del. Ch. 1991), *overruled on other grounds by*
    *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)...........................................................21, 22

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987)............................................................37

*Malone v. Clark Nuber, P.S.*, 2008 WL 4279502 (W.D. Wash. Sept. 12, 2008),
    *aff'd,* 445 Fed. App'x 940 (9th Cir. 2011) ...........................................................14, 15

*Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001) ....................................................26, 32

*Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373 (1985) ...................................19

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) .............................5

*In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ....................9, 13

*Menken v. Emm*, 503 F.3d 1050 (9th Cir. 2007) .........................................................5, 7

*In re Morgan Stanley Deriv. Litig.*, 542 F. Supp. 2d 317 (S.D.N.Y. 2008) ...........................13

*Multimin USA, Inc. v. Walco Int'l, Inc.*, 2006 WL 1046964 (E.D. Cal. Apr. 11,
    2006).............................................................................................................4, 16

*N. Am. Lubricants Co. v. Terry*, 2012 WL 1108918 (E.D. Cal. Apr. 2, 2012) ...........................5

*N.C. Mut. Life Ins. Co. v. McKinley Fin. Serv., Inc.*, 386 F. Supp. 2d 648
(M.D.N.C. 2005) ........................................................................................................15

*In re Oracle Corp. Deriv. Litig.*, 2011 WL 5444262  (N.D. Cal. Nov. 9, 2011) ............................30

*Orman v. Cullman*, 794 A.2d 5 (Del. Ch. 2002) ........................................................................23

*Piedmont Label Co. v. Sun Garden Packing Co.*, 589 F.2d 491 (9th Cir. 1979) ............................16

*Piper Aircraft Co. v. Reyno*, 454 U.S. 241 (1981) ........................................................................34

*Rahbari v. Oros*, 732 F. Supp. 2d 367 (S.D.N.Y. 2010) ................................................................33

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ........................................................................22

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir.
1997) ........................................................................................................................15

*Robotti & Co., LLC v. Liddell*, 2010 WL 157474 (Del. Ch. Jan. 14, 2010) ..................................23

*Saginaw Police & Fire Pension Fund v. Hewlett-Packard Co.*, 2012 WL 967063
(N.D. Cal. Mar. 21, 2012) ........................................................................................28

*In re SAIC Inc. Deriv. Litig.*, 948 F. Supp. 2d 366 (S.D.N.Y. 2013), *aff'd*, 2014 WL
322055 (2d Cir. Jan. 30, 2014) ..........................................................................29, 32

*San Mateo Cty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d
1356 (9th Cir. 1992) ................................................................................................15

*Sanchez v. Crown Equip. Corp.*, 141 F.3d 1178, 1998 WL 84152 (9th Cir. 1998) ........................19

*Sarandi v. Breu*, 2009 WL 2871049 (N.D. Cal. Sept. 2, 2009) ............................................17, 35, 38

*Schwartzman v. McGavick*, 2007 WL 1174697 (W.D. Wash. Apr. 19, 2007) ................................11

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ......................................5

*Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985)....................................................14

*SEC v. Mercury Interactive, LLC*, 2008 WL 4544443 (N.D. Cal. Sept. 30, 2008) ........................11

*SEC v. Mercury Interactive, LLC*, 2009 WL 2984769 (N.D. Cal. Sept. 15, 2009) ..............9, 10, 11

*Shari's Berries Int'l v. Mansonhing*, 2006 WL 2382263 (E.D. Cal. Aug. 17, 2006) ...............18, 35

*Siegel v. Bell*, So-Ordered Oral Argument Tr., Index No. 652151 (N.Y. Sup. Ct.
Cnty. Apr. 23, 2013), Dkt. No. 45........................................................................2, 20

*Siegal v. J.P. Morgan Chase & Co.*, 2012 WL 8161652 (N.Y. Sup. Ct. Cnty. Aug. 16, 2012), *aff'd*, 960 N.Y.S.2d 104 (N.Y. App. Div. 2013), *appeal denied*, 990 N.E.2d 135 (N.Y. 2013) ......................................................................2, 18, 20

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008) .....................21

*Simon v. Becherer*, 775 N.Y.S.2d 313 (App. Div. 2004) ...........................................2, 31

*South v. Baker*, 62 A.3d 1 (Del. Ch. 2012) ...................................................28, 29, 31

*Sprewell v. Golden State Warriors,* 266 F.3d 979 (9th Cir. 2001).................................22

*Steinberg v. Dimon*, No. 14-cv-688 (S.D.N.Y.) ......................................................36

*Steiner v. Meyerson*, 1995 WL 441999 (Del. Ch. July 19, 1995) .................................33

*Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362 (Del. 2006)..............25, 26, 27, 30

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008)......................12

*Taylor v. Kissner*, 893 F. Supp. 2d 659 (D. Del. 2012) ............................................34

*In re Teledyne Def. Contract. Deriv. Litig.*, 849 F. Supp. 1369 (C.D. Cal. 1993) ...............11

*Tomczak v. Morton Thiokol, Inc.*, 1990 WL 42607 (Del. Ch. Apr. 5, 1990) ....................25

*Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979)............................................12

*In re Transkaryotic Therapies, Inc.*, 954 A.2d 346 (Del. Ch. 2008)...............................32

*In re VeriFone Holdings, Inc. S'holder Deriv. Litig.*, 2009 WL 1458233 (N.D. Cal. May 26, 2009) ...................................................................................31, 32

*In re Verisign, Inc., Deriv. Litig.*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...................9, 10

*Vernon v. Qwest Commc'ns Int'l*, 643 F. Supp. 2d 1256 (W.D. Wash. 2009) ..................40

*In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27 (Del. 2006)......................................26

*In re Walt Disney Co. Deriv. Litig.,* 907 A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006) ............................................................................................33

*Wandel v. Dimon*, So-Ordered Oral Argument Tr., Index  No. 651830/2012 (N.Y. Sup. Ct.  Jan. 23, 2014), Dkt. No. 78 .............................................................2, 31

*In re Wireless Facilities, Inc. Deriv. Litig.*, 562 F. Supp. 2d 1098 (S.D. Cal. 2008).............7

*Witt Co. v. RISO, Inc.*, 948 F. Supp. 2d 1227 (D. Or. 2013) .......................................15

*Young v. Colgate-Palmolive Co.*, 790 F.2d 567 (7th Cir. 1986) ........................................7

*Zumba Fitness, LLC v. Brage*, 2011 WL 4732812 (C.D. Cal. Oct. 6, 2011) ...................18

**Statutes and Rules**

Securities Exchange Act § 14(a) (1934) ............................................................ *passim*

SEC Rule 14a .....................................................................................13

Securities Exchange Act § 27 (1934) ................................................................14, 16

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 .................................8, 9, 13

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1) ..................................9

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(2)(A) ..........................9, 13

15 U.S.C. § 78aa(a) ...............................................................................14

28 U.S.C. § 1391(b)(2) .............................................................................16

28 U.S.C. § 1404(a) ..............................................................1, 3, 34, 36, 40

28 U.S.C. § 1406(a) .........................................................................1, 16, 34

28 U.S.C. § 1738 ..................................................................................19

Fed. R. Civ. P. 12(b)(2) ............................................................................1

Fed. R. Civ. P. 12(b)(3) .........................................................................1, 16

Fed. R. Civ. P. 12(b)(6) ............................................................................1

Fed. R. Civ. P. 23.1 .............................................................................1, 8

Fed. R. Civ. P. 23.1(b)(3) ......................................................................21, 22

Fed. R. Evid. 201(a)(2) ...........................................................................26

Fed. R. Evid. 201(b) ..............................................................................36

8 Del. C. § 102(b)(7) ..................................................................24, 25, 26, 32

Del. Ch. Ct. R. 23.1 ..............................................................................31

1  **Other Authorities**

2  Federal Court Management Statistics, District Courts (Administrative Office of the
        U.S. Courts, Dec. 2013), available at
3        http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-
        courts-december-2013.aspx.........................................................................................36

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 12, 2014, at 10:00 a.m., or as soon thereafter as the matter may be heard in the United States District Court for the Eastern District of California, located at 501 I Street, Sacramento, California, nominal defendant JPMorgan Chase & Co. ("JPMorgan" or, with its subsidiaries, the "Company") and the individual defendants, through their undersigned counsel will, and hereby do, move to dismiss the Consolidated Shareholder Derivative Complaint ("Complaint" or "Compl.") pursuant to Rule 23.1 of the Federal Rules of Civil Procedure for failure to make a pre-suit demand on JPMorgan's Board of Directors and pursuant to Rule 12(b)(3) for improper venue; and the individual defendants move to dismiss the Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim with respect to the claim alleged under Section 14(a) of the Securities Exchange Act of 1934.  In the alternative, the nominal defendant and the individual defendants move to transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1406(a) or § 1404(a).

The motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of Anthony J. Horan, the Declaration of Stuart J. Baskin, and exhibits attached thereto, the complete files and records in this action, and such additional material and arguments as may be considered at the hearing.

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **INTRODUCTION**

3        This action must be dismissed because the Complaint does not allege facts sufficient to

4    excuse Plaintiffs' failure to make the requisite demand upon the Company's Board of Directors

5    prior to bringing these purported derivative claims against certain current and former directors of

6    JPMorgan (the "Defendants").  On ten previous occasions, courts that have considered this issue

7    have unanimously reached the conclusion that the shareholder plaintiff failed to allege that

8    demand on the JPMorgan Board would be futile and was thus excused.[1]  Indeed, two of these

9    cases dealt with the exact same subject matter as this one – the issuance by the Company of

10   residential mortgage-backed securities ("RMBS") – and under controlling New York law those

11   prior dismissals relating to RMBS collaterally estop Plaintiffs from relitigating the demand-

12   excused issue for a third time.

13       This Court need not reach the demand-excused issue in order to dispose of this action,

14   however, since both jurisdiction and venue are lacking.  The gist of the Complaint is that

15   Defendants breached their fiduciary duties under Delaware law in connection with the Company's

16   RMBS-related activities.  Absent a viable federal claim, there is no basis upon which this Court

17   may exercise jurisdiction over any of the Defendants:  not one of them is a California resident; no

18   board meeting (or act or omission arising therefrom) occurred in California; and any injury to the

19   only relevant injured party, JPMorgan itself as the putative plaintiff in interest, would have

20   occurred in New York, where the firm is headquartered, and not in California.  For similar

---

21

22   [1] *See In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.*, 763 F. Supp. 2d 423 (S.D.N.Y. 2011);
     *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808 (Del. Ch. 2005), *aff'd on other*

23   *grounds*, 906 A.2d 766 (Del. 2006); *Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426
     (S.D.N.Y. 2005); *In re JPMorgan Chase & Co. Deriv. Litig.*, 2014 WL 1297824 (S.D.N.Y. Mar.

24   31, 2013); *Simon v. Becherer*, 775 N.Y.S.2d 313 (App. Div. 2004); *Siegal J.P. Morgan Chase &*
     *Co.*, 2012 WL 8161652 (N.Y. Sup. Ct. Aug. 16, 2012), *aff'd*, 960 N.Y.S.2d 104 (App. Div.

25   2013), *appeal denied*, 990 N.E.2d 135 (N.Y. 2013); *Siegel v. Bell*, So-Ordered Oral Argument
     Tr., Index No. 652151 (N.Y. Sup. Ct. Apr. 23, 2013), Dkt. No. 45; *Asbestos Workers Phila.*

26   *Pension Fund v. Bell*, 43 Misc. 3d 1024(A), 2014 WL 1272280 (N.Y. Sup. Ct. Mar. 28, 2014);
     *Wandel v. Dimon*, So-Ordered Oral Argument Tr., Index  No. 651830/2012 (N.Y. Sup. Ct.  Jan.

27   23, 2014), Dkt. No. 78); *City of Roseville Emps.' Ret. Sys. v. Dimon*, Index No. 650294/2012
     (N.Y. Sup. Ct. July 12, 2012).  The two RMBS-related actions were *Siegal* and *Asbestos*

28   *Workers*.

---

DEFS.' MOT. TO DISMISS COMPL.          2          MASTER FILE NO.
                                                   2:13-cv-02414-KJM-EFB

1  reasons, venue is lacking.  Plaintiffs' efforts to cure these deficiencies by adding  a derivative

2  federal proxy claim under Section 14(a) of the Exchange Act is unavailing not only because it fails

3  to plead demand excusal but also because it fails to state a claim and is insufficient to provide a

4  basis for pendent personal jurisdiction over the state law claims.

5       Finally, if the Court does not dismiss this action, fairness and efficiency support transfer

6  under Section 1404(a) to the Southern District of New York ("SDNY"), where a parallel

7  derivative suit raising the same RMBS-related claims is underway.  The New York case has

8  already been consolidated with yet another derivative action against the JPMorgan Board and is

9  proceeding on an accelerated briefing schedule that will decide the same demand-excused issue

10  raised here.  If not dismissed, this action should be transferred to the SDNY on the grounds that

11  transfer will serve the convenience of the parties and witnesses and the interests of justice,

12  particularly by avoiding the possibility of inconsistent legal and factual determinations.

13                                **FACTUAL BACKGROUND**

14       **A.      The Defendants**

15       Plaintiffs purport to bring this action on behalf of Nominal Defendant JPMorgan, a

16  Delaware corporation with its principal place of business in New York City.  ¶ 23.  The

17  Defendants are current and former members of the Board of Directors of JPMorgan.  ¶¶ 25-37.

18  All of the Defendants who are currently serving on the Board (the "Director Defendants") are

19  outside, non-management directors, with the exception of James Dimon, who is JPMorgan's Chief

20  Executive Officer and Chairman.  *Id*.  As of the date the Complaint was filed on March 3, 2014

21  (the operative date for assessing demand futility, *see Braddock v. Zimmerman*, 906 A.2d 776, 785

22  (Del. 2006)), JPMorgan's 11-member Board included 10 non-management directors, two of whom

23  joined the Board after the events at issue and are not named as defendants.  ¶¶ 26-29, 32, 35-37.[2]

24       **B.      The Alleged Wrongdoing**

25       The Complaint arises out of the Company's purchase and origination of residential

26  mortgages and underwriting of RMBS from 2005 through 2007.  ¶¶ 1, 116.  Plaintiffs allege that

27  _____
[2] Linda B. Bammann and Michael A. Neal, who joined the Board on September 13, 2013, and
28  January 3, 2014, respectively, are not named as defendants.

DEFS.' MOT. TO DISMISS COMPL.          3          MASTER FILE NO.
                                                   2:13-cv-02414-KJM-EFB

1   JPMorgan has suffered losses from settlements concerning RMBS with the Department of Justice,

2   several state attorneys general, and other federal regulators, and may suffer additional losses from

3   possible future RMBS-related settlements or lawsuits.  ¶¶ 4, 5, 14, 188, 190.  The Complaint

4   alleges that in order to increase profitability the Company made an "aggressive change" in

5   business strategy to originate and securitize RMBS,  ¶¶ 1, 8, 9, 116-19, and Company employees

6   evaded the Company's controls by purchasing and originating mortgages and securitizing RMBS

7   that did not comply with the Company's underwriting guidelines or the Company's

8   representations in RMBS registration statements.  ¶¶ 9-12, 139-53, 160-75.  The Complaint claims

9   that the Defendants knew these representations and warranties were inaccurate (¶¶ 176-78), but

10  alleges no particularized facts to support this bare conclusion (as discussed in Point IV below).

11  The Complaint alleges that as a result of the alleged misrepresentations in the sale of the RMBS,

12  the Company has incurred substantial losses, including amounts paid to settle claims by federal

13  and state regulators and private parties.  ¶¶ 14, 187-90.

14          In support of the derivative Section 14(a) claim, the Complaint alleges that the Company

15  was harmed because JPMorgan's 2011 and 2012 proxy statements "falsely stated that the

16  Company's Board of Directors maintained adequate and effective risk oversight over management

17  and failed to disclose to the Company's shareholders material deficiencies in the Board's oversight

18  of management and internal controls."  ¶ 306.  As a result, the Complaint alleges, shareholders

19  voted to elect or re-elect directors and rejected a shareholder proposal requiring the Chairman of

20  the Board to be an independent outside director based on allegedly incomplete information.  *See*

21  ¶¶ 193, 194, 197, 199-200, 306-07.

22                                          **ARGUMENT**

23  **I.      THERE IS NO PERSONAL JURISDICTION OVER THE DEFENDANTS WITH
            RESPECT TO THE STATE LAW CLAIMS**

24          This Court lacks personal jurisdiction over each of the Defendants with respect to the state

25  law claims alleged in the Complaint.  As demonstrated below, Plaintiffs cannot sustain their

26  burden to establish jurisdiction.  *Multimin USA, Inc. v. Walco Int'l, Inc.*, 2006 WL 1046964, at *2

27  (E.D. Cal. Apr. 11, 2006) ("When a defendant files a motion to dismiss based on lack of personal

28

DEFS.' MOT. TO DISMISS COMPL.          4          MASTER FILE NO.
                                                    2:13-cv-02414-KJM-EFB

1  jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction to avoid

2  dismissal"); *see also Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007).[3]  Accordingly, there is

3  no basis for the Court to proceed with respect to the dominant state law claims.

4       **A.**    **General Jurisdiction Is Unavailable**

5       To be subject to general jurisdiction, an individual's activities in a state must be "'so

6  substantial and of such a nature as to justify suit against it on causes of action arising from

7  dealings entirely distinct from those activities.'"  *Goodyear Dunlop Tires Operations, S.A. v.*

8  *Brown*, 131 S. Ct. 2846, 2849 (2011) (citation omitted).  "For an individual, the paradigm forum

9  for the exercise of general jurisdiction is the individual's domicile . . . ."  *Id.* at 2853-54.  The

10  Supreme Court recently confirmed the limited scope of general jurisdiction over non-resident

11  defendants in *Daimler AG v. Bauman*, 134 S. Ct. 746, 761-62 (2014), holding that general

12  jurisdiction usually can be asserted against a corporation only in its state of incorporation or

13  principal place of business.  Here, the Complaint alleges that each of the Defendants is a citizen of

14  a state other than California (¶¶ 25-37) and does not purport to allege any other basis for general

15  jurisdiction over the Defendants.

16       **B.**    **Specific Jurisdiction Is Unavailable**

17       Nor is there specific jurisdiction over any of the Defendants.  A court has specific

18  jurisdiction over a defendant with respect to tort claims when (1) the defendant purposefully

19  directed his activities towards the state, (2) the plaintiff's claim arises out of or relates to those

20  activities, and (3) the assertion of personal jurisdiction is reasonable and fair.  *Schwarzenegger v.*

21  *Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  A plaintiff bears the burden of

22  establishing the first two elements of the test.  *Id.*  Only if the plaintiff succeeds in carrying its

23  burden with respect to those elements does the burden shift to the defendant to demonstrate that

24  assertion of personal jurisdiction would be unreasonable.  *Menken*, 503 F.3d at 1057.  At its core,

25  [3] "Questions of personal jurisdiction ultimately turn on concepts of due process.  When no federal
statute authorizes personal jurisdiction, this court must apply California law.  As California's long

26  arm statute is coextensive with federal due process requirements, the jurisdictional analysis is the
same."  *N. Am. Lubricants Co. v. Terry*, 2012 WL 1108918, at *4 (E.D. Cal. Apr. 2, 2012)

27  (Mueller, J.) (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir.
2011)).

28   

---

1    "the issue whether jurisdiction will lie turns on an evaluation of the nature and quality of the

2    defendant's contacts in relation to the cause of action."  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,

3    557 F.2d 1280, 1287 (9th Cir. 1977).

4            The alleged actions or inactions of the JPMorgan Board in connection with the issuance of

5    RMBS – which is the focus of the inquiry – are not alleged to have occurred in California.  Indeed,

6    the JPMorgan Board has not held a meeting in California since May 2000, well before the relevant

7    time period at issue here.  Declaration of Anthony J. Horan ("Horan Decl.") ¶ 7.  Rather, the

8    JPMorgan Board almost always meets in New York.  *Id.*  Moreover, Defendants did not

9    "purposefully direct" activities toward California in relation to the state law claims, which are not

10   brought on behalf of, and do not seek relief for, RMBS purchasers or homeowners in California.

11   These are *derivative* claims purportedly asserted on behalf of JPMorgan, and the only allegedly

12   injured party is JPMorgan itself, not any California citizen.  Any purposeful activity in which

13   Defendants allegedly engaged occurred in and was directed to JPMorgan headquartered in New

14   York, which is why derivative suits almost always are heard in the state where a corporation has

15   its principal place of business or is incorporated.

16           This principle is illustrated by *Beene v. Beene*, where the court found no specific

17   jurisdiction over derivative claims brought by a California shareholder against the Tennessee

18   resident officers and directors of a Tennessee corporation.  2012 WL 3583021, at *6 (N.D. Cal.

19   Aug. 20, 2012).  The court reasoned that the derivative claims were asserted on behalf of the

20   company, and thus the conduct at issue "would have been targeted at [the company] and the harm

21   would have been felt by [the company]."  *Id.*  Accordingly, the court held, "to the extent Plaintiff

22   brings derivative claims, he fails to meet his burden to show the Individual Defendants

23   purposefully directed their activities at Plaintiff or at California."  *Id.*

24           No doubt investors based in California – along with purchasers in many other states and

25   countries – bought some of the RMBS that the Company underwrote and issued in 2005-2007.

26   But to the extent that the Defendants allegedly failed to monitor those RMBS activities properly,

27   and thereby harmed JPMorgan, those actions and omissions were not purposefully directed to

28   California any more than to Ohio or Texas or Germany.  Plaintiffs' argument for specific

DEFS.' MOT. TO DISMISS COMPL.            6                MASTER FILE NO.
                                                          2:13-cv-02414-KJM-EFB

jurisdiction would equally allow suit to be brought anywhere and everywhere.  That is not the law.  *See Young v. Colgate-Palmolive Co*., 790 F.2d 567, 572 (7th Cir. 1986) (where Illinois shareholder brought derivative action against non-resident directors of Colgate-Palmolive challenging decision initially made at board meeting in Chicago, court held that "mere adverse effects on a corporation which is present within a state are not enough" because "[d]ue process does not allow the directors of a national corporation to be sued by its shareholders anywhere the corporation happens to be present.").  Indeed, even in a direct action brought by allegedly harmed investors, the court in *In re Countrywide Financial Corporation Mortgage Backed Securities Litigation* held that allegations the defendant officers knew that RMBS certificates were "likely to end up" with investors in California were insufficient to show purposeful direction.  2012 WL 1322884, at *7 (C.D. Cal. Apr. 26, 2012).  The court reasoned that a contrary conclusion would base personal jurisdiction over individual officers on the actions of the company and would unconstitutionally "permit for nationwide jurisdiction over the control persons of any entity that conducts business nationwide or releases securities to the national market."  *Id*. at *8-9.

Nor do the state law claims "arise out of" the Defendants' alleged activities, as is required for the Court to exercise specific jurisdiction.  In the Ninth Circuit, "[t]he 'arising out of' prong requires a 'but for' analysis, that is, the Court must ask:  but for the nonresident defendants' contacts with California, would plaintiffs' claim against these defendants have arisen?"  *In re Wireless Facilities, Inc. Deriv. Litig*., 562 F. Supp. 2d 1098, 1104 (S.D. Cal. 2008) (citing *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)).  Here the but-for test clearly fails:  Plaintiffs would be able to allege the same derivative claims on JPMorgan's behalf against the Defendants regardless of whether any of JPMorgan's RMBS-related activities occurred in or were directed toward California (as opposed to all other jurisdictions).

Because the first two elements of the test for specific jurisdiction are not met, the Court need not reach the issue of whether exercising jurisdiction would be reasonable and fair.  Nonetheless, application of the "reasonable and fair" factors, *see Menken*, 503 F.3d at 1060, supports the conclusion that exercising jurisdiction here would be neither.  The Defendants have not "purposefully interjected themselves" into California's affairs; California's interest in

adjudicating the dispute is minimal, given that the allegedly injured party is a Delaware corporation headquartered in New York and the actions (or inaction) allegedly giving rise to the claims occurred outside of California (*see* Point V.A., *infra*); the burden on the Defendants (all of whom are non-residents) of defending the action in this District is substantial (*see* Point V.B., *infra*); the most efficient forum for resolving the dispute would be the SDNY, not this District (*id.*); and this forum has little interest in the convenience of these nominal shareholder plaintiffs in bringing this suit, as the claims are asserted derivatively on behalf of the Company (*id.*).

## II.   PLAINTIFFS' NEWLY ADDED SECTION 14(a) CLAIM FAILS TO STATE A CLAIM AND CANNOT SERVE AS A BASIS FOR PERSONAL JURISDICTION

Plaintiffs' consolidated Complaint added a derivative federal claim under Section 14(a) of the Exchange Act, for unspecified alleged misstatements and omissions regarding risk management in JPMorgan's 2011 and 2012 proxy statements. *See, e.g.*, ¶¶ 194, 196, 201-02, 235, 261. This claim not only fails to meet the particularity requirements of the Private Securities Litigation Reform Act ("PSLRA"), but also does not allege the necessary substantive elements of a proxy disclosure claim. First, it does not and cannot allege the requisite economic harm or causation necessary to support a claim under Section 14(a). Second, proxy claims alleging corporate mismanagement or breaches of fiduciary duty not involving self-dealing (which is not alleged here) are legally immaterial. Because the Section 14(a) claim fails to state a claim and must be dismissed, there is no remaining federal claim that can be the basis for pendent personal jurisdiction over the state law claims. Further, the federal claim cannot provide a basis for personal jurisdiction in any event because it is immaterial and insubstantial and does not arise out of the same nucleus of operative facts as the state law claims.[4]

### A.   The Section 14(a) Claim Fails To State a Claim and Should Be Dismissed

To state a claim under Section 14(a), Plaintiffs must plead "that (1) defendants made a material misrepresentation or omission in a proxy statement; (2) with the requisite state of mind; and (3) that the proxy statement was the transactional cause of harm of which plaintiff complains.

---

[4] As discussed in Point IV below, the Section 14(a) claim should also be dismissed under Rule 23.1 on the grounds that it fails to plead demand futility.

1   Plaintiff must also plead that the misstatement or omission was an essential link in the

2   accomplishment of the proposed transaction." *In re HP Deriv. Litig.*, 2012 WL 4468423, at *10

3   (N.D. Cal. Sept. 25, 2012) (citation omitted).   A complaint under Section 14(a) is also subject to

4   the heightened pleading standards of the PSLRA, which requires that the complaint (i) identify

5   each alleged misrepresentation, (ii) state the reasons each misrepresentation was false, and

6   (iii) "state with particularity facts giving rise to a strong inference that the defendant acted with the

7   required state of mind."  15 U.S.C. §§ 78u-4(b)(1) & (b)(2)(A); *In re McKesson HBOC, Inc. Sec.*

8   *Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000).  Plaintiffs' Section 14(a) claim satisfies none

9   of those requirements.

10              1.       The Complaint Does Not Plead Causation

11         In order to plead a Section 14(a) claim, Plaintiffs must show both that (1) "the votes for a

12   specific corporate transaction requiring shareholder authorization . . . are obtained by a false proxy

13   statement" (*i.e.*, transaction causation) and (2) the "transaction was the direct cause of [plaintiff's]

14   pecuniary injury" (*i.e.*, loss causation).  *In re VeriSign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173,

15   1213 (N.D. Cal. 2007) (quoting *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992)).  In

16   other words, damages are available "'only when the votes for a specific corporate transaction . . .

17   are obtained by a false proxy statement, and that transaction was the direct cause of the pecuniary

18   injury.'"  *In re HP*, 2012 WL 4468423, at *11 (quoting *Gen. Elec.*, 980 F.2d at 933).  The

19   Complaint's allegations that stockholders relied on supposed misstatements or omissions in the

20   2011 and 2012 proxy statements when they elected directors and rejected a stockholder proposal

21   requiring the Chairman of the Board to be an independent outside director, ¶¶ 193, 200, 306-07,

22   fail to fulfill these requirements.

23         The "essential link" standard requires that "the proxy statement at issue *directly authorizes*

24   the loss-generating corporate action."  *SEC v. Mercury Interactive, LLC*, 2009 WL 2984769, at *4

25   (N.D. Cal. Sept. 15, 2009) (quoting *Hulliung v. Bolen,* 548 F. Supp. 2d 336, 341 (N.D. Tex.

26   2008)).  Here, the "loss-generating corporate action" is supposedly mismanagement that led to the

27   2005-2007 issuances of RMBS.  However, "the re-election of directors who have allegedly

28   mismanaged the company is insufficient to meet the 'essential link' requirement of Section 14(a)."

DEFS.' MOT. TO DISMISS COMPL.              9              MASTER FILE NO.
                                                         2:13-cv-02414-KJM-EFB

1  *In re Diamond Foods, Inc. Deriv. Litig.*, 2012 WL 1945814, at *7 (N.D. Cal. May 29, 2012);

2  *Kelley v. Rambus*, 2008 WL 5170598, at *3, 4, 7-8 & n.8 (N.D. Cal. Dec. 9, 2008) (same), *aff'd*,

3  384 F. App'x 570 (9th Cir. 2010).

4       For example, the plaintiffs in *In re Diamond Foods* claimed that a proxy statement

5  contained misstatements about the adequacy of internal controls. 2012 WL 1945814, at *7. The

6  court, after noting that the proxy statement did not call for a vote on any specific transaction,

7  rejected plaintiffs' argument that "the proxy [was] actionable . . . because 'it contained false

8  financial information that influenced the vote to re-elect the directors who were up for election.'"

9  *Id.* The court held that a "claim that the reelection of the directors was an essential link to loss-

10  generating corporate action because of the directors' subsequent mismanagement" cannot form the

11  basis of liability under Section 14(a). *Id.* (quoting *Kelley v. Rambus, Inc.* 2008 WL 5170598 at *8

12  n.8).

13       Here, the fundamental causation defect in Plaintiffs' Section 14(a) claim is even starker

14  because the losses allegedly arose out of activities (RMBS issuances) that occurred many years

15  *before* the proxies and elections alleged in the Complaint. Neither the JPMorgan stockholders'

16  election of directors nor their vote whether to establish an independent Chairman could have been

17  "the direct cause of pecuniary injury for which recovery is sought" arising out of prior RMBS

18  transactions. *Gen. Elec. Co.*, 980 F.2d at 933; *see also In re HP*, 2012 WL 4468423, at *10; *In re*

19  *VeriSign*, 531 F. Supp. at 1213 (holding plaintiffs failed to allege "direct injury" suffered by

20  corporation). Courts consistently hold, and logic dictates, that when the underlying conduct that

21  allegedly caused the company's monetary loss (here, the RMBS-related activities in 2005-2007)

22  took place *before* the proxy statements were issued (in 2011 and 2012), subsequent corporate

23  actions being voted upon in those filings cannot have caused the claimed harm. *In re HP*, 2012

24  WL 4468423, at *11 (dismissing Section 14(a) claim premised on vote on stock incentive plan

25  because plaintiffs failed to allege that plan resulted in the earlier corporate waste that supposedly

26  harmed the company); *Mercury Interactive*, 2009 WL 2984769, at *4 (citing *In re iBasis, Inc.*

27  *Deriv. Litig.*, 532 F. Supp. 2d 214, 223 (D. Mass. 2007) (reasoning that "it is unclear how th[e]

28  proxy statements could have been an essential link in" a transaction that ceased prior to the filing

DEFS.' MOT. TO DISMISS COMPL.          10          MASTER FILE NO.
                                                    2:13-cv-02414-KJM-EFB

1   of the proxy statements)); *Kelley*, 2008 WL 5170598, at *8 (holding that an "'essentially

2   preexisting' injury, cannot form the basis for § 14 liability" (ellipses and citations omitted)).

3   Similarly, in *Mercury Interactive*, the alleged economic loss suffered by the company in

4   connection with a settlement entered into with the Securities and Exchange Commission ("SEC")

5   after the proxy statements were issued was not caused by the proxy statements because the

6   settlement related to conduct that occurred prior to the proxy statements.  *See SEC v. Mercury*

7   *Interactive, LLC*, 2008 WL 4544443, at *1 (N.D. Cal. Sept. 30, 2008); First Amended Complaint

8   at 16, *SEC v. Landan*, No. 3:07-cv-02822 (N.D. Cal. Oct. 20, 2008), ECF No. 89.

9         Proxy statements issued in 2011 and 2012 could not have caused JPMorgan's alleged

10   losses from conduct that occurred from 2005 to 2007.  Plaintiffs' Section 14(a) claim should be

11   dismissed for this reason alone.  As discussed below, however, other grounds compel the same

12   result.

13            2.        The Complaint Does Not Allege Material Misrepresentations

14         Plaintiffs' Section 14(a) claim also is deficient because to the extent Plaintiffs attempt to

15   allege misstatements and omissions in the 2011 and 2012 proxy statements, Plaintiffs are seeking

16   to criticize the Defendants for failure to disclose their alleged mismanagement.  Such statements

17   are not material as a matter of law.  Section 14(a) does not create a cause of action for claims

18   premised on "alleged mismanagement or breach of fiduciary duty."  *Desaigoudar v. Meyercord*,

19   223 F.3d 1020, 1024 (9th Cir. 2000); *see also In re Teledyne Def. Contract. Deriv. Litig.*, 849 F.

20   Supp. 1369, 1380-81 (C.D. Cal. 1993).  Section 14(a) does not require disclosure of

21   "mismanagement, unadorned by self-dealing," because such conduct is plainly "not material or

22   otherwise within the ambit of the federal securities laws" and mandating its disclosure "would

23   represent a move toward the federalization of corporate law that the Supreme Court has repeatedly

24   and emphatically rejected."  *Gaines v. Haughton*, 645 F.2d 761, 779 (9th Cir. 1981), *overruled in*

25   *part on other grounds, In re McLinn*, 739 F.2d 1395, 1397 (9th Cir. 1984); *In re Diamond Foods*,

26   2012 WL 1945814, at *7 (no Section 14(a) liability for claims of mismanagement); *Schwartzman*

27   *v. McGavick*, 2007 WL 1174697, at *12 (W.D. Wash. Apr. 19, 2007) (allegation that proxy

28   statement was misleading for failing to disclose that directors "departed from Safeco's executive

compensation policies or code of ethics" was contrary to *Gaines* and amounted to "little more than

an attempt to present a breach of fiduciary duty claim as a Section 14(a) claim"). Plaintiffs' claim,

which focuses on an alleged failure to disclose supposedly inadequate Board oversight and

internal controls (*see, e.g.*, ¶¶ 197, 204, 205, 306, 307), is a classic example of alleged

mismanagement not subject to Section 14(a) liability.[5]

Furthermore, general statements about the nature and quality of a company's management

are held not to be actionable. That is true even when the statements made are far more positive

than the portions of the proxy statements copied into the Complaint here. For example, in *ECA,*

*Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009),

the court concluded that statements regarding a company's "highly disciplined" risk management

and "standard-setting reputation for integrity" "are no more than 'puffery' which does not give rise

to securities violations." Such "statements are too general to cause a reasonable investor to rely

upon them" and do not, "and could not, amount to a guarantee that its choices would prevent

failures in its risk management practices." *Id.*[6]

---

[5] While the Supreme Court recognized a private derivative cause of action under Section 14(a) in *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964), that holding is inconsistent with the Court's subsequent jurisprudence regarding implied causes of action and is likely to be overruled. Subsequent decisions from the Court have disavowed the reasoning of *Borak* and substantially narrowed the grounds for implying statutory private rights of action. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 164 (2008) (holding, contrary to the prior rule from *Borak*, "it is [now] settled that there is an implied cause of action only if the underlying statute can be interpreted to disclose the intent to create one"); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577-78 (1979) (declining to "question the actual holding of" *Borak*, but rejecting its reasoning and concluding that "[t]o the extent our analysis in today's decision differs from that of the Court in *Borak*, it suffices to say that in a series of cases since *Borak* we have adhered to a stricter standard for the implication of private causes of action, and we follow that stricter standard today"); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 735-36 (1979) (Powell, J., dissenting) (calling *Borak* "incomprehensible as a matter of public policy," unsupported by precedent, and "a singular and, I believe, aberrant interpretation of a federal regulatory statute" because the decision overlooks "Congress' express creation of an administrative mechanism for enforcing that statute"). While this Court may be bound by *Borak*, the Defendants hereby preserve their objection to the viability of this claim.

[6] *See also Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1138-41 (N.D. Cal. 2013) (holding that "statements relating to HP's ethical code of conduct, do not constitute actionable misrepresentations or omissions because they are not material") (citation omitted); *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 174119, at *31 (C.D. Cal. Jan. 16, 2013) (statements that "company was trying to build a 'world class financial team,' improve internal controls, and sought to 'pursue a strict corporate orthodoxy as far as

3.     The Complaint Does Not Plead the Section 14(a) Claim with the Particularity Required by the PSLRA

The Section 14(a) claim should also be dismissed because it fails to meet the pleading requirements of the PSLRA.  The Complaint fails to identify with particularity any specific statements that were supposedly misleading or why they were misleading, but instead simply reproduces large portions of JPMorgan's 2011 and 2012 proxy statements, including language relating to the Board's leadership structure, the independence of Board members, Board policies regarding oversight of risk management, and the Board's reasons for recommending against a shareholder proposal to require a separation of the Chairman and CEO positions.  ¶¶ 194-96, 201-05, 236, 261, 264.  The Complaint italicizes certain words in the disclosures, but does not allege that the inclusion of those words or the omission of additional information "violated established SEC regulations or any rules implicit in the regulations that specifically govern proxy statements issued in connection with board elections."  *In re Morgan Stanley Deriv. Litig.*, 542 F. Supp. 2d 317, 325 (S.D.N.Y. 2008) (dismissing derivative claim based on Rule 14a); *see also Fisher v. Kanas*, 467 F. Supp. 2d 275, 281-82 (E.D.N.Y. 2006) (dismissing § 14(a) claim based on proxy statements' characterization of compensation policies where the complaint failed to "allege that the proxies contained any specific misrepresentation of compensation").

Nor does the Complaint "state with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A).  A Section 14(a) claim requires at least a showing of negligence, *In re McKesson HBOC*, 126 F. Supp. 2d at 1267, but the Complaint offers only rank speculation, not particularized facts that the Defendants did not act with due care with respect to the proxy statements, much less particularized facts that

financial issues,' [were] vague, forward-looking, aspirational statements [that] do not constitute actionable misrepresentations"); *Karam v. Corinthian Colls., Inc.*, 2012 WL 8499135, at *10 (C.D. Cal. Aug. 20, 2012) ("statements in which Defendants emphasized that Corinthian was committed to regulatory compliance" "are too generic and indefinite to serve as the basis of a securities fraud claim") (citation omitted); *cf. Carpenters Pension Trust Fund v. Barclays PLC*, 2014 WL 1646511, at *6 (2d Cir. Apr. 25, 2014) (finding statements that "minimum control requirements had been established" at the bank were not material because they were only generally about the bank's controls and did not indicate anything false or misleading about the specific controls at issue).

1    give rise to a "strong inference" of negligence.

2        **B.       The Section 14(a) Claim Cannot Provide a Basis for Personal Jurisdiction**

3            As discussed in Point I above, personal jurisdiction does not exist as to any of the

4    Defendants with respect to the Delaware state law fiduciary duty claims that are the gravamen of

5    this action.  Plaintiffs did not cure that defect by their addition of a claim under Section 14(a) of

6    the Exchange Act against 10 of the 13 Defendants.  As to the Defendants sued on the Section

7    14(a) claim, Plaintiffs might attempt to rely upon the nationwide service of process provision in

8    Section 27 of the Exchange Act to assert personal jurisdiction, including over the Delaware state

9    law claims.  *See* 15 U.S.C. § 78aa(a); *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1314, 1315-

10   16 (9th Cir. 1985).  Because the federal claim must be dismissed, however, it cannot "provide a

11   basis for asserting pendent personal jurisdiction over [Defendants] for the state law claims.  There

12   is no remaining claim 'in the same suit' to which jurisdiction can be pendent."  *Malone v. Clark*

13   *Nuber, P.S.*, 2008 WL 4279502, at *2 (W.D. Wash. Sept. 12, 2008), *aff'd*, 445 Fed. App'x 940

14   (9th Cir. 2011); *Hall v. Nelson Aircraft Sales, Inc.*, 2006 WL 624907, at *8 (E.D. Cal. Mar. 9,

15   2006) (where claims giving rise to personal jurisdiction "fail as a matter of law, the remaining

16   claims may then be dismissed for lack of personal jurisdiction."); *Anderson v. McGrath*, 2012 WL

17   5381406, at *7 (D. Ariz. Nov. 1, 2012) ("Because the Court has dismissed the federal claims

18   against the Director Defendants, it will decline to exercise pendent personal jurisdiction over the

19   state law claims asserted against them.") (citing cases).

20           Even if the Section 14 claim were not dismissed, pendent personal jurisdiction over the

21   state law claims would not exist because the state law claims and the Section 14(a) claim do not

22   arise out of a common nucleus of operative facts.  *See Action Embroidery Corp. v. Atl.*

23   *Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004).  The Section 14(a) claim alleges false or

24   misleading proxy statements in 2011 and 2012 in soliciting shareholders to vote on the election of

25   directors and on shareholder proposals related to the election of a Lead Director and the separation

26   of the roles of Chairman and CEO.  ¶¶ 191-212.  These voting decisions in 2011 and 2012, and the

27   statements made in the proxy statements relating to Board oversight and structure, are not related

28   to the primary allegations in the Complaint, which all relate to JPMorgan's allegedly improper

1   origination and sale of subprime RMBS to investors in 2005 to 2007.  *See, e.g.*, ¶ 40.

2       The only alleged nexus or "common nucleus" between the facts underlying the federal and

3   state claims is that Plaintiffs claim that the proxy statements, solicited 4 to 7 years *after* the

4   underlying RMBS transactions, "were false and misleading because they stated and implied that

5   the Board, with Dimon as both Chairman and CEO, was exercising effective oversight of

6   management, when in fact the directors knew that was not the case and that management had in

7   fact intentionally overridden and violated the Company's own risk management rules, the

8   Company's underwriting standards, and other key internal controls, as alleged in more detail

9   herein and in the Statement of Facts."  ¶ 197; *see also* ¶ 206.  The proxy statement does not

10  address oversight or controls as to RMBS, and Plaintiffs' vague assertions as to what the proxy

11  "implied" as to general oversight cannot bridge seven years in time and link a vote on the election

12  of directors in 2011 or 2012 to an alleged lack of controls as to RMBS transactions that occurred

13  years earlier.  *See, e.g., Witt Co. v. RISO, Inc.*, 948 F. Supp. 2d 1227, 1251 (D. Or. 2013)

14  (rejecting pendent personal jurisdiction where both breach of contract and antitrust claims were

15  alleged, because "the relevant facts for analyzing the breach of contract and duty of good faith and

16  fair dealing claims are distinct enough that they do not arise 'out of a common nucleus of

17  operative facts' with the antitrust claim"); *see also N.C. Mut. Life Ins. Co. v. McKinley Fin. Serv.,*

18  *Inc.*, 386 F. Supp. 2d 648, 656-57 (M.D.N.C. 2005) (refusing to retain unrelated claims based

19  upon pendent personal jurisdiction).[7]

20      Even when the requirements of pendent personal jurisdiction have been met (and here they

21  have not), the decision to assert jurisdiction "is left to the Court's discretion and relies on

22  'considerations of judicial economy, convenience and fairness to litigants.'"  *Allen v. Similasan*

23  *Corp.*, 2013 WL 2120825, at *3 (S.D. Cal. May 14, 2013) (quoting *Action Embroidery*, 368 F.3d

24  at 1181).  These considerations weigh heavily against the exercise of pendent personal jurisdiction

25  _____

26  [7] In addition, as shown in Point II.A above, the Section 14(a) claim is so immaterial and
    insubstantial that it cannot be a basis for pendent personal jurisdiction over the state law claims or
27  the Section 14(a) claim itself as a matter of law.  *See Malone*, 2008 WL 4279502, at *1-2; *see also
    San Mateo Cty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356, 1357-58 (9th
    Cir. 1992); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 941 (11th
28  Cir. 1997); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1055 (3d Cir. 1993).

here.  First, it would result in piecemeal litigation because pendent personal jurisdiction would not extend to the three Defendants (Messrs. Harrison, Lipp, and Flynn) who are not sued under Section 14(a).  ¶ 305.  *See Action Embroidery Corp.*, 368 F.3d at 1180 ("Personal jurisdiction must exist for each claim asserted against a defendant.").  Second, there is no reason for the Court to exercise its discretion to keep this case in this forum and there are strong countervailing reasons not to do so:  The forum is far from JPMorgan's principal place of business, there is no basis for personal jurisdiction over any Defendants other than the Exchange Act's nationwide service of process provision (and not even that as to three of the Defendants), and there currently is an overlapping case proceeding without jurisdictional or venue obstacles in the district where JPMorgan has its principal place of business.  That readily available forum is the proper one for a derivative suit.  *See* Point V.  While the doctrine of pendent personal jurisdiction, when properly deployed, may enhance judicial efficiency and fairness, it would have the opposite effect here.

## III.   VENUE IS IMPROPER IN THIS DISTRICT WITH RESPECT TO THE STATE LAW CLAIMS

Venue over the state law claims is also lacking in this District.  "Plaintiff has the burden of proving that venue is proper in the district in which the suit was initiated."  *Hope v. Otis Elevator Co.*, 389 F. Supp. 2d 1235, 1243 (E.D. Cal. 2005); *Piedmont Label Co. v. Sun Garden Packing Co.*, 589 F.2d 491, 496 (9th Cir. 1979).  Because venue over the state law claims is improper, this Court should dismiss them pursuant to Rule 12(b)(3) or transfer this action to the SDNY pursuant to 28 U.S.C. § 1406(a).

First, "[w]hen there are multiple parties and/or multiple claims in an action, the plaintiff must establish that venue is proper as to each defendant and as to each claim."  *Multimin USA, Inc.*, 2006 WL 1046964, at *2.  Plaintiffs cannot rely on the Section 27 venue provision as to the three Defendants who are not sued under Section 14(a), or as to any of the Defendants with respect to the state law claims.

Second, as to the state law claims, Plaintiffs do not satisfy the venue requirement of 28 U.S.C. § 1391(b)(2) that "a substantial part of the events or omissions giving rise to the claim" must have occurred in this District.  *None* of the alleged directorial conduct giving rise to the state

law claims occurred in California, much less a "*substantial part of the events or omissions.*"  *See Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 161 (3d Cir. 2012) (emphasis in original) (events giving rise to derivative action against corporation's directors for breach of fiduciary duty were defendants' acts or omissions as directors); *In re First Solar, Inc. Deriv. Litig.*, 2013 WL 817132, at *10-11 (D. Del. Mar. 4, 2013) (in shareholder derivative action, venue was not proper in state of incorporation, but instead in state where company was headquartered and director defendants carried out majority of their duties).  "[T]he 'events or omissions' inquiry focuses on the defendant's relevant activities—not the plaintiff's."  *Gamboa v. USA Cycling, Inc.*, 2013 WL 1700951, at *3 (C.D. Cal. Apr. 18, 2013) (quoting *LeRoy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979) ("The purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial.")).  The Company's broader business activities in California therefore are not relevant to this inquiry, as it is merely a nominal defendant and is properly aligned as a plaintiff for this purpose.  Nor does the criminal investigation in this District by the United States Attorney for the Eastern District of California confer any basis for venue as to the Defendants.  ¶ 18.  Investigative activities of the United States Attorney's Office as to the Company are not a basis for venue against the Defendants.  *See Sarandi v. Breu*, 2009 WL 2871049, at *7 (N.D. Cal. Sept. 2, 2009) (investigation by U.S. Attorney for Northern District of California into corporation's alleged unlawful conduct in U.S. did not provide a reason to retain derivative suit in that district, since focus of derivative claims was directors' conduct in Switzerland in failing to prevent that conduct).

Third, the Court should not assert "pendent venue" over the state law claims by virtue of the statutory venue over the Section 14(a) claim – a legal theory that "has received limited acceptance" and has never been approved by the Ninth Circuit.  *Gamboa*, 2013 WL 1700951, at *4.  Even when accepted it is applied only "'where venue exists for the principal cause of action," which is not the case here.  *Leroy-Garcia v. Brave Arts Licensing*, 2013 WL 4013869, at *12 n.10 (N.D. Cal. Aug. 5, 2013) (citation omitted); *Johnson v. Dynamics Info. Tech., Inc.*, 675 F. Supp. 2d 236, 240-41 (D.N.H. 2009) (refusing to apply pendent venue to plaintiff's "primary" claim); *Lengacher v. Reno*, 75 F. Supp. 2d 515, 519 (E.D. Va. 1999).  The primary

cause of action asserted in the Complaint is breach of fiduciary duty, not the tacked-on Section 14(a) claim.  Furthermore, for the reasons discussed above (*see* Points I and II.A), pendent venue is not applicable because the Section 14(a) claim is not colorable, and the state law and Section 14(a) claims are not "closely related," *see Shari's Berries Int'l v. Mansonhing*, 2006 WL 2382263, at *3 (E.D. Cal. Aug. 17, 2006), and do not "'arise out of the same nucleus of facts,'" *see Echols v. Morpho Detection, Inc.*, 2013 WL 1501523, at *6 (N.D. Cal. Apr. 11, 2013) (citation omitted); *Zumba Fitness, LLC v. Brage*, 2011 WL 4732812, at *2 (C.D. Cal. Oct. 6, 2011) (same).

## IV.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE THAT DEMAND ON THE BOARD IS EXCUSED

If the substantial jurisdictional and venue issues set forth above could be overcome, that would still leave the core defect of the Complaint:  Plaintiffs' failure to make pre-suit demand before commencing this action or to allege adequately that demand is excused.  This precise issue has been litigated in two previous RMBS-related derivative cases over the past two years, with dismissal ordered in both cases.  Those rulings serve as collateral estoppel in this case.  And even absent estoppel, this Court should follow the unanimous precedent of those two RMBS cases and eight other decisions that have held that demand against the JPMorgan Board is not excused.

### A.   Collateral Estoppel Precludes Plaintiffs from Relitigating Demand Futility with Respect to the State Law Claims

The Complaint is the third attempt by JPMorgan shareholders to plead that pre-suit demand would be futile based on allegations that the directors of JPMorgan face a substantial likelihood of liability arising out of the Company's RMBS-related activities.  The first two attempts were rejected in *Siegal v. J.P. Morgan Chase & Co.*, 2012 WL 8161652 (N.Y. Sup. Ct. Aug. 16, 2012), *aff'd*, 960 N.Y.S.2d 104 (App. Div. 2013), *appeal denied*, 990 N.E.2d 135 (N.Y. 2013) (Declaration of Stuart J. Baskin, dated May 16, 2014 ("Baskin Decl.") Ex. A) ("*Siegel* Decision"), and *Asbestos Workers Philadelphia Pension Fund v. Bell*, 43 Misc. 3d 1204(A), 2014 WL 1272280 (N.Y. Sup. Ct. Mar. 28, 2014) (Baskin Decl. Ex. B) ("*Asbestos* Decision").  Collateral estoppel precludes Plaintiffs from trying a third time.[8]

---

[8] In *Asbestos Workers*, the court dismissed the complaint for failure to plead that demand was excused but declined to apply collateral estoppel because the plaintiffs challenged the Board's

Under the full faith and credit clause of the U.S. Constitution and 28 U.S.C. § 1738, New York law determines whether that state court's prior adjudication has collateral estoppel effect. *See Sanchez v. Crown Equip. Corp.*, 141 F.3d 1178, 1998 WL 84152, at *1 (9th Cir. 1998) (California courts "must 'accept the [preclusion] rules chosen by the State from which the judgment is taken'" (quoting *Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 380 (1985)).

It is well settled under New York law that collateral estoppel blocks repetitive, overlapping derivative lawsuits that seek to circumvent the demand requirement. *See, e.g.*, *Carroll ex rel. Pfizer, Inc. v. McKinnell*, 859 N.Y.S.2d 901, 2008 WL 731834, at *7-8 (N.Y. Sup. Ct. Mar. 17, 2008) (plaintiffs asserting derivative claims in state court precluded from asserting the same demand futility allegations that were previously adjudicated by a federal court in a lawsuit brought by different shareholder plaintiffs); *Henik ex rel. LaBranche & Co. v. LaBranche*, 433 F. Supp. 2d 372, 380 (S.D.N.Y. 2006) ("[I]f this were not the rule, shareholder plaintiffs could indefinitely relitigate the demand futility question in an unlimited number of state and federal courts, a result the preclusion doctrine specifically is aimed at avoiding."); *see also Levin ex rel. Tyco Int'l Ltd. v. Kozlowski*, 831 N.Y.S.2d 354, 2006 WL 3317048, at *7-9, 13 (N.Y. Sup. Ct. Nov. 14, 2006), *aff'd*, 357 N.Y.S.2d 987 (App. Div. 2007) (prior dismissal by federal court on the ground that plaintiff shareholders did not have standing to bring a derivative suit precluded two other shareholders from raising the same issue).

Plaintiffs' Complaint asserts virtually identical claims based on the same alleged conduct as did the *Siegel* and *Asbestos Workers* complaints. Specifically:

1. JPMorgan directors were allegedly financially incentivized to issue RMBS despite awareness of the weaknesses in the subprime market and the Company's controls, due diligence and underwriting standards. Second Amended Complaint, *Siegel v. J.P. Morgan Chase & Co.*, Index No. 651974/2011 (N.Y. Sup. Ct. Dec. 2, 2011), Dkt. No. 9 ("Siegel Compl.," Baskin Decl. Ex. C) ¶¶ 17-18, 20-26; Shareholder Derivative Complaint for Breaches of Fiduciary Duty, Abuse of Control, Gross Mismanagement, Corporate Waste and Unjust Enrichment, *Asbestos Workers Phila.*

delegation to a management committee of authority to securitize assets, which the *Siegel* action had not challenged. 2014 WL 1272280, at *3. Here, however, as shown immediately below, Plaintiffs' allegations mirror allegations made in *Siegel* and *Asbestos Workers*. Plaintiffs are therefore estopped.

*Pension Fund v. Bell*, Index No. 652020/2013 (N.Y. Sup. Ct. June 6, 2013), Dkt. No. 1 ("Asbestos Compl.," Baskin Decl. Ex. D) ¶¶ 4-5, 7, 19, 89-90, 94, 96, 100, 107-09, 117, 177-84, 199(a); Compl. ¶¶ 11, 40, 44-45, 48, 65-68, 115-20, 138, 155, 159, 165, 172, 184-85, 216-19, 222

2.  JPMorgan directors allegedly were aware of weaknesses in the subprime market and the Company's issuance of RMBS but either participated in, authorized or permitted the sale of RMBS.  Siegel Compl. ¶¶ 17-18, 20-22; Asbestos Compl. ¶¶ 6-8, 10, 18-20, 42, 58, 77, 85-94, 96-103, 112-13, 118-20, 122-26, 133-36, 141-47, 193, 199(a)-(d), 199(f), 200(a)-(h), 201(a)-(e); Compl. ¶¶ 40-42, 45, 47, 139-59, 161-74, 178-85, 223, 230.

3.  JPMorgan's acquisitions of Bear Stearns and Washington Mutual significantly increased the Company's exposure to liability arising from RMBS.  Siegel Compl. ¶¶ 23-25; Asbestos Compl. ¶¶ 18, 99-100, 104-06, 109, 111-12; Compl. ¶¶ 134-37, 180-81.

4.  JPMorgan directors allegedly allowed or caused the filing of incomplete and misleading disclosures with the SEC, failed to disclose the weaknesses of RMBS underwriting and due diligence to investors, or otherwise released misleading public statements.  Siegel Compl. ¶¶ 18-19, 22; Asbestos Compl. ¶¶ 42, 110, 115, 126-28, 130-32, 140, 142, 150, 166-72, 199(e); Compl. ¶¶ 5-10, 12-13, 43,115, 121-22, 159-67, 174-77, 193-212, 231-33, 235-41, 260-64, 268, 272, 275.

5.  Several of the JPMorgan directors were members of Board committees, including the Audit Committee, Public Responsibility Committee, Risk Policy Committee, Stock Committee, and Compensation & Management Committee, and face a substantial likelihood of liability because they allegedly were aware of the wrongdoing based on their membership on those committees.  Asbestos  Compl. ¶¶ 45-57, 59-62, 94, 98, 105, 108, 116, 118-20, 123-26, 198, 200-03; Compl. ¶¶ 225-41, 252-64, 269, 273, 277.

6.  JPMorgan directors allegedly will not cause the Company to sue themselves or one another due to the supposed risk of personal liability.  Siegel Compl. ¶ 32(b); Asbestos Compl. ¶¶ 20, 196-97, 204-06; Compl. ¶ 280.

The *Siegel* and *Asbestos* courts dismissed those complaints for failure to plead demand futility with particularity.  *Siegel* Decision at 8-9; *Asbestos* Decision at 11-13.  Plaintiffs' slightly differing factual allegations from the earlier dismissed complaints – based on the same underlying conduct – cannot save their action from dismissal.  "'[E]ven if there are variations in the facts,'" collateral estoppel bars relitigation of the shareholder's standing to sue derivatively because Plaintiffs raise the same allegations regarding the Defendants' conduct that were previously dismissed.  *See Levin*, 2006 WL 3317048, at *8-9 (citation omitted); *see also Carroll*, 2008 WL 731834, at *4-5, 7-8; *Henik*, 433 F. Supp. 2d at 375-76, 380-81 (finding collateral estoppel barred relitigation of demand futility allegations based on a failure of oversight and misleading disclosures).

Collateral estoppel estops the Plaintiffs from reasserting old allegations and relitigating demand excusal for a third time.

**B.    Even if Collateral Estoppel Did Not Preclude Plaintiffs from Relitigating the Issue of Demand Futility, Plaintiffs Have Failed To Plead that Demand on the Board Is Excused**

1.    Demand Is Required Unless the Complaint Alleges Particularized Facts Raising a Reasonable Doubt that a Majority of the Directors Could have Independently and Disinterestedly Considered the Demand

"Under Delaware law, 'directors of a corporation and not its shareholders manage the business and affairs of the corporation, and accordingly, the directors are responsible for deciding whether to engage in derivative litigation.'" *In re HP Deriv. Litig.*, 2012 WL 4468423, at *4 (N.D. Cal. Sept. 25, 2012) (quoting *Levine v. Smith*, 591 A.2d 194, 200 (Del. Ch. 1991), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).  Pursuant to Federal Rule of Civil Procedure 23.1(b)(3), and bedrock principles of Delaware law,[9] shareholders cannot divest directors of their authority to control a corporation's legal claims unless they plead with particularity facts raising a reasonable doubt that a majority of the Board could have independently and disinterestedly considered the demand.  *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 833-34 (9th Cir. 2008); *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004); *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 121 n.36 (Del. Ch. 2009).  Moreover, "a derivative complaint must plead facts *specific to each director*, demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand."  *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007) (emphasis in original).

Given the authority reposed in the elected directors to control a corporation's legal claims, Delaware law imposes an "onerous" burden on plaintiffs who seek to allege that a pre-suit demand

---

[9] The substantive law of the state in which the corporation is incorporated governs a shareholder's ability to sue on behalf of the corporation.  *See Israni v. Bittman*, 473 Fed. App'x 548, 549 (9th Cir. 2012) (citing *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999)), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 833-34 (9th Cir. 2008)).

1   would have been futile, and thus should be excused.  *Levine*, 591 A.2d at 207.  To the extent a

2   complaint alleges that a board improperly failed to take action, demand is excused only if "the

3   particularized factual allegations of a derivative stockholder complaint create a reasonable doubt

4   that, as of the time the complaint is filed, the board of directors could have properly exercised its

5   independent and disinterested business judgment in responding to a demand."  *Rales v. Blasband*,

6   634 A.2d 927, 934 (Del. 1993); *see also In re Dow Chem. Co. Deriv. Litig.*, 2010 WL 66769, at

7   *12 (Del. Ch. Jan. 11, 2010); *Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003); Fed. R. Civ.

8   P. 23.1(b)(3); *In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919, 926-27 (N.D. Cal.

9   2010) ("Under federal procedural law, the facts necessary to demonstrate that demand would be

10  futile must be plead with particularity.") (citations omitted).  Courts have repeatedly emphasized

11  that "conclusory allegations are not considered as expressly pleaded facts or factual inferences."

12  *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000); *see also Sprewell v. Golden State Warriors,* 266

13  F.3d 979, 988 (9th Cir. 2001).[10]

14              2.       Plaintiffs Fail to Plead that a Majority of the Board Members Lack
                        Independence or Have an Interest in the Transactions at Issue

15          Courts presume that outside directors are independent and faithful to their fiduciary duties.

16  *Levine*, 591 A.2d at 205-06; *see also In re Am. Int'l Grp., Inc. Deriv. Litig.*, 415 F. App'x 285, 286

17  (2d Cir. 2011) (quoting *Beam*, 845 A.2d at 1048-49 ("'[D]irectors are entitled to a presumption

18  that they were faithful to their fiduciary duties,' and a shareholder seeking to bring a derivative

19  suit bears the burden of "'overcom[ing] that presumption.'"")).  "In the context of presuit demand,

20  the burden is upon the plaintiff in a derivative action to overcome that presumption."  *Beam*, 845

21  A.2d at 1048-49.  The Complaint does not allege that any of the members of the Board had a

22  financial interest in the transactions at issue.  As to independence, 10 of the 11 members of

23  JPMorgan's Board are non-management, outside directors, and 10 previous courts have held them

24

25  _____

    [10] These pleading requirements apply equally to the Delaware state law claims and the federal
26  claim under Section 14(a).  Thus, in order to excuse demand on the Board, Plaintiffs must plead
    with particularity that a majority of the Defendants individually face a substantial likelihood of
27  liability on the Section 14(a) claim.  *In re Computer Scis. Corp. Deriv. Litig.*, 2007 WL 1321715,
    at *6, 11 (C.D. Cal. Mar. 26, 2007); *In re Autodesk, Inc., S'holder Deriv. Litig.*, 2008 WL
28  5234264, at *4-6 (N.D. Cal. Dec. 15, 2008).  As set forth in Point II above, they have clearly
    failed to do so and thus for this additional reason the Section 14(a) claim should be dismissed.

1   to be disinterested and independent.  *See* n.1, *supra*.  Two of those 10 outside directors are not

2   named as defendants, and their independence is not even challenged.  As for the other eight

3   directors, the Complaint offers only generic and conclusory allegations repeatedly rejected by

4   New York and Delaware courts.

5         *Director Fees*.  The assertion that demand is excused because the Directors receive

6   compensation for their service (¶¶ 242, 265, 270, 274, 276) is plainly insufficient.  Allegations that

7   "directors are paid for their services as directors . . , without more, do not establish any financial

8   interest" to excuse demand.  *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988), *overruled on other*

9   *grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  Instead, a complaint must allege with

10  particularity that the alleged benefit received by the director is "material" and is significant enough

11  "*in the context of the director's economic circumstances*, as to have made it improbable that the

12  director could perform her fiduciary duties to the . . . shareholders without being influenced by her

13  overriding personal interest."  *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002) (emphasis in

14  original).  The Complaint offers no such allegations.[11]

15        *Director Stock Compensation*.  Plaintiffs also claim that the Director Defendants lack

16  independence because they were improperly motivated to increase the Company's profitability.

17  ¶¶ 222-23.  But efforts to increase the overall profitability and price of JPMorgan's stock are

18  consistent with the interests of *all* shareholders and cannot excuse demand.  *See In re Accuray,*

19  *Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d at 927.

20        *Receipt of Loans and Credit*.  Plaintiffs next assert that certain Director Defendants lack

21  independence because they or companies with which they are associated received unspecified

22  loans, extensions of credit, or financial advisory services from JPMorgan.  ¶¶ 243, 244, 266, 271,

23

24  [11] *See, e.g.*, *In re Corinthian Colls., Inc. S'holder Deriv. Litig.*, 2012 WL 8502955, at *11 (C.D. Cal. Jan. 30, 2012) (finding allegations that directors would earn more than $200,000 for service did not excuse demand because they did not indicate that the fee exceeded "'materially what is

25  commonly understood and accepted to be a usual and customary directors' fee'") (citation omitted); *see also Israni v. Bittman*, 473 Fed. App'x at 550-51 (finding allegations of director

26  compensation of $385,000 or $419,000 per year insufficient because there were no allegations about materiality of compensation or comparison to industry standards); *Robotti & Co., LLC v.*

27  *Liddell*, 2010 WL 157474, at *14 (Del. Ch. Jan. 14, 2010) (directors' compensation "standing alone[] cannot be the basis for asserting a lack of independence.").

28

278.  However, as the Delaware Court of Chancery observed in rejecting similar allegations, "JPMC is a national commercial and investment bank.  That it provided financing to large American companies should come as no shock to anyone.  Yet this is all that the plaintiffs allege." *In re J.P. Morgan Chase*, 906 A.2d at 822; *see also In re JPMorgan Chase & Co. Deriv. Litig.*, 2014 WL 1297824, at *7 (S.D.N.Y. Mar. 31, 2014) (rejecting allegations that "extensive personal loans/extensions of credit" excuse demand because conclusory allegations did not provide the necessary "'particularized facts about the materiality of the relationship[s] in question that would create a reasonable doubt about the independence of the [] directors.'") (citation omitted).  The claim that Defendant Crown is not independent because he has "benefited from charitable contributions by JPMorgan to organizations Crown has served as trustee," ¶ 267, similarly lacks particularized allegations about the contributions or how they were material to Crown himself. *See In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at *8 (Del. Ch. Oct. 12, 2011).

     *Dominance by "Individual Defendants."*  The Complaint finally makes the conclusory allegation that the JPMorgan Board is dominated "by the Individual Defendants" (¶ 280), but does not explain which Directors are controlling and which are controlled.  Nor does the Complaint allege particularized facts showing that any Director's decision-making is so dominated by an interested Director that he or she "would be more willing to risk his or her reputation than risk the relationship with the interested director."  *Beam*, 845 A.2d at 1052; *Freedman v. Adams*, 2012 WL 1345638, at *6 (Del. Ch. Mar. 30, 2012) (quoting *Aronson v. Lewis*, 473 A.2d 805, 816 (Del. 1984), *abrogated on other grounds by Brehm*, 746 A.2d at 254) (A "shorthand shibboleth of 'dominated and controlled directors' is insufficient" to state a claim of demand futility.), *aff'd*, 58 A.3d 414 (Del. 2013).

          3.      Plaintiffs Fail to Plead with Particularity that a Majority of the Board Face a Substantial Likelihood of Liability, Especially in View of the Section 102(b)(7) Exculpatory Clause in JPMorgan's Charter

     Faced with an overwhelming majority of independent directors (at least 10 of 11), the Complaint tries to claim that demand is excused because the Director Defendants face a substantial likelihood of personal liability in this lawsuit.  Delaware and New York courts have

1   repeatedly held that demand is not excused merely by the expedience of naming all directors as

2   defendants.  *See, e.g.*, *Aronson*, 473 A.2d at 818.  Instead, demand may be excused based on

3   allegations of wrongdoing by directors only in the "rare" case where the complaint alleges with

4   particularity facts showing that a majority of the directors engaged in such "egregious"

5   misconduct that they face not simply a "mere threat" but a "substantial likelihood of director

6   liability."  *Id.* at 815; *see also Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362, 367 (Del.

7   2006).

8                           a.      The Complaint Does Not Plead with Particularity a Claim for
                                    Breach of the Fiduciary Duty of Care, and Any Such Claim Is
9                                   Barred by the Exculpatory Provision in JPMorgan's Charter

10          "Even where it is possible to hold directors responsible for a breach of the duty of care,

11  Delaware law requires that directors have acted with gross negligence," and the definition of gross

12  negligence in Delaware corporate law is "extremely stringent."  *In re Lear Corp. S'holder Litig.*,

13  967 A.2d 640, 651-52 (Del. Ch. 2008).  The definition is so "strict that it imports the concept of

14  recklessness into the gross negligence standard," requiring a showing of the director's "'reckless

15  indifference to or a deliberate disregard of the whole body of stockholders or actions which are

16  without the bounds of reason.'"  *Id.* at 652 n.45 (quoting *Tomczak v. Morton Thiokol, Inc.*, 1990

17  WL 42607, at *12 (Del. Ch. Apr. 5, 1990)).  Plaintiff's Complaint does not come close to meeting

18  this standard.

19          Even if Plaintiffs could do so, JPMorgan's shareholders have adopted a charter provision

20  that exculpates directors for any breach of the fiduciary duty of care.  Delaware law permits

21  shareholders to adopt a charter provision "eliminating or limiting the personal  liability of a

22  director to the corporation or its stockholders for monetary damages for breach of fiduciary duty

23  as a director," with the sole exceptions of liability for:  (i) breach of the director's "duty of loyalty

24  to the corporation or its stockholders;" (ii) "acts or omissions not in good faith" or that "involve

25  intentional misconduct or a knowing violation of law;" (iii) unlawful payments of dividends and

26  unlawful stock purchases and redemptions; or (iv) "any transaction from which the director

27  derived an improper personal benefit."  8 Del. C. § 102(b)(7).  In accordance with this section,

28  JPMorgan's certificate of incorporation provides, "[t]o the fullest extent that the General

DEFS.' MOT. TO DISMISS COMPL.              25                  MASTER FILE NO.
                                                              2:13-cv-02414-KJM-EFB

Corporation Law of the State of Delaware . . . permits the limitation or elimination of the liability of directors, no director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director."  Baskin Decl. Ex. E, at 5 (art. 6(1)).

This Section 102(b)(7) exculpatory provision presents a "substantial impediment" to any claim of "likely personal liability" and greatly increases Plaintiffs' already onerous burden.  *See In re Lear Corp.*, 967 A.2d at 647, 653.  For example, in *In re Goldman Sachs Group., Inc. Shareholder Litigation*, the court held, in light of the corporation's exculpatory provision, that in order to plead demand futility "the Plaintiffs must also plead particularized facts that demonstrate that the directors acted with scienter; *i.e.*, there was an 'intentional dereliction of duty' or 'a conscious disregard' for their responsibilities, amounting to bad faith."  2011 WL 4826104, at *12 (citation omitted); *see In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d at 927 ("The exculpatory clause limits directors' liability to actions that are made in bad faith or constitute intentional misconduct."); *In re Autodesk, Inc. S'holder Deriv. Litig.*, 2008 WL 5234264, at *9-10 (N.D. Cal. Dec. 15, 2008) (on motion to dismiss, finding that the standard of bad faith is "scienter-based" because the company "adopted an exculpatory provision").[12]

Under Delaware law, a claim even of gross negligence is "unavailing" in the face of an exculpatory provision.  *Malpiede v. Townson*, 780 A.2d 1075, 1094-95 (Del. 2001); *Stone*, 911 A.2d at 369-70; *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 64-65 (Del. 2006).  As explained below, this Complaint falls far short of pleading a non-exculpated claim.

> b.     The Complaint Fails To Plead with Particularity that the Director Defendants Face a Substantial Likelihood of Liability for Breach of the Fiduciary Duty of Loyalty Based on a Failure of Oversight

---

[12] On a motion to dismiss, the court may consider those facts alleged in the complaint, documents attached as exhibits or incorporated by reference, and documents integral to plaintiff's claims. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159-60 (9th Cir. 2012).  The court may also take judicial notice of matters of public record or the contents of documents that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(a)(2); *see also In re Computer Scis. Corp. Deriv. Litig.*, 244 F.R.D. 580, 587 n.8 (C.D. Cal. 2007) (taking judicial notice of SEC filings, including proxy statements, and the company's articles of incorporation), *aff'd*, 310 Fed. App'x 128 (9th Cir. 2009).  As noted above, courts routinely consider a Section 102(b)(7) provision in a corporation's charter on a motion to dismiss for failure to plead demand futility.

---

The Complaint does not challenge specific actions of the Director Defendants but instead claims that they failed in their duty of oversight because they did not implement internal controls or enabled the Company's allegedly wrongful conduct through their failure to supervise. *E.g.*, ¶¶ 8-12, 40-45, 153-156, 160, 182, 214, 216-18, 228-33, 235, 258-60.  Because claims for breach of the duty of care (including gross negligence) are exculpated by JPMorgan's charter, Plaintiffs' can only excuse demand if they adequately allege a claim for breach of the fiduciary duty of loyalty based on a bad-faith failure to oversee the affairs of the corporation.  But this is "the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).  To establish such a claim, a plaintiff must show:  "(a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention."  *Stone*, 911 A.2d at 370.  It requires a showing that the directors consciously disregarded their responsibilities, such that they have the "mindset of a disloyal director—bad faith—because their indolence was so persistent that it could not be ascribed to anything other than a knowing decision not to even try to make sure the corporation's officers had developed and were implementing a prudent approach to ensuring law compliance." *Desimone v. Barrows*, 924 A.2d at 935; *see Stone,* 911 A.2d at 369-70; *In re Citigroup Inc.,* 964 A.2d at 124-26 (both rejecting oversight claims due to failure of particularized pleading of disloyalty and bad faith).

             i.      The Complaint Does Not Allege that JPMorgan "Utterly Failed" To Implement a System of Internal Controls, But Instead Affirms that Such a System Was in Place

The Complaint makes no allegation that JPMorgan lacked a system of internal controls, but instead pleads the contrary:  it describes in detail internal control processes and reporting systems that were in place at the Company, including various oversight committees established by the Board, including the Audit Committee, Compensation & Management Development Committee, Risk Policy Committee, and Corporate Governance and Nominating Committee, and

1   further alleges that both the Audit Committee and Risk Policy Committee met on a "frequent

2   basis."  *See, e.g.*, ¶¶ 226-27, 234, 253-57, 277; *see also* ¶¶ 141-52, 182 (alleging existence of

3   internal controls that employees evaded).  These mechanisms of board oversight preclude a

4   finding of the "sustained or systematic failure" that is essential to a failure-of-oversight claim.  *See*

5   *Guttman,* 823 A.2d at 506-07 (rejecting claim for failure to plead "critical" facts, such as

6   "contentions that the company lacked an audit committee," or that it "had an audit committee that

7   met only sporadically and devoted patently inadequate time to its work").[13]

8                          ii.       The Complaint Fails To Allege that the Director
                                     Defendants Consciously Ignored "Red Flags"
9

10          Where, as here, controls are in place but a plaintiff attempts to allege that directors acted in

11  bad faith by deliberately ignoring their oversight responsibilities, the plaintiff must plead

12  "particularized facts suggesting that the board was presented with 'red flags' alerting it to potential

13  misconduct" that they consciously and deliberately ignored.  *David B. Shaev Profit Sharing*

14  *Account v. Armstrong,* 2006 WL 391931, at *5 (Del. Ch. Feb. 13, 2006), *aff'd*, 911 A.2d 802 (Del.

15  2006); *In re Citigroup Inc.*, 964 A.2d at 128.  Once again, general or conclusory allegations are

16  insufficient.  *In re Citigroup Inc. S'holders Litig.*, 2003 WL 21384599, at *2 (Del. Ch. June 5,

17  2003) ("'[r]ed flags' are only useful when they are either waved in one's face or displayed so that

18  they are visible to the careful observer"), *aff'd*, 839 A.2d 666 (Del. 2003); *Kanter v. Barella,* 388

19  F. Supp. 2d 474, 480 (D.N.J. 2005) (oversight liability may exist only when directors turn a "blind

20  eye" to unlawful practices of which "they were aware"), *aff'd*, 489 F.3d 170 (3d Cir. 2007).  As

21  shown below, Plaintiffs set forth no particularized factual allegations demonstrating that the

22  Director Defendants learned about and consciously ignored red flags of wrongdoing related to

23  RMBS.

24  ────────────────
    [13] The allegations that the Board later enhanced governance processes (¶¶ 208-10, 237-39, 261,
25  263-64), does not demonstrate a lack of processes; moreover, it negates a finding that the Board
    acted in bad faith since it demonstrates "an evident effort to establish a reasonable system of
26  controls."  *South v. Baker*, 62 A.3d 1, 18 (Del. Ch. 2012); *see also Saginaw Police & Fire Pension*
    *Fund v. Hewlett-Packard Co.*, 2012 WL 967063, at *7 (N.D. Cal. Mar. 21, 2012) (finding that
27  retention of a consultant after Department of Justice filed claims against the company
    demonstrated that the directors "chose to take action" instead of consciously disregarding their
28  duties).

───────────────────────────────────────────────

1          Instead, Plaintiffs attempt to obscure the Complaint's lack of particularized allegations

2    with lengthy recitations of immaterial detail that have nothing to do with the Director Defendants'

3    actions.  The Complaint devotes many pages to descriptions of underwriting mortgages and

4    RMBS in the industry generally (¶¶ 70-114), the JPMorgan subsidiaries involved in those business

5    activities (¶¶ 126-37), and alleged wrongdoing by those subsidiaries (¶¶ 138-39, 159-173, 176-84,

6    186-90).  The Complaint describes alleged actions by certain bank employees (¶¶ 141-43, 145,

7    148-50, 152, 182), loan officers (¶¶ 145-46, 148-50), underwriters (¶¶ 145, 147, 150-51, 153),

8    sales and account managers (¶¶ 139-40, 157), branch and regional managers (¶¶ 146-47, 150),

9    bank "Managing Directors" (¶¶ 5, 228-29, 248, 258), and a third party diligence firm (¶¶ 161-63,

10   165-70).  The Complaint relies heavily on the Statement of Facts that accompanied the November

11   2013 settlement, but that document does not include a single reference to the Director Defendants

12   or provide any support for Plaintiffs' wholly conclusory assertion that reports made to "Executive

13   Directors" or "Managing Directors" described in the Statement of Facts were provided to the

14   Board or any Board committee.  *See* ¶¶ 5, 228-29, 248, 258.  *See, e.g.*, *South v. Baker*, 62 A.3d 1,

15   16 (Del. Ch. 2012) (rejecting use of mining regulator's report stating that management failed to

16   institute policies to prevent accidents because "it is not reasonable to infer that the Board acted in

17   bad faith based on references to 'management'"); *In re SAIC Inc. Deriv. Litig.*, 948 F. Supp. 2d

18   366, 383 (S.D.N.Y. 2013) (refusing to infer director malfeasance based on admissions in the

19   statement of responsibility accompanying a deferred prosecution agreement concerning company

20   and management misconduct), *aff'd*, 2014 WL 322055 (2d Cir. Jan. 30, 2014).

21          Plaintiffs offer only the conclusory assertion that "Defendants knowingly authorized or

22   recklessly allowed JPMorgan to engage in substantial wrongdoing in the subprime mortgage

23   market" (¶ 40; *see also* ¶¶ 8, 16, 42, 44, 45, 47, 144), without any particularized allegations as to

24   what Director Defendants knew, when they learned about the supposed wrongdoing, or how they

25   learned of such wrongdoing.  Similarly, allegations that the Director Defendants were motivated to

26   increase the Company's profitability (as directors are supposed to do for the benefit of all

27   shareholders) and that they must have known about the wrongdoing because of the purported

28   "significance" of subprime RMBS to the Company's business, (*see, e.g.*, ¶¶ 40-41, 44-45), fail to

DEFS.' MOT. TO DISMISS COMPL.          29          MASTER FILE NO.
                                                                    2:13-cv-02414-KJM-EFB

set forth a single factual allegation that the Director Defendants knew about misconduct in the issuance of RMBS alleged in the Complaint.[14]

Instead of pleading with particularity, Plaintiffs seek to rely on improper inferences or conclusions, all of which have been rejected by courts.  First, courts do not infer that if wrongdoing occurred at a company the directors must have known of it.  As the Supreme Court of Delaware has observed, "directors' good faith exercise of oversight responsibility may not invariably prevent employees from violating criminal laws, or from causing the corporation to incur significant financial liability, or both."  *Stone*, 911 A.2d at 373.  Accordingly, in *Stone*, the court affirmed the dismissal of a derivative complaint for failure to plead with particularity that the directors were aware of red flags indicating a systematic failure of their compliance program and policies even after the Company had paid $50 million in fines and penalties and was investigated by three agencies and the U.S. Attorney for violations of the Bank Secrecy Act and anti-money laundering regulations.  *Id.* at 373-74; *see also Harold Grill 2 IRA v. Chenevert*, 2013 WL 3014120, at *2-3 (Del. Ch. June 24, 2013) (holding that the plaintiff had failed to plead that demand was excused even though the company was fined $55 million and agreed to change its compliance practices after it violated U.S. export regulations and falsified its report to the State Department because the complaint did not adequately plead that the directors knowingly caused the corporation to violate the law).  Federal courts in California have adhered to these principles.  In *In re Oracle Corp. Derivative Litigation*, the court explicitly rejected the argument that because "purported overbilling occurred in the context of a large and pervasive 'scheme' over an extended time period, and involved an important . . . customer . . . and large sums of money, the outside

---

[14] Public statements by Company representatives after the relevant activities took place (¶¶ 119, 154, 172, 174) do not show that the Director Defendants knew of them at the time.  Nor does the April 2008 report from the Federal Reserve Bank of New York citing a deterioration in the quality of the Company's mortgage portfolio as a result of "'loosened underwriting standards'" and the need to "'strengthen [its] exposure . . . framework.'"  ¶ 173.  Even if the Board was aware of this April 2008 report (which the Complaint does not allege), it post-dated the alleged misconduct.  Plaintiffs incorrectly attempt to extend the time period for the alleged wrongdoing by mischaracterizing the Statement of Facts agreed to by the Company in connection with its settlement with the Department of Justice as "outlin[ing] how [JPMorgan] failed to disclose risks of buying RMBS from 2005 to 2008."  ¶ 5.  That document in fact expressly refers only to the period 2005 to 2007.  *See* Compl. Ex. A.

directors simply must have known."  2011 WL 5444262, at *4 (N.D. Cal. Nov. 9, 2011).
Similarly, in *In re Google, Inc. Shareholder Derivative Litigation*, the court held demand was not
excused because plaintiffs' allegations against the directors were "collective and general" and
failed to provide any "particularized allegations stating which particular director or directors had
knowledge of unlawful advertising."  2012 WL 1611064, at *7 (N.D. Cal. May 8, 2012).

Next, Plaintiffs assert that certain Director Defendants knew about the misconduct because
they were members of Board committees charged with oversight.  *See* ¶¶ 225-41, 252-64, 269,
273, 277.  Such knowledge cannot be inferred by virtue of committee membership.  *See South v.
Baker*, 62 A.3d at 17 ("As numerous Delaware decisions make clear, an allegation that the
underlying cause of a corporate trauma falls within the delegated authority of a board committee
does not support an inference that the directors on that committee knew of and consciously
disregarded the problem for purposes of Rule 23.1"); *In re VeriFone Holdings, Inc. S'holder
Deriv. Litig.*, 2009 WL 1458233, at *8 (N.D. Cal. May 26, 2009) ("It is conclusory to state that the
directors knew about the internal problems in accounting because they were on the Audit
Committee . . . ."); *In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 963 (N.D. Cal. 2007) ("Mere
membership on a committee or board without specific allegations as to defendants' roles and
conduct, is insufficient to support a finding that directors were conflicted.").

Plaintiffs also suggest that allegations of various types of unrelated misconduct, occurring
over a 20-year period (¶¶ 47-64), demonstrate that the Board must have known and consciously
ignored signs of misconduct specifically related to RMBS.[15]  Courts have again rejected such
efforts to plead demand futility.  Thus the court in *In re Citigroup* concluded that the plaintiffs had
"utterly failed to show how Citigroup's involvement with the financial scandals at Enron has any
relevance to Citigroup's investments in subprime securities," 964 A.2d at 129, the court in *In re
Dow Chemical Co. Derivative Litigation* held that past instances of misconduct, involving

---

[15] Courts have already dismissed derivative complaints against JPMorgan officers and directors arising out of these unrelated events.  *See, e.g.*, *Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426 (S.D.N.Y. 2005) (Enron); *Simon v. Becherer*, 775 N.Y.S.2d 313 (App. Div. 2004) (Enron); *In re JPMorgan Chase & Co. Deriv. Litig.*, 2014 WL 1297824 (S.D.N.Y. Mar. 31, 2013) (London Whale/CIO); *Wandel v. Dimon*, So-Ordered Oral Argument Tr., Index  No. 651830/2012 (N.Y. Sup. Ct. Jan. 23, 2014), Dkt. No. 78 (London Whale/CIO).

1    different managers and different transactions, was insufficient to alert the Board to weaknesses in

2    controls and to current or future violations, 2010 WL 66769, at *13, and the court in *In re SAIC*

3    also rejected the  argument that the Board's knowledge of wrongdoing connected to unrelated

4    programs should have alerted the Board to problems with the program there at issue, 948 F. Supp.

5    2d at 387.

6              c.    The Complaint Does Not Allege with Particularity that the
                     Director Defendants Face a Substantial Likelihood of Liability
7                    for Breach of Fiduciary Duty Based on Alleged
                     Misrepresentations
8

9        The Complaint makes the conclusory allegation that "[e]ach of the Defendants also

10   breached his or her duty of loyalty and candor by concealing JPMorgan's involvement in the

11   illegal RMBS sales through fraudulent and misleading representations and through the

12   concealment of material facts."  ¶ 285.  This allegation is also insufficient to plead demand futility.

13       First, claims against directors based on alleged misrepresentations are exculpated under

14   Section 102(b)(7) and are insufficient to excuse demand absent particularized allegations that the

15   directors had knowledge that the representations were untrue.  *Malpiede v. Townson*, 780 A.2d at

16   1086 & n.31; *In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 362-63 (Del. Ch. 2008); *In re*

17   *Dow Chem. Co. Deriv. Litig.*, 2010 WL 66769, at *10; *In re VeriFone Holdings, Inc.*, 2009 WL

18   1458233, at *8 ("Without a showing of scienter, *e.g.*, regarding the willingness of the directors to

19   issue SEC filings or other public statements that materially misrepresented or hid [the company's]

20   alleged internal accounting problems, plaintiffs are hard pressed to establish a 'substantial

21   likelihood of liability' for false SEC filings and other public statements").  The Complaint lacks

22   any particularized allegations that each of the Director Defendants knew that representations were

23   false when made.

24       Second, the Complaint fails to identify any false or misleading representations made by

25   each of the Director Defendants.  Plaintiffs allege that JPMorgan's 2006 Form 10-K

26   misrepresented the Company's underwriting standards for mortgage loans (¶ 122), but do not

27   identify any particular statement, or where in that document this alleged misrepresentation

28   supposedly appeared.  As discussed in Point II above, Plaintiffs similarly fail to identify

DEFS.' MOT. TO DISMISS COMPL.              32            MASTER FILE NO.
                                                        2:13-cv-02414-KJM-EFB

misrepresentations in the proxy statements or how they harmed the Company.

Third, the Complaint does not allege particularized facts showing that each of the Director Defendants was involved in the preparation of the challenged disclosures.  Although the Complaint alleges that certain Director Defendants signed the 2006 Form 10-K (¶¶ 122), signing financial reports or other SEC filings is not a sufficient basis to assert a substantial likelihood of liability.  *See Rahbari v. Oros*, 732 F. Supp. 2d 367, 380 (S.D.N.Y. 2010).  In connection with the challenged disclosures, the Complaint either makes no mention of the Director Defendants or offers only conclusory assertions that the Director Defendants "failed to disclose" (*see, e.g.*, ¶ 10) or "caused" the Company to issue proxy statements in 2011 and 2012 that included alleged false and misleading statements (¶¶ 191, 197, 200, 206, 207).  These conclusory allegations cannot excuse demand.  *See In re HP Deriv. Litig.*, 2012 WL 4468423, at *12 (N.D. Cal. Sept. 12, 2012) (finding demand not excused because "[p]laintiffs do not allege that any Director prepared these financial statements or that they were directly responsible for the misstatements"); *In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d at 934 (dismissing derivative complaint because "[p]laintiffs do not allege that any member . . . prepared these financial statements"); *see also Brautigam v. Blankfein*, 2014 WL 1244701, at *9 (S.D.N.Y. Mar. 29, 2014) (finding demand not excused because the allegations did not make clear "'how the board was actually involved in creating or approving the statements'" and there were no allegations of bad faith) (citation omitted).

    4.    Plaintiffs' Remaining State Law Claims Do Not Give Rise to a Substantial Likelihood of Director Liability

A claim for waste of corporate assets (Count II) only arises where a board authorizes action "on terms that no person of ordinary, sound business judgment could conclude represents a fair exchange."  *Steiner v. Meyerson*, 1995 WL 441999, at *1 (Del. Ch. July 19, 1995); *see also In re Walt Disney Co. Deriv. Litig.,* 907 A.2d 693, 749 (Del. Ch. 2005) ("[W]aste is a rare 'unconscionable case[] where directors irrationally squander or give away corporate assets.'" (quoting *Brehm*, 746 A.2d at 263)), *aff'd*, 906 A.2d 27 (Del. 2006).  The Complaint alleges the Director Defendants committed waste "by paying or approving the payment of executive and/or

1  director compensation based on the illegal conduct described herein." ¶ 297. But this claim is not

2  pled with particularity and cannot overcome that "high hurdle" the Delaware law imposes for

3  challenging compensation awards. *See Brehm*, 746 A.2d at 263. A "proper challenge to a

4  compensation package requires a showing of bad faith or 'an exchange of corporate assets for

5  consideration so disproportionately small as to lie beyond the range at which any reasonable

6  person might be willing to trade.'" *In re Bidz.com, Inc. Deriv. Litig.*, 773 F. Supp. 2d 844, 854

7  (C.D. Cal. 2011) (citation omitted). No such facts are pleaded here.

8      The claim for unjust enrichment (Count III) is also insufficient because the only benefit

9  identified by Plaintiffs is that the Director Defendants received compensation. ¶ 300. Absent

10  allegations of fact indicating a causal relationship between the "benefit" and the challenged

11  conduct, the Complaint does not allege a substantial likelihood of liability on this claim. *Taylor v.*

12  *Kissner*, 893 F. Supp. 2d 659, 674 (D. Del. 2012).

13  **V.     IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO THE**
         **SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. §§ 1404(a)**
14       **AND 1406(a)**

15      In the alternative, this action should be transferred to the United States District Court for

16  the Southern District of New York ("SDNY") pursuant to 28 U.S.C. § 1404(a), on the grounds

17  that transfer will serve the convenience of the parties and witnesses and the interests of justice.

18  *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1151 (E.D. Cal. 2010). Transfer is

19  particularly warranted here, given that JPMorgan's principal place of business is in New York

20  City, relevant witnesses are based in New York, and another shareholder derivative action raising

21  the same factual and legal issues is pending in the SDNY.

22      In deciding motions under Section 1404(a), courts take into account both public and

23  private interest factors. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843

24  (9th Cir. 1986). The public factors include relative docket congestion, any local interest in having

25  the controversy decided at home, and avoiding unnecessary problems with conflicts of laws or the

26  application of unfamiliar law. *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 241, 241 n.6

27  (1981)). The private factors include the weight to be given to plaintiff's choice of forum; the

28  convenience of the parties and witnesses; the location of relevant evidence; the contacts relating to

DEFS.' MOT. TO DISMISS COMPL.          34          MASTER FILE NO.
                                                    2:13-cv-02414-KJM-EFB

1  the plaintiff's cause of action in the chosen forum; the availability of compulsory process; and any

2  other practical issues related to ease, expediency, and cost.  *Id.* (citing *Gulf Oil Corp. v. Gilbert*,

3  330 U.S. 501, 508 (1947)); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

4  **A.  Public Factors Favor Transfer to the SDNY**

5  The public factors weigh heavily in favor of transfer.  First, this District has no greater

6  interest in this case than any other forum in the United States where the Company conducts

7  business activities, and it has much less interest than the SDNY, where JPMorgan is

8  headquartered.  *See, e.g., Duffer v. United Cont'l Holdings, Inc.*, 2013 WL 2147802, at *5 (S.D.

9  Cal. May 16, 2013) ("[T]he Northern District of Illinois has a stronger interest in trying this case

10  locally than does this district, as the Airline Defendants are headquartered there.").  The only

11  asserted connection to this District is that the U.S. Attorney's Office for this District is conducting

12  a criminal investigation related to the Company's RMBS activities, but that investigation does not

13  provide a sufficient connection between Plaintiffs' derivative claims and this District to warrant

14  denial of a transfer.  *See Sarandi v. Breu*, 2009 WL 2871049, at *7.

15  The interests of justice, and in particular judicial economy and the avoidance of duplicative

16  litigation and inconsistent judgments, favor transfer to the SDNY.  Personal jurisdiction and venue

17  unquestionably exist in that court as to the claims asserted in this action, avoiding piecemeal or

18  duplicative litigation of the claims in multiple forums.  In *Henson v. Fidelity National Financial,*

19  *Inc.*, for example, the court transferred a case to the Central District of California because venue

20  did not exist as to one of plaintiff's claims and thus the concomitant transfer of the co-plaintiff's

21  claims would "prevent this lawsuit from being split and tried separately in different districts,"

22  "preserv[e] [judicial resources] by having one judge decide this case, rather than two," and lessen

23  "the likelihood of different rulings, disparate outcomes, and the possibility of appeals and re-

24  litigation."  2014 WL 641978, at *12 (E.D. Cal. Feb. 18, 2014).  Similarly, in *Shari's Berries*, the

25  action was transferred to a court where there was venue over all of plaintiff's claims based on the

26  "desirability of trying all of [Plaintiff's] claims in a single forum and the fact that the vast majority

27  of events giving rise to this action occurred" in the transferee district.  2006 WL 2382263, at *4

28  (internal quotation and citation omitted).

DEFS.' MOT. TO DISMISS COMPL.          35          MASTER FILE NO.
2:13-cv-02414-KJM-EFB

These considerations apply with special force to this case because a shareholder derivative action filed on behalf of JPMorgan in the SDNY alleging virtually the same claims as alleged here already is pending in the SDNY. *Steinberg v. Dimon,* No. 14-cv-688 (S.D.N.Y.). Transfer of this action to the SDNY would lead to consolidation or coordination of these related cases and would reduce burden, expense, and potential prejudice of duplicative litigation and inconsistent judgments. *See Cont'l Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) (action transferred to a court where similar cases were pending so as to "serve the interest of justice due to the possible consolidation of discovery and the conservation of time, energy and money, and the avoidance of the possibility of inconsistent judgments").

Lastly, the relative docket congestion in this District and the SDNY heavily weighs in favor of transfer. *See Brown v. Abercrombie & Fitch Co.*, 2014 WL 715082, at *6 (N.D. Cal. Feb. 14, 2014). "'To measure congestion, courts compare the two fora's median time from filing to disposition or trial.'" *Id.* (quoting *Ctr. for Food Safety v. Vilsack*, 2011 WL 996343, at *8 (N.D. Cal. Mar. 17, 2011)). The Federal Court Management Statistics for U.S. district courts as of December 31, 2013 show a median time for civil cases from filing to disposition and to trial in the SDNY of 8.2 and 32.4 months, respectively, while in this Court the median time for civil cases from filing to disposition and to trial is 9.2 and 51.2 months, respectively. *See* Federal Court Management Statistics, District Courts (Administrative Office of the U.S. Courts, Dec. 2013), http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-december-2013.aspx.[16] Additionally, this District has 1,356 pending cases per judge, while the SDNY has fewer than half as many, 673 per judge. *See id.* "The EDC is one of the most congested districts in the country. Judges in the Eastern District of California carry the heaviest caseload in the

---

[16] Defendants request that the Court take judicial notice of this publicly available information from a U.S. government body pursuant to Federal Rule of Evidence 201(b). *See Balanced Body Univ., LLC v. Zahourek Sys., Inc.*, 2014 WL 744105, at *4 (E.D. Cal. Feb. 24, 2014) (taking judicial notice of judicial caseloads for U.S. district courts).

1    nation.  This factor weighs in favor of transfer." *Henson*, 2014 WL 641978, at *12 (internal

2    citations and quotation marks omitted); *Davis v. Social Serv. Coordinators, Inc.*, 2013 WL

3    4483067, at *5 (E.D. Cal. Aug. 19, 2013) (heavy caseloads in the Eastern District support transfer

4    to another district).

5            **B.       Private Factors Favor Transfer to the SDNY**

6            The applicable private interest factors also strongly favor transfer.  While some

7    consideration is often given to a plaintiff's choice of forum, in this case that choice is entitled to

8    little or no weight.  The real plaintiff here is JPMorgan, headquartered in New York.  As to the

9    nominal plaintiffs, one is a citizen of New Jersey, while the other two claim to be citizens of

10   California but do not allege that they are residents of this District.  *Cf. Ader v. Belimed, Inc.*, 2012

11   WL 3234206, at *9 (E.D. Cal. Aug. 6, 2012) ("the quality of plaintiff's contacts with California,

12   and particularly this judicial district, are not of a quality deserving controlling weight."); *see also*

13   *Fabus Corp. v. Asiana Express Corp.*, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001) ("The

14   degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the

15   plaintiff's venue choice is not its residence or where the forum chosen lacks a significant

16   connection to the activities alleged in the complaint.").  Moreover, where "an individual brings a

17   derivative suit . . . the named plaintiff's choice of forum is given less weight."  *Lou v. Belzberg*,

18   834 F.2d 730, 739 (9th Cir. 1987).  As the Supreme Court explained, "where there are hundreds of

19   potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's

20   cause of action and all of whom could with equal right go into their many home courts, the claim

21   of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably

22   weakened."  *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).

23          The convenience of the parties and witnesses strongly favors transfer.  *See Brown,* 2014

24   WL 715082, at *4.  The shareholder plaintiffs are merely acting in a derivative capacity on behalf

25   of nominal defendant JPMorgan, and thus are not real parties in interest or potential witnesses.

26   JPMorgan, on whose purported behalf this action has been brought, has its principal place of

27   business in New York (¶ 23), and it is vastly more efficient and cost-effective for the Company for

28   the case to be litigated there.  Not one of the Defendants is a citizen of California, while two are

DEFS.' MOT. TO DISMISS COMPL.               37              MASTER FILE NO.
                                                            2:13-cv-02414-KJM-EFB

citizens of New York and several are citizens of other states on the East Coast.  Compl. ¶¶ 25-37.

All of the current directors regularly travel to New York for meetings of the Board of Directors.

Horan Decl. ¶ 7.  These facts weigh heavily in favor of transfer, as the Defendants would likely be

the primary witnesses.  *See Sarandi v. Breu*, 2009 WL 2871049, at *7 ("[T]he most important

witnesses are the Defendants, since it is their conduct which is at issue in this case. . . . Novartis'

directors are being accused of breaching their fiduciary duties to the Company. . . .  [T]he

resolution of Plaintiff's claims ultimately will turn on the knowledge and conduct of the

Defendants."); *Johns v. Panera Bread Co.*, 2008 WL 2811827, at *4 (N.D. Cal. July 21, 2008)

("[T]he four witnesses who reside in Missouri will be better served through litigation in Missouri.

In addition, those living in the other states will also be better served by transfer, as their home

states are significantly closer to Missouri than to California.").

Courts have consistently transferred actions asserting claims *against* a corporation to the

district of the corporation's principal place of business, as that is almost always the most

convenient forum for the parties and witnesses – reasoning that is even more compelling when the

claims are purportedly brought *on behalf of* the corporation.  *See, e.g., Davis v. Social Serv.*

*Coordinators, Inc.*, 2013 WL 4483067, at *9 ("SSC's corporate headquarters are in the Southern

District of Florida, its employment and policy decisions were formulated at its headquarters, and a

majority of the opt-in plaintiffs worked for SSC at its Miami Lakes facility in the Southern District

of Florida.").[17]  As the Southern District of California recently explained in transferring a case to a

district where the defendant corporation was based:

---

[17] *See also Leroy-Garcia v. Brave Arts Licensing*, 2013 WL 4013869, at *13 (N.D. Cal. Aug. 5, 2013) ("[T]he majority of [the defendants] are individuals residing or entities which have their principal places of business in or around Los Angeles.  In such a situation, the court believes that it is more convenient for the parties, on the whole, to litigate this action in the Central District of California."); *Johns,* 2008 WL 2811827, at *3-4 ("convenience of the parties and witnesses substantially favors transfer to the Eastern District of Missouri," close to Panera's headquarters); *Foster v. Nationwide Mut. Ins. Co.*, 2007 WL 4410408, at *4 (N.D. Cal. Dec. 14, 2007) (finding that "Defendant's corporate headquarters is located in [the proposed transferee district], as are many of the witnesses defendant would likely call to testify at trial," and holding that because of this, in combination with other factors, convenience of parties and witnesses favored transfer); *Hoefer v. United States Dep't of Commerce*, 2000 WL 890862, at *2 (N.D. Cal. June 28, 2000) (because headquarters of defendants were in Washington D.C., "crucial witnesses are easily accessible if the action is litigated in the District of Columbia").

---

1

2

3

4

5

6

> [T]his case should be transferred to the Northern District of Illinois. While the Airline Defendants did not provide a specific list of witnesses they intend to call at trial, the Court finds many of the witnesses whose testimony would be relevant to this case are located in the Northern District of Illinois, which is beyond this Court's subpoena power. Conversely, the Court finds none of the witnesses whose testimony would be relevant are located in this district. . . . Similarly, the Court finds that much of the documentary evidence in this case is located in the Northern District of Illinois, while none of the documentary evidence is located in this district. While technology aids in the sharing of documentary evidence, this factor nonetheless tips in favor of transfer.

7 *Duffer v. United Cont'l Holdings, Inc.*, 2013 WL 2147802, at *4.[18]

8 In addition, key non-party witnesses, such as members of management who reported to the

9 Board regarding the parts of JPMorgan's business at issue in the Complaint, will primarily be

10 based in or near JPMorgan's New York headquarters, favoring transfer. Horan Decl. ¶ 4. *See*

11 *Italian Colors Rest. v. Am. Express*, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003) (holding

12 that the fact that most of the witnesses would be employees of the defendant corporation favored

13 transfer); *Brown*, 2014 WL 715082, at *5 (likely location of non-party witnesses, including

14 current and former defendant company employees, weighed in favor of transfer); *Foster v.*

15 *Nationwide Mut. Ins. Co.*, 2007 WL 4410408, at *4 (N.D. Cal. Dec. 14, 2007) ("[M]ost of

16 defendant's management-level employees who oversee the special investigators or work in human

17 resources are based in Ohio" at the company's headquarters).[19]

18 More generally, because this case alleges wrongdoing by JPMorgan's directors and

19 officers that caused injury to JPMorgan, the "center of gravity" of this action is in New York. "In

20 light of the location of the relevant documents and key witnesses, among other things, it readily

21 appears that" the state of the defendant company's headquarters "is the center of gravity of this

22

23

24

25

26

---

[18] The ease of access to sources of proof, such as relevant documentary evidence, is a factor to be considered, and weighs in favor of transfer to the SDNY, where JPMorgan is based. *See, e.g., Italian Colors Rest. v. Am. Express*, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003) ("Litigation costs weigh heavily in favor of transfer to the Southern District of New York, with regard to both documentary and testamentary evidence. Documents pertaining to defendants' business practices are most likely to be found at their principal place of business."); *Johns*, 2008 WL 2811827, at *4 ("Neither party disputes the fact that most, if not all, of the evidence is located at Panera's Missouri headquarters.").

27

28

[19] Further, the JPMorgan entities alleged in the Complaint (¶¶ 125-33) to have been involved in the activities alleged in the Complaint are based generally in New York, with none in California. Horan Decl. ¶ 3.

---

DEFS.' MOT. TO DISMISS COMPL.                39                MASTER FILE NO.
                                                              2:13-cv-02414-KJM-EFB

case and would be a more convenient forum." *Ader*, 2012 WL 3234206, at *10.  *See also Johns*, 2008 WL 2811827, at *5 ("[B]ecause all of Panera's key witnesses and documents are located in or near Missouri, the center of gravity would plainly appear to be the Eastern District of Missouri."); *Hoefer v. United States Dep't of Commerce*, 2000 WL 890862, at *3 (N.D. Cal. June 28, 2000) ("Litigation should proceed where the case finds its 'center of gravity.'  Because all of the defendants' key witnesses and documents are located in or near Washington, DC, that 'center of gravity' would appear plainly to be the nation's capital.") (internal citation omitted).[20] Because the "center of gravity" for this case is in New York, this action should be transferred to the SDNY.

### CONCLUSION

For all of the foregoing reasons, Nominal Defendant JPMorgan and the Defendants respectfully request that the Court grant their motion to dismiss the Complaint in its entirety for failure to plead demand futility and improper venue, and Defendants respectfully request that the Court grant their motion to dismiss for lack of personal jurisdiction and to dismiss the Section 14(a) claim for failure to state a claim.  In the alternative, Nominal Defendant JPMorgan and Defendants respectfully request that the Court transfer this action to the SDNY pursuant to 28 U.S.C. § 1404(a).

---

[20] *Cf. Hawkins*, 924 F. Supp. 2d at, 1216 ("[T]he crux of the present case lies not in California, the state where Plaintiff purports to have purchased a falsely advertised product, but in New Jersey, the state where Gerber is headquartered and allegedly issued misrepresentations concerning its probiotic products.  The primary focus of this action is the development and marketing of certain Gerber consumer goods, and decisions about how such goods were to be advertised to consumers."); *Vernon v. Qwest Commc'ns Int'l*, 643 F. Supp. 2d 1256, 1272 (W.D. Wash. 2009) ("The principal place of business for all five Defendants is Denver, Colorado.  Substantially all of the broadband product group, which develops and manages Qwest's high-speed internet service, is located in Denver, Colorado.  The majority of persons involved in developing Qwest's ETF reside in Colorado.  . . . Policy decisions regarding consumer sales, communications with customers, pricing and billing related to high-speed internet are made and approved in Colorado.  Qwest's advertising and marketing departments are located in Colorado . . . .").  *See* Horan Decl. ¶¶ 3-6.

1    DATED:  May 16, 2014                    **MORGAN, LEWIS & BOCKIUS, LLP**

2

3                                            By:  /s/ Christopher J. Banks
                                                  CHRISTOPHER J. BANKS

4                                            Franklin Brockway Gowdy (SBN: 47918)
5                                            Christopher J. Banks (SBN: 218779)
                                             Benjamin P. Smith (SBN: 197551)
6                                            Ian T. Long (SBN: 290975)
                                             One Market St., Spear St. Tower
7                                            San Francisco, CA 94105
                                             Tel:  (415) 442-1000
8                                            Fax:  (415) 442-1001

9                                            **DEBEVOISE & PLIMPTON LLP**
                                             Gary W. Kubek (pro hac vice)
10                                           Johanna Skrzypczyk (pro hac vice)
                                             919 Third Avenue
11                                           New York, NY 10022
                                             Tel:  (212) 909-6000
12                                           Fax: (212) 521-7067

13                                           *Attorneys for Nominal Defendant JPMorgan*
                                             *Chase & Co. and Defendants James Dimon,*
14                                           *William B. Harrison, Jr., and Robert I. Lipp*

15   DATED:  May 16, 2014                    **SHEARMAN & STERLING LLP**

16

17                                           By:  /s/ Jaculin Aaron

18                                           Stuart J. Baskin (pro hac vice)
                                             Jaculin Aaron (SBN 133983)
19                                           599 Lexington Avenue
                                             New York, NY 10022
20                                           Tel:  (212) 848-4000
                                             Fax:  (212) 848-7179

21                                           **SHEARMAN & STERLING LLP**
                                             Jeffrey S. Facter (SBN 123817)
22                                           Emily V. Griffen (SBN 209162)
                                             Four Embarcadero Center, Suite 3800
23                                           San Francisco, CA  94111-5994
                                             Tel:  (415) 616-1100
24                                           Fax:  (415) 616-1199

25                                           *Attorneys for Defendants James Bell; Crandall*
                                             *C. Bowles; Stephen B. Burke; James S.*
26                                           *Crown; Timothy P. Flynn; Ellen V. Futter;*
                                             *Laban P. Jackson, Jr.; David C. Novak; Lee R.*
27                                           *Raymond; and William C. Weldon*

28

DEFS.' MOT. TO DISMISS COMPL.        41        MASTER FILE NO.
                                               2:13-cv-02414-KJM-EFB