Stuart J. Baskin (pro hac vice)
    sbaskin@shearman.com
Jaculin Aaron (SBN 133983)
    jaaron@shearman.com
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Tel: (212) 848-4000
Fax:  (212) 848-7179

*Attorneys for Defendants James A. Bell;
Crandall C. Bowles; Stephen B. Burke;
James S. Crown; Timothy P. Flynn; Ellen V.
Futter; Laban P. Jackson, Jr.; David C.
Novak; Lee R. Raymond; and William C.
Weldon*

Gary W. Kubek (pro hac vice)
    gwkubek@debevoise.com
Johanna Skrzypczyk (pro hac vice)
    jnskrzyp@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000

*Attorneys for Nominal Defendant
JPMorgan Chase & Co. and Defendants
James Dimon, William B. Harrison, Jr., and
Robert I. Lipp*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re JPMORGAN CHASE DERIVATIVE LITIGATION<br><br><br><br>This Document Relates To:  All Actions. | Master File No. 2:13-cv-02414-KJM-EFB<br><br>DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2), 12(b)(3), 12(b)(6), AND 23.1 OR, IN THE ALTERNATIVE, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §§ 1404(a) and 1406(a)<br><br>Date:          September 12, 2014<br>Time:          10:00 a.m.<br>Courtroom:  3<br>Judge:        Hon. Kimberly J. Mueller |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...............................................................................................iii

INTRODUCTION................................................................................................................1

I.     THERE IS NO PERSONAL JURISDICTION OVER THE DEFENDANTS .......2

     A.    Specific Jurisdiction Is Unavailable ............................................................2

     B.    Pendent Personal Jurisdiction Is Unavailable ............................................5

II.    PLAINTIFFS FAIL TO PLEAD A SECTION 14(a) CLAIM .............................6

     A.    The Complaint Fails To Plead an "Essential Link" ....................................6

     B.    The Alleged Misstatements and Omissions Were Not Material ................7

     C.    Plaintiffs Do Not Meet the Heightened Pleading Requirements of the PSLRA..................................................................................................8

III.   VENUE IS IMPROPER IN THIS DISTRICT AS TO THE STATE LAW CLAIMS..........................................................................................................9

IV.   THE COMPLAINT DOES NOT ALLEGE THAT DEMAND IS EXCUSED ...........................................................................................................9

     A.    Plaintiffs Are Precluded from Re-Litigating Demand Futility...................9

          1.    Plaintiffs Are Bound by Prior Adjudications on Demand Futility .................................................................................9

          2.    *Steinberg* Precludes Plaintiffs from Relitigating the Section 14(a) Claim.......................................................................12

     B.    Even If Plaintiffs Were Not Precluded from Relitigating Demand Futility, the Complaint Fails To Plead that Demand on the Board is Excused ....................................................................................................13

          1.    The Complaint Does Not Allege a Lack of Independence............13

          2.    Plaintiffs Cannot Avoid the Impact of the Exculpatory Provision in JPMorgan's Charter ....................................................14

          3.    Plaintiffs Have Failed To Plead with Particularity a Substantial Likelihood of Liability for a *Caremark* Claim ...........14

a. The Complaint Does Not Allege that JPMorgan "Utterly Failed" To Implement a System of Controls ..................... 15

b. The Complaint Lacks Particularized Allegations That the Director Defendants Consciously Ignored "Red Flags" ............................................................................. 16

4. Plaintiffs Have Failed To Plead with Particularity a Substantial Likelihood of Liability for Alleged Misrepresentations ....................................................... 18

5. Waste and Unjust Enrichment ....................................................... 19

V. IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED ..... 19

CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795 (7th Cir. 2001)........................................17

*In re Affiliated Computer Services,* 2009 WL 296078 (Del.Ch. 2008)..............................................12

*Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017 (9th Cir. 1999) .......................................6

*Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142 (2008) (S.D. Cal. 2008) ..........................................................................................................................................18

*In re Bank of Am. Corp. Sec., Deriv., & Employee Ret. Income Sec. Act (ERISA) Litig.*, 2013 WL 1777766 (S.D.N.Y. Apr. 25, 2013) ....................................................................18

*Bansbach v. Zinn*, 1 N.Y.3d 1 (2003)..................................................................................................12

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040 (Del. 2004) ..........................................................................................................................................16

*Beene v. Beene,* 2012 WL 3583021 (N.D. Cal. Aug. 20, 2012) .........................................................3

*In re Bidz.com, Inc. Deriv. Litig.*, 773 F. Supp. 2d 844 (C.D. Cal. 2011) ......................................19

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)......................................................................................17

*Brown v. Robb*, 583 A.2d 949 (Del. 1990)........................................................................................14

*Brown v. United Water Del., Inc.*, 2010 WL 20525373 (Del. Super. Ct. May 20, 2010)................................................................................................................................................14

*Cadenasso v. Metro. Life Ins. Co.*, 2014 WL 1510853 (N.D. Cal. Apr. 15, 2014)..........................20

*Cent. Delta Water Agency v. U.S. Fish and Wildlife Serv.*, 653 F. Supp. 2d 1066 (E.D. Cal. 2009) ..........................................................................................................................16

*Central Laborers' Pension Fund v. Dimon*, 2014 WL 3639185 (S.D.N.Y. July 23, 2014)................................................................................................................................................12

*In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106 (Del. Ch. 2009) ..............................17, 18

*In re Citigroup Inc. S'holders Litig.*, 2003 WL 21384599 (Del. Ch. June 5, 2003) aff'd, 839 A.2d 666 (Del. 2003) ............................................................................................16

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) ..........................................................................................................................................8

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 2013 WL 2156358 (N.D. Cal. May 17, 2013)..................................................................................................16

*In re Converium Holding AG Secs. Litig.*, 2007 WL 2684069 (S.D.N.Y. Sept 14, 2007)..................................................................................................................18

*In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044 (C.D. Cal. 2008)................7, 17

*In re Countrywide Fin. Corp. Mortg. Sec. Litig.*, 2012 WL 1322884 (C.D. Cal. Apr. 26, 2012) ...............................................................................................4

*Duffer v. United Cont'l Holdings, Inc.*, 2013 WL 2147802 (S.D. Cal. May 16, 2013)..................................................................................................................20

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) ..........................................................................7

*Edumoz LLC v. Republic of Mozambique*, 968 F. Supp. 2d 1041 (C.D. Cal. 2013) ......................16

*Gaines v. Haughton*, 645 F.2d 761 (9th Cir. 1981).................................................................7, 8

*Gerrity v. Chapin*, 1980 WL 1364 (S.D.N.Y. Jan. 9, 1980) ..............................................12

*In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104 (Del. Ch. Oct. 12, 2011)..............................................................................................14, 18

*In re Goldman Sachs Mortg. Sev. S'holder Deriv. Litig.*, 2012 WL 3293506 (S.D.N.Y. Aug. 14, 2012) ..........................................................................18

*In re Hanger Orthopedic Group, Inc.*, 418 F. Supp. 2d 164 (E.D.N.Y. 2006) ................................19

*Henik ex rel. LaBranche & Co. v. LaBranche*, 433 F. Supp. 2d 372 (S.D.N.Y. 2006)..................................................................................................................11

*Howard v. Everex Sys.*, 228 F.3d 1057 (9th Cir. 2000) ..............................................18

*Howard v. Stature Elec., Inc.*, 20 N.Y.3d 522 (2013)..........................................10, 12

*In re Infosonics Corp. Deriv. Litig.*, 2007 WL 2572276 (S.D. Cal. Sept. 4, 2007) .........................3

*Iron Workers Mid-South Pension Fund v. Dimon,* No. 9449-VCN (Del. Ch.)..............................20

*In re ITT Corp. Deriv. Litig.*, 653 F. Supp. 2d 453 (S.D.N.Y. 2009)..........................................17

*In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808 (Del. Ch. 2005) ............................13

*In re JPMorgan Chase & Co. Deriv. Litig.*, 2014 WL 1297824 (S.D.N.Y. Mar. 31, 2014)..................................................................................................................13

*Kelley v. Rambus*, 2008 WL 5170598 (N.D. Cal. Dec. 9, 2008) ....................................................7

*Lane v. Page*, 649 F. Supp. 2d 1256 (D.N.M. 2009) ...........................................................7

*In re Lear Corp. S'holder Litig.*, 967 A.2d 640 (Del. Ch. 2008) ...................................14

*Lewis v. Vogelstein*, 699 A.2d 327 (Del. Ch. 1997) .........................................................19

*Malpiede v. Townson,* 780 A.2d 1075 (Del. 2001) .........................................................19

*McCall v. Scott*, 239 F.3d 808 (6th Cir. 2001) ................................................................17

*In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ...........9

*Meadows v. Pac. Inland Sec. Corp.,* 36 F. Supp. 2d 1240 (S.D. Cal. 1999)......................5

*Mehlenbacher v. Jitaru*, 2005 WL 4585859 (M.D. Fla. June 6, 2005)..............................3

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970).........................................................7

*Norfolk Cnty. Ret. Sys. v. Jos. A. Bank Clothiers, Inc.*, 2009 WL 353746 (Del. Ch. Feb. 12, 2009)...............................................................................................18

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ................................................................18

*NYCERS v. Jobs*, 593 F.3d 1018 (9th Cir. 2010) ..............................................................8

*Official Comm. of Bond Holders of Metricom, Inc. v. Derrickson*, 2004 WL 2151336 (N.D. Cal. Feb. 25, 2004) .............................................................................19

*Openwave Sys. Inc. v. Fuld,* 2009 WL 1622164 (N.D. Cal. June 6, 2009)...................4, 5

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ..............................................3

*In re Pfizer Inc. S'holder Deriv. Litig.*, 722 F. Supp. 2d 453 (S.D.N.Y. 2010) ..............17

*Piper Aircraft Co. v. Reyno*, 454 U.S. 241 (1981) ..........................................................20

*Plaza PH2001 LLC v. Plaza Residential Owner LP*, 98 A.D.3d 89 (N.Y. App. Div. 2012)...............................................................................................................11

*Prieto v. U.S. Bank Nat'l Assoc.*, 2012 WL 4510933 (E.D. Cal. Sept. 30, 2012)...........10

*Rales v. Blasband*, 2003 WL 22284323 (Del. 1993) ......................................................13

*Rattner v. Bidzos*, 634 A.2d 927 (Del. Ch. Sept. 30, 2003) ............................................17

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 2014 WL 2905387 (N.D. Cal. June 25, 2014)......................................................7

*Rich ex rel Fuqi Int'l, Inc. v. Chong,* 66 A.3d 963 (Del. Ch. 2013)................................15

*Ryan v. N. Y. Tel. Co.*, 62 N.Y.2d 494 (1984)................................................................12

*Sanders v. Wang*, 1999 WL 1044880 (Del. Ch. Nov. 8, 1999)..........................................................14

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ..........................................2

*S.E.C. v. Mercury Interactive, LLC,* 2009 WL 2984769 (N.D. Cal. Sept. 15, 2009) .......................6

*S.E.C. v. Mercury Interactive, LLC,* 2010 WL 3790811 (N.D. Cal. Sept. 27, 2010) .......................7

*Steinberg v. Dimon*, 2014 WL 3512848 (S.D.N.Y. July 16, 2014) ........................................ *passim*

*Stephen Blau MD Money Purchase Pension Plan Trust v. Dimon*, No. 650654/2014
  (N.Y. Sup. Ct.) ..............................................................................................................................20

*Stone ex rel. AmSouth Bancorp v. Ritter*, 911 A.D.2d 362 (Del. 2006)....................................14, 15

*In re Teledyne Def. Contr. Deriv. Litig.*, 849 F. Supp. 1369 (C.D. Cal. 1993)..................................8

*In re Tower Air, Inc.*, 416 F.3d 229 (3d Cir. 2005)..........................................................................14

*Travis v. Mittelstaedt*, 2008 WL 755842 (E.D. Cal. Mar. 19, 2008) ................................................4

*UBS Sec. LLC v. Highland Capital Mgmt.*, 86 A.D.3d 469 (N.Y. App. Div. 2011)......................11

*In re Veeco Instruments, Inc. Sec. Litig.* 434 F. Supp. 2d 267 (S.D.N.Y. 2006) ............................13

*Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) ........................................................7

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ...........................................................................................4

*In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693 (Del. Ch. 2005) ................................................19

*Wixon v. Wyndham Resort Dev. Co.*, 2008 WL 1777494 (N.D. Cal. Apr. 18, 2008)......................3

*Young v. Colgate-Palmolive Co.,* 790 F.2d 567 (7th Cir. 1986)....................................................3, 4

*Zucker v. Rubin, et al.*, Index No. 651580/2011, Dkt. No. 62 (N.Y. Sup. Ct. July 23,
  2014)............................................................................................................................................11

**Statutes and Rules**

15 U.S.C. § 78u-4(b)(1) .....................................................................................................................8

15 U.S.C.A. § 78u-4(b)(2)(A) ...........................................................................................................8

Fed. R. Civ. P. 23.1 ...........................................................................................................................15

28 U.S.C. § 1401 ................................................................................................................................9

8 Del. C § 102(b)(7) ..........................................................................................................................14

8 Del. C § 220 ...............................................................................................................................1, 16

## INTRODUCTION

Unable to overcome the many defects demonstrated in Defendants' Memorandum of Points and Authorities ("Mem."), Plaintiffs strain to re-characterize the allegations of their Complaint and distort or ignore settled law that requires dismissal of this action.  Plaintiffs' efforts to salvage their flawed lawsuit should be rejected, and this action dismissed.

First, personal jurisdiction is lacking.  The Complaint alleges *no* actions in or directed at this state or District by the defendant Board members in their capacities as directors.  Without citing a single decision in a derivative action in support, Plaintiffs posit sweeping theories of jurisdiction and venue that effectively would mean that a director could be sued for derivative claims in every judicial district in the nation, regardless of his or her own conduct or contacts.

Second, the Court should reject Plaintiffs' request that the Court disregard and remake controlling New York law, under which this case is precluded by the dismissal of at least three prior derivative actions for failure to plead that demand on the Board is excused.  Plaintiffs cannot ignore the identity of issues between this and the prior dismissed actions — indeed, in the case of *Steinberg v. Dimon* from the Southern District of New York ("SDNY") the allegations at issue are virtually word-for-word the same as in this action.

Third, even if Plaintiffs were not precluded from relitigating demand futility, Plaintiffs fail to satisfy well-developed Delaware law, interpreted and applied with respect to JPMorgan in twelve prior Delaware and New York decisions, which requires dismissal of this case for failure to make a presuit demand on the Board.  Plaintiffs not only ignore this body of unanimous precedents, but they effectively concede their Complaint's failure of particularized pleading by proffering a legally invalid opinion of a supposed "expert" who has no knowledge of what the JPMorgan board knew or did.  Plaintiffs' tactic is all the more inappropriate in that they had, but failed to utilize, the opportunity to obtain information about the Board's actual knowledge by making a books and records demand under section 220 of the Delaware General Corporation Law, a presuit device encouraged by the Delaware Supreme Court to allow for particularized pleading of facts in a meritorious derivative action.

Finally, Plaintiffs have articulated no convincing reason why this suit should remain in this

DEFS.' REPLY MEM.                              1                    MASTER FILE NO.
                                                                   2:13-cv-02414-KJM-EFB

District rather than be transferred to the SDNY.  No party is a resident of this District, JPMorgan's principal place of business lies 3,000 miles away, and the likely witnesses and many Defendants reside in or near, or regularly travel to, New York.  A New York court could reach the merits without the jurisdictional and venue problems that undermine this suit.  There exists no good reason for Plaintiffs to have brought this action in this Court, and numerous grounds compel its dismissal or transfer.

## I.      THERE IS NO PERSONAL JURISDICTION OVER THE DEFENDANTS

Plaintiffs do not dispute that general jurisdiction over the individual Defendants is unavailable; that no meeting, act or omission by the JPMorgan Board occurred in California; and that the only injury that matters for specific jurisdictional purposes is the injury allegedly inflicted upon JPMorgan (on whose behalf Plaintiffs purport to sue) which is incorporated in Delaware and headquartered in New York.  Plaintiffs contend that jurisdiction nonetheless may be exercised over the Director Defendants in California merely because the Company made mortgages or sold securities to investors there; the Company entered into a settlement with many state and federal governmental agencies including the State of California; and the U.S. Attorney's office in Sacramento, in addition to the Department of Justice and U.S. Attorneys in several other states, investigated the Company's RMBS activities.  None of these factors is relevant to the issue of whether there was "purposeful" activity to harm JPMorgan or to the location of that alleged injury.  Plaintiffs cite not a single decision from a derivative action supporting their broad jurisdictional view, and the cases they do cite are irrelevant.  Indeed, if Plaintiffs' view were correct, individual members of the JPMorgan Board could be sued wherever the Company engaged in activity— which is to say in every state and many foreign countries.  This plainly is not and could not be the law.

### A.      Specific Jurisdiction Is Unavailable

Plaintiffs' arguments fail to demonstrate that they have satisfied the first prong of the specific jurisdiction "effects" test, which requires that each defendant "purposefully directed his activities towards the state."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Out-of-state acts with foreseeable effects in the forum state are insufficient.  Plaintiffs

must allege "something more," specifically, facts that demonstrate the defendant "expressly aimed" his activities at the forum state, *id*. at 803, by means of "individualized targeting." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1157 (9th Cir. 2006) (citation omitted). The Board's alleged actions related to Company activity of national or even international applicability, and Plaintiffs have not shown that the Board targeted California as opposed to any other jurisdiction.

Contrary to Plaintiffs' assertion, cases addressing "where the *harm is suffered*" (Opposition ("Opp.") 5) in a derivative suit for the "purposeful direction" test have consistently found the corporation's principal place of business to be the location of the harm. *See Wixon v. Wyndham Resort Dev. Co.*, 2008 WL 1777494, at *6 (N.D. Cal. Apr. 18, 2008) ("[H]aving concluded that Plaintiffs' claims are derivative in nature, the Court also concludes that those [alleged fiduciary duty violations] were expressly aimed at California, in that they impact WorldMark, a California corporation."); *In re Infosonics Corp. Deriv. Litig.*, 2007 WL 2572276, at *4 (S.D. Cal. Sept. 4, 2007) ("Given that InfoSonics' principal place of business is California, [non-resident directors'] alleged wrongful acts . . . were expressly aimed at California and caused harm in California."); *Mehlenbacher v. Jitaru*, 2005 WL 4585859, at *14 (M.D. Fla. June 6, 2005) (finding jurisdiction in Florida in derivative suit over director "accused of intentional wrongdoing directed at a corporation headquartered in Florida, which injured that company in Florida").

Plaintiffs' attempts to distinguish the cases cited by Defendants fail. Opp. 5-6. Plaintiffs' assertions that the plaintiff in *Beene v. Beene* "failed to show *any* harm in the forum state and only alleged general, not specific jurisdiction," (Opp. 5) are contradicted by the court's lengthy discussion of specific jurisdiction. The court rejected plaintiff's argument that "the Individual Defendants intentionally targeted these actions at him and at the other California Shareholders, because they intended to reduce the value of Plaintiff's stake in [nominal defendant] PI," and concluded that "the Individual Defendants' conduct would have been targeted at PI and the harm would have been felt by PI, notwithstanding the incidental impact on Plaintiff." 2012 WL 3583021, at *5-6 (N.D. Cal. Aug. 20, 2012). Plaintiffs similarly mischaracterize *Young v. Colgate-Palmolive Co.* as concerning only Illinois' long-arm statute, whereas the Seventh Circuit also held that "[d]ue process does not allow the directors of a national corporation to be sued by its

DEFS.' REPLY MEM.                    3                    MASTER FILE NO.
                                                          2:13-cv-02414-KJM-EFB

1  shareholders anywhere the corporation happens to be present." 790 F.2d 567, 571-72 (7th Cir.

2  1986).  Plaintiffs claim *In re Countrywide Financial Corp. Mortgage Backed Securities Litigation*

3  is distinguishable because the claims there were brought under Massachusetts securities law, but

4  that supposed distinction played no role in the court's analysis of its jurisdiction over a

5  corporation's officers who "knew that [the corporation] sold Certificates to institutional investors

6  nationwide and that Massachusetts investors (as well [as] investors in the other 49 states) were

7  therefore likely to end up with some Certificates.  This does not suffice to show express aiming,

8  purposeful direction, or even purposeful availment." 2012 WL 1322884, at *9 (C.D. Cal. Apr. 26,

9  2012).  Notably, the court concluded there was no jurisdiction even in a direct suit by investors

10  where derivative injury to the corporation need not be shown.

11     Plaintiffs also misapply the second prong of the specific jurisdiction "effects" test, which

12  requires that the claims would not have arisen "but for" the defendant's contacts with California.

13  Plaintiffs assert that "Defendants purposefully directed its [sic] activities at residents in California

14  by purchasing subprime loans from California homeowners and securitizing them and re-selling

15  them to California institutional investors" (Opp. 6), but this was conduct by JPMorgan, not the

16  Director Defendants, who are not alleged to have purchased or securitized a single subprime loan

17  in California.  *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (court must analyze "contacts

18  that the 'defendant *himself*' creates with the forum State") (citation omitted) (emphasis in

19  original).  Plaintiffs' claims of deficient oversight by the Board, meeting primarily in New York,

20  do not depend on whether JPMorgan ever purchased *California* loans or sold RMBS to *California*

21  investors, and thus fail the "but for" test.  *Cf. Travis v. Mittelstaedt*, 2008 WL 755842, at *3 (E.D.

22  Cal. Mar. 19, 2008) (derivative litigation on behalf of California-headquartered company

23  "unquestionably arises out of the [non-resident director] defendants' activities in California,

24  because all or most of Plaintiff's allegations are based on decisions defendants made or did not

25  make during board and committee meetings in California").  Plaintiffs' reliance on *Openwave*

26  *Systems Inc. v. Fuld* is misplaced, since that was a non-derivative suit and the plaintiff sued

27  directors and officers of Lehman Brothers for participating in a scheme to falsely market securities

28

---

DEFS.' REPLY MEM.                    4                    MASTER FILE NO.
                                                         2:13-cv-02414-KJM-EFB

1   directly to the plaintiff in California.  2009 WL 1622164, at *12 (N.D. Cal. June 6, 2009).[1]

2       **B.      Pendent Personal Jurisdiction Is Unavailable**

3       Pendent personal jurisdiction over the state law claims does not exist because the Section

4   14(a) claim (1) must be dismissed, *see* Part II, *infra*, and (2) even if not dismissed, cannot provide

5   personal jurisdiction over the state law claims for two independent reasons.

6       *First*, the federal and state law claims do not arise out of the same nucleus of operative

7   facts.  Mem. 14-15.  Plaintiffs' observation that the "damages inflicted upon JPMorgan as a result

8   of the RMBS transactions [*i.e.*, the amounts paid to settle claims] were incurred *after* the issuance

9   of the false and misleading Proxies" (Opp. 13) is beside the point, as the underlying alleged

10   *conduct* occurred years earlier.  *Meadows v. Pacific Inland Security Corp.* (Opp. 12-13) is

11   inapposite because it involved supplemental *subject matter* jurisdiction, and the federal and state

12   securities claims at issue were based on the same transactions.  36 F. Supp. 2d 1240, 1242-44,

13   1254 (S.D. Cal. 1999).

14       *Second*, "considerations of judicial economy, convenience and fairness to litigants" weigh

15   against exercising pendent personal jurisdiction because JPMorgan's headquarters are far from

16   this District and no parties or key witnesses are located here.  Moreover, exercising jurisdiction

17   would result in piecemeal litigation since there is no basis for personal jurisdiction over the three

18   Defendants (Flynn, Harrison, and Lipp) who are not sued on the Section 14(a) claim.  Plaintiffs'

19   assertion that "Defendants fail to explain how Harrison, Lipp, and Flynn could be prejudiced by

20   defending the case in this Court" (Opp. 13) is irrelevant because the court lacks any basis to

21   exercise personal jurisdiction over them.

22

23   ---

[1] Nor is the "but for" test met by the Company's RMBS settlement and related investigations, which Plaintiffs inaccurately portray as California-focused.  Opp. 1.  The settlement was announced by the "Justice Department, along with federal and state partners," as part of efforts of President Obama's Financial Fraud Enforcement Task Force's RMBS Working Group, which included the "Department of Justice, 10 U.S. attorney's offices, the FBI, the Securities and Exchange Commission (SEC), the Department of Housing and Urban Development (HUD), HUD's Office of Inspector General, the FHFA-OIG, the Office of the Special Inspector General for the Troubled Asset Relief Program, the Federal Reserve Board's Office of Inspector General, the Recovery Accountability and Transparency Board, the Financial Crimes Enforcement Network, and more than 10 state attorneys general offices around the country."  Compl. Ex. A.  The settlement resolved claims of several federal agencies and states, with $298.9 million (about 2%) of the $13 billion total amount going to California.  *Id.*  The Justice Department's Civil Division had conducted investigations, along with the U.S. Attorney's Offices for the Eastern District of Pennsylvania, the Northern District of Texas, and the Eastern District of California.  *Id.*

## II.      PLAINTIFFS FAIL TO PLEAD A SECTION 14(a) CLAIM

### A.      The Complaint Fails To Plead an "Essential Link"

Plaintiffs' contention that the 2011 and 2012 proxy statements contained false statements and omissions concerning the adequacy of the Board's "risk oversight of management . . . and internal controls" (¶¶ 306-07; *see also* Opp. 7) fails to state a claim.  Section 14(a) claims for monetary damages must plead that (1) votes for a particular corporate action were obtained via a false proxy statement, and (2) the transaction at issue was the direct cause of plaintiff's pecuniary injury.  The Complaint pleads neither, and Plaintiffs cite no cases supporting their position that proxy statements issued in 2011 and 2012 (even if inaccurate) could have caused JPMorgan's losses from conduct in 2005 to 2007.   Mem. 9-11.  Nor do Plaintiffs effectively respond to the numerous cases holding otherwise.  Plaintiffs characterize *S.E.C. v. Mercury Interactive, LLC* as holding merely that a defendant (Smith) who became an officer after the relevant proxy statements were filed could not be liable (Opp. 11), but what the court actually held was that two proxy statements "filed after [Smith] became the CFO were filed after the alleged [options] backdating had ceased; thus it is unclear how those proxy statements could have been an essential link in the execution of a backdating transaction."  2009 WL 2984769, at *4 (N.D. Cal. Sept. 15, 2009).

Without legal support for their logically impossible theory of causation, Plaintiffs speculate that "billions of dollars in damages . . . could have been avoided had an independent Chairman and independent directors been appointed" years later.  Opp. 9-10.  But damages caused by actions predating the proxy statements cannot meet Section 14(a)'s causation requirement even when the effects of those actions continue after the proxy vote.  Mem. 10-11.  Simply put, the harm Plaintiffs allege from RMBS activities in 2005 to 2007 could not have been caused by 2011 and 2012 proxies that Plaintiffs speculate affected the results of director elections in those years.[2] Plaintiffs' argument that inadequate internal controls continued after the RMBS activity "and spawned the recent settlements" (Opp. 10) is likewise flawed.  This allegation, which appears nowhere in the Complaint, is nothing more than "a transparent attempt to shift attention from . . .

---

[2] "[P]roximate cause asks for an interpretation of events that did occur, not the speculative assessment of events that might otherwise have taken place."  *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1028 (9th Cir. 1999).

1   historical [activity], which is the ultimate wrong of which [they] complain." *Kelley v. Rambus*,

2   2008 WL 5170598, at *8 (N.D. Cal. Dec. 9, 2008); *S.E.C. v. Mercury Interactive, LLC*, 2010 WL

3   3790811, at *3 (N.D. Cal. Sept. 27, 2010) (same).[3]

4         **B.**      **The Alleged Misstatements and Omissions Were Not Material**

5         Plaintiffs' allegations of omissions as to "risk oversight management" and "internal

6   controls" are as a matter of law not material under Section 14(a) because they are only claims of

7   non-disclosure of "alleged mismanagement or breach of fiduciary duty" that the Supreme Court

8   has firmly held would be an improper "federalization of corporate law." Mem. 11-12 & n.6.[4]

9         In addition, generalized statements about the quality of a company's risk management and

10   internal controls are inactionable puffery. Mem. 12. Rather than addressing the substance of the

11   similar disclosures that the court found inactionable in *ECA, Local 134 IBEW Joint Pension Trust*

12   *of Chicago v. JP Morgan Chase Co.*, Plaintiffs argue that *ECA* dealt with financial disclosures that

13   "did not call for a shareholder vote" (Opp. 9) even though the court drew no such distinction and

14   dismissed both the Section 10(b) and Section 14(a) claims based on the same materiality

15   deficiencies. 553 F.3d 187, 206 (2d Cir. 2009).[5] The statements here cannot be material because

16   they are no more than "aspirational statement[s]" of intent to follow internal policies that are not a

17   guarantee of perfect compliance. *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v.*

18   *Hewlett-Packard Co.*, 2014 WL 2905387, at *6 (N.D. Cal. June 25, 2014) (noting "long line of

19

20   [3] Contrary to Plaintiffs' assertion that under *Mills v. Electric Auto-Lite Company*, 396 U.S. 375 (1970), causation is
21   presumed where "misrepresentations and omissions are material" (Opp. 10), *Mills* only established the Section 14(a)
   "essential link" causation standard. *Gaines v. Haughton*, 645 F.2d 761 (9th Cir. 1981), held only that transaction
22   causation and materiality might be connected for "fundamental corporate changes" that must be made with
   shareholder approval, or where the claim "attacks only the election itself, instead of seeking money damages or other
23   relief." *Id.* at 775-76. Even where materiality might be presumed to have affected the outcome of a proxy vote, it
   cannot satisfy the requirement that plaintiff allege how the corporation was damaged as a result of the vote. *Lane v.*
24   *Page*, 649 F. Supp. 2d 1256, 1277-78 (D.N.M. 2009).

25   [4] *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1076 (C.D. Cal. 2008) (Opp. 8), the "essence" of
   the Section 14(a) claim was the failure to disclose the company's true condition resulting from RMBS practices
26   contemporaneous with the proxy statements. Plaintiffs' claims thus went beyond the mere "failure to disclose a
   breach of fiduciary duty" because, unlike here, the allegations that directors "fail[ed] to monitor [Countrywide's]
   adherence to underwriting standards [was] of secondary importance" within their Section 14(a) claim. *Id.* at 1077.

27   [5] The statement of belief at issue in *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1094-96 (1991) (Opp. 8),
28   concerning the fairness of a specific share price for a merger was far more particular and significant than the
   statements here (which are similar to disclosures that many courts since *Virginia Bankshares* have held immaterial).

1  decisions" holding "violations of . . . code of ethics" not actionable).  Courts regularly dismiss

2  Section 14(a) and other securities claims on the ground that disclosures related to financial

3  institutions' policies similar to those alleged here are mere puffery or are too general to be

4  actionable.  *See, e.g.*, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d

5  173, 183 & n.44 (2d Cir. 2014) (holding that "[i]t is well-established that general statements about

6  reputation, integrity, and compliance with ethical norms are inactionable 'puffery'" and that the

7  "general statements about risk management" at issue were not actionable).

8         Lastly, the Opposition claims that Defendants sought to cover up the fact that they

9  "personally profited" from the alleged wrongdoing, by seeking to enhance the Company's

10  profitability and continue receiving compensation for their service as directors.  Opp. 9.  But

11  Plaintiffs cite no authority for this novel theory of self-dealing, which is deficient for the same

12  reasons Plaintiffs' claims of director interest and non-independence are deficient.  The

13  compensation was fully disclosed, and Plaintiffs' unsupported theory that Defendants were

14  supposedly "covering up" the fact that they had not really earned the compensation is simply a

15  restatement of Plaintiffs' inactionable claim for the alleged non-disclosure of mismanagement.

16  *See* Mem. 22-24; *see also In re Teledyne Def. Contr. Deriv. Litig.*, 849 F. Supp. 1369, 1380-81

17  (C.D. Cal. 1993) (citing *Gaines*, 645 F.2d at 776-78).

18         **C.     Plaintiffs Do Not Meet the Heightened Pleading Requirements of the PSLRA**

19         The Section 14(a) claim is subject to the heightened pleading requirements of the PSLRA,

20  which demands that Plaintiffs "specify each" allegedly misleading statement and "the reasons

21  why" each is misleading.  15 U.S.C. § 78u-4(b)(1); *NYCERS v. Jobs*, 593 F.3d 1018, 1022 (9th

22  Cir. 2010); Mem. 13.  Although the Complaint copies large swaths of the 2011 and 2012 proxy

23  statements, neither the Complaint nor the Opposition explains why particular statements from

24  those extended excerpts are misleading.

25         Plaintiffs do not dispute that they also have not pled scienter with particularity as to each

26  Defendant, as required by the PSLRA.  15 U.S.C.A. § 78u-4(b)(2)(A).  Instead, Plaintiffs argue

27  that "a Section 14(a) claim sounds in negligence" (Opp. 11), ignoring their own repeated

28  allegations that Defendants acted "maliciously, oppressively, and with intent to defraud."  ¶ 294;

*see also id.* ¶¶ 8, 13, 43, 47-48, 182, 263, 284-86.  However, as the court ruled in *Steinberg v. Dimon*, 2014 WL 3512848, at *4 n.5 (S.D.N.Y. July 16, 2014), faced with virtually identical allegations, a plaintiff cannot argue that a negligence standard applies to a Section 14(a) cause of action that "is essentially a fraud claim."  Even if the Section 14(a) claim were governed by a negligence standard, Plaintiffs must plead with particularity, as to each Defendant, "a strong inference of negligence" in the preparation of the 2011 and 2012 proxy statements, which they fail to do.  *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000).

## III.   VENUE IS IMPROPER IN THIS DISTRICT AS TO THE STATE LAW CLAIMS

Venue is improper because none, let alone "a substantial part of the events or omissions giving rise to the claim," occurred in this District.  Plaintiffs' claim is for alleged breaches of fiduciary duty owed to JPMorgan by the Defendants, yet none of Defendants' alleged conduct occurred in California.  Moreover, even if the location of the alleged harm for which Plaintiffs seek to recover is considered, the relevant harm in this derivative action was to JPMorgan, which is headquartered in New York, not harm to "homeowners and institutional investors in this California District."  *See* Opp. 14.  The key cases cited by the Defendants, which Plaintiffs fail even to mention or attempt to distinguish, are on point and confirm that venue is improper here. *See* Mem. 17 (citing *Bockman*, *First Solar*, and *Gamboa*).[6]

## IV.   THE COMPLAINT DOES NOT ALLEGE THAT DEMAND IS EXCUSED

### A.   Plaintiffs Are Precluded from Re-Litigating Demand Futility

#### 1.   Plaintiffs Are Bound by Prior Adjudications on Demand Futility

Plaintiffs implicitly concede that New York law governs the application of collateral estoppel in this case.  Opp. 15.  The highest court of New York State has made clear that courts "consider two factors when determining whether preclusive effect should be given: First, whether the identical issue was necessarily decided in the prior action or proceeding and is decisive of the

---

[6] The Opposition (but not the Complaint) cites 28 U.S.C. § 1401, which provides that venue is proper in a shareholder derivative suit "in any judicial district where the corporation might have sued the same defendants," making clear that the relevant venue inquiry treats the nominal defendant company as the allegedly injured plaintiff.  However, Plaintiffs fail to explain why JPMorgan "might have sued" the Defendants in this District, other than their misguided assertion that "the harm" occurred here.  Opp. 14.

present action, and second, whether the party who is attempting to relitigate the issue had a full and fair opportunity to contest it in the prior action or proceeding." *Howard v. Stature Elec., Inc.*, 20 N.Y.3d 522, 525 (2013) (citation omitted).  In a derivative action, New York law precludes a stockholder from asserting demand futility allegations that were previously made unsuccessfully by another stockholder plaintiff (*see* Mem. 19), and the Opposition cites no law to the contrary.

*Three* prior cases have now dismissed with prejudice the claims that Plaintiffs attempt to assert here — that demand on JPMorgan's Board is excused based on their alleged responsibility for the Company's RMBS-related losses.  *See* Mem. 18-20 (discussing *Siegel* and *Asbestos Workers*).  The most recent is *Steinberg v. Dimon*, which dismissed with prejudice demand futility allegations essentially identical to those made here.  2014 WL 3512848, at *5, Dkt. Nos. 21-22 (S.D.N.Y. July 16, 2014).[7]  As to Board independence, both *Steinberg* and Plaintiffs alleged that:

> —Director Defendants Bell, Bowles, Burke, Crown, Jackson, Raymond, and Weldon lack independence because they receive compensation and stock awards in exchange for their service.  *Compare* Reply Declaration of Stuart J. Baskin, dated August 20, 2014 ("Baskin Reply Decl.") Ex. A, (*Steinberg v. Dimon, et al.*, No. 14 Civ. 688(PAC), Dkt. No. 1 (S.D.N.Y. Feb. 3, 2014) (the "Steinberg Compl.")) ¶¶ 215, 218, 223, 226, 230, 235, 237, *with* ¶¶ 68, 242, 265, 270, 274, 276.

> —Director Defendants Bowles, Burke, Crown, Jackson, and Weldon lack independence because they or affiliated companies received loans, extensions of credit, financial services, charitable contributions, or leased office space from JPMorgan.  *Compare* Steinberg Compl. ¶¶ 220, 224, 228, 232, 239, *with* ¶¶ 243, 244, 266, 267, 271, 278.

> —The Director Defendants lack independence because they are dominated "by the Individual Defendants."  *Compare* Steinberg Compl. ¶ 241, *with* ¶ 280.

The *Steinberg* court rejected these allegations, and Plaintiffs are estopped to relitigate them.

*Steinberg* also rejected allegations that a majority of the Director Defendants face a substantial likelihood of liability based on the RMBS-related activities of the Company.  The relevant allegations in *Steinberg* are nearly identical to Plaintiffs' allegations here, as shown by the blackline comparing the complaints submitted herewith.  Baskin Reply Decl. Ex. B; Steinberg Compl. ¶¶ 5, 97-98, 101-72; Compl. ¶¶ 4-5, 115-88, 190.  Plaintiffs try to obscure this obvious

---

[7] The law of the State of New York determines the preclusive effect of this decision as to the state law claims. *See Prieto v. U.S. Bank Nat'l Assoc.*, 2012 WL 4510933, at *8 (E.D. Cal. Sept. 30, 2012) (Mueller, J.).

1   identity of allegations by emphasizing paragraphs that are worded slightly differently (Opp. 17),

2   but variations in wording or format will not prevent the application of collateral estoppel.  *See*

3   Mem. 20.  The rest of Plaintiffs' RMBS-related allegations consist of immaterial background

4   information on mortgage underwriting and the RMBS industry (¶¶ 70-114), to which Plaintiffs do

5   not even refer in their attempts to distinguish their case from *Steinberg*.  *See* Opp. 17-18.

6       Plaintiffs' attempt to distinguish the allegations in *Asbestos Workers* also fails.  Opp. 17.

7   Like Plaintiffs' Complaint, the *Asbestos Workers* complaint addressed the investigations by the

8   Department of Justice and state attorneys general (Asbestos Workers Compl. ¶¶ 1, 14, 66, 77);

9   Clayton trending reports (*id.*, ¶¶ 134-36); reports made to the Board and Audit Committee (*id.*,

10  ¶¶ 88-89, 93-96); and alleged misrepresentations regarding RMBS (*id.*, ¶¶ 79-85, 199(a)).

11      Even if Plaintiffs alleged substantially different facts in support of their claim of demand

12  futility with respect to their RMBS-related causes of action, res judicata still precludes them from

13  relitigating that claim.  *See* Baskin Reply Decl. Ex. C (Notice of Entry and Oral Argument Tr. at

14  27-29, *Zucker v. Rubin, et al.*, Index No. 651580/2011, Dkt. No. 62 (N.Y. Sup. Ct. July 23, 2014)

15  (dismissing derivative complaint on res judicata grounds where demand futility had been litigated

16  in a prior action with different allegations)).  In *Henik ex rel. LaBranche & Co. v. LaBranche*, the

17  court concluded that a prior dismissal of a derivative complaint for failure to plead demand futility

18  constituted a final decision on the merits for purposes of preclusion:  "Under the doctrine of res

19  judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or

20  their privies from relitigating issues that were or could have been raised in that action.'"  433 F.

21  Supp. 2d 372, 377, 379-80 (S.D.N.Y. 2006) (citation omitted); *see also UBS Sec. LLC v. Highland*

22  *Capital Mgmt.*, 86 A.D.3d 469, 474-75 (N.Y. App. Div. 2011) (res judicata bars "'all other claims

23  arising out of the same transaction or series of transactions,'" including "'alternative theories'" or

24  variant facts) (citation omitted).[8]

25      Plaintiffs' argument that preclusion does not apply because the prior shareholder plaintiffs

26  sued different directors (Opp. 17) has no merit.  The relevant inquiry is whether demand is futile

---

[8] The pendency of an appeal in *Asbestos Workers* does not stop the operation of res judicata.  *Plaza PH2001 LLC v. Plaza Residential Owner LP*, 98 A.D.3d 89, 98 (N.Y. App. Div. 2012).

1    as to a majority of the Board at the time the operative complaint was filed,[9] and *Steinberg* and this

2    case involve exactly the same Board at essentially the same time (February 3, 2014, for *Steinberg*

3    and March 3, 2014, for this case).  Thus *Bansbach v. Zinn,* 1 N.Y.3d 1, 11 (2003), which involved

4    a significant passage of time and change in circumstances, is off the mark.  *See* Opp. 15.[10]  *Siegel*

5    and *Asbestos Workers* also determined that plaintiffs had not sufficiently alleged demand futility

6    as to a majority of the Board, and Plaintiffs' position is only *weakened* by the election of three

7    new directors since *Siegel* was filed in 2011 and two since *Asbestos Workers* was filed in 2013.

8         Nor have Plaintiffs met their burden to demonstrate that there was not a "full and fair

9    opportunity to litigate" in the prior cases.  *Howard*, 20 N.Y. 3d at 252; *Ryan v. N. Y. Tel. Co.*, 62

10   N.Y.2d 494, 501 (1984).  Plaintiffs argue only that the November 2013 settlement constitutes

11   "new evidence" (Opp. 16-17), which is factually inaccurate since the *Steinberg* complaint

12   prominently featured the settlement (Steinberg Compl.  ¶¶ 5, 97, 172), and the *Asbestos Workers*

13   plaintiffs referred to the forthcoming settlement (*see* Baskin Reply Decl. Ex. D, at 1, 9).

14              **2.    *Steinberg* Precludes Plaintiffs from Relitigating the Section 14(a) Claim**

15        Collateral estoppel and res judicata also preclude relitigation of the issue of demand futility

16   with respect to the Section 14(a) claim, since *Steinberg* included the same 14(a) claim, arising out

17   the Company's issuance of the same 2011 and 2012 proxies.  *See Gerrity v. Chapin*, 1980 WL

18   1364, at *4-6 (S.D.N.Y. Jan. 9, 1980) (applying res judicata to bar subsequent derivative suit

19   brought by a different shareholder alleging 14(a) claim arising out of the same proxy statement

20   and disputed transaction, even though the second action raised "additional facts or legal theories").

21        Plaintiffs' attempt to differentiate their claim by arguing that they allege

22   misrepresentations related to the shareholder proposal to split the Chairman and CEO roles (Opp.

---

[9] *See In re Affiliated Computer Services,* 2009 WL 296078, at *7-8 (Del.Ch. 2008).  Even if demand futility were determined as of the date of the original complaint in November 2013, it would not avail Plaintiffs since the only subsequent change in the composition of the Board was the addition of Mr. Neal in January 2014.

[10] Plaintiffs suggest it is significant that they added Mr. Flynn as a defendant (with respect to the state law claims) when they filed their amended and consolidated Complaint in March 2014.  Opp. 18.  It is not.  Mr. Flynn did not join the Board until 2012 (¶ 37), and Plaintiffs obviously do not plead a substantial likelihood that he will be held liable for RMBS activities that occurred in 2005-2007.  Opp. 18.  Moreover, Mr. Flynn was recently held to be independent in *Central Laborers' Pension Fund v. Dimon*, 2014 WL 3639185, at *5 (S.D.N.Y. July 23, 2014), another decision that estops Plaintiffs from relitigating the issue of the Board's independence.

DEFS.' REPLY MEM.                    12                MASTER FILE NO.
                                                       2:13-cv-02414-KJM-EFB

17-18) is defeated by a comparison of the two complaints.  Both complaints allege that the

portions of the 2011 and 2012 proxy statements dealing with internal controls and risk

management were misleading in light of past RMBS practices, *compare* Steinberg Compl. ¶¶ 175-

95, 277, 280, *with* ¶¶ 194-206, 306-07, and that absent those misrepresentations shareholders

would have voted differently on the subsequent election of directors and shareholder proposals to

split the Chairman and CEO roles (described in the Steinberg Complaint as a proposal requiring

"an independent director as chairman"), *compare* Steinberg Compl. ¶¶ 179, 189, 191, 201, 283-84,

*with* ¶¶ 193, 207, 308.

### B.   Even If Plaintiffs Were Not Precluded from Relitigating Demand Futility, the Complaint Fails To Plead that Demand on the Board is Excused

#### 1.   The Complaint Does Not Allege a Lack of Independence

Rather than responding to Defendants' argument that the Complaint does not adequately

allege that the Board of Directors lack independence (and the numerous cases so holding), the

Opposition recycles the insufficient allegations of the Complaint and cites inapposite authority.

Opp. 34-35; Mem. 22-24.  Plaintiffs cite *Veeco*, in which the director lacked independence

because the company had been his "principal employer for the past 40 years" and the

"substantial—if not sole—source" of his income.  *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F.

Supp. 2d 267, 275 (S.D.N.Y. 2006).  In *Rales v. Blasband*, the directors were beholden to board

members who had the power to fire them.  *See* 634 A.2d 927, 937 (1993).  Neither situation is

remotely similar to the facts alleged here.  In *In re J.P. Morgan Chase & Co. Shareholder

Litigation*, 906 A.2d 808 (Del. Ch. 2005), and *In re JPMorgan Chase & Co. Derivative Litigation*,

2014 WL 1297824 (S.D.N.Y. Mar. 31, 2014), *see* Opp. 34-35, allegations of business

relationships of the JPMorgan directors were rejected because, as here, they did not allege

"particularized facts about the materiality of the relationship[s]" that would create a reasonable

doubt concerning the directors' independence. *JPMorgan*, 2014 WL 1297824, at *7 (*quoting* 906

A.2d at 822 n.48).  Plaintiffs' chart summarizing director compensation (Molumphy Decl. Ex. B)

says nothing about the materiality of that compensation to each director's economic

circumstances, as the caselaw requires.  Mem. 23.

## 2. Plaintiffs Cannot Avoid the Impact of the Exculpatory Provision in JPMorgan's Charter

Because of the Section 102(b)(7) provision in JPMorgan's charter, to show a substantial likelihood of liability Plaintiffs must allege particularized facts that the directors "acted with scienter; *i.e.*, that there was an 'intentional dereliction of duty' or 'a conscious disregard' for their responsibilities, amounting to bad faith." *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at *12 (Del. Ch. Oct. 12, 2011) (citation omitted); Mem. 25-26.

Plaintiffs argue that Section 102(b)(7) cannot be considered on this motion (Opp. 20), but fail to address the numerous Delaware and federal cases that hold exactly the opposite (Mem. 25-26) and instead rely on two irrelevant cases that did not consider an exculpatory provision in the context of demand futility. *See In re Tower Air, Inc.*, 416 F.3d 229, 242 (3d Cir. 2005); *Sanders v. Wang*, 1999 WL 1044880, at *11 (Del. Ch. Nov. 8, 1999).

Plaintiffs' argument that gross negligence is not exculpated under Section 102(b)(7) (Opp. 20, 26) is likewise flatly wrong (Mem. 25-26), and the cases they cite involve neither Section 102(b)(7) nor corporate law. *See Brown v. United Water Del., Inc.*, 2010 WL 20525373, at *1 (Del. Super. Ct. May 20, 2010) (property damage); *Brown v. Robb*, 583 A.2d 949, 949 (Del. 1990) (malpractice). As Vice Chancellor Strine (now Chief Justice of the Delaware Supreme Court) held in dismissing a complaint for failure to plead demand futility, "because the [company] charter contains an exculpatory provision authorized by § 102(b)(7), the plaintiffs cannot sustain their complaint even by pleading facts supporting an inference of gross negligence; they must plead a non-exculpated claim." *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 648 (Del. Ch. 2008).

## 3. Plaintiffs Have Failed To Plead with Particularity a Substantial Likelihood of Liability for a *Caremark* Claim

Plaintiff's only potential avenue to show a substantial likelihood of director liability is a claim for breach of the fiduciary duty of loyalty based on a bad-faith failure to oversee the affairs of the corporation. This standard requires a showing that "(a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling

themselves from being informed of risks or problems requiring their attention." *Stone ex rel.*

*AmSouth Bancorp v. Ritter*, 911 A.D.2d 362, 370 (Del. 2006).  The Complaint pleads neither.

a. The Complaint Does Not Allege that JPMorgan "Utterly Failed"<br>To Implement a System of Controls

The Opposition admits that JPMorgan had a system of controls in place (Opp. 30), which ends the inquiry under controlling Delaware caselaw.  Plaintiffs' argument that those controls were not "meaningful" (Opp. 30-31) is based on a fundamental misunderstanding of Delaware law.  Under *Stone*, the standard is whether directors "utterly failed to implement any reporting or information system or controls."  911 A.2d at 370.  Controls can always be augmented, and regulatory settlements do not establish that preexisting systems reflected an "utter[] fail[ure] to implement any reporting or information system or controls." *Id.*

Plaintiffs rely on *Rich ex rel Fuqi International, Inc. v. Chong* (Opp. 30), but that case illustrates what is *missing* in this Complaint.  As an initial matter, *Rich* held demand excused on other grounds, and thus evaluated plaintiff's *Caremark* claim under the less strict pleading standard applicable to a motion to dismiss for failure to state a claim, rather than the Rule 23.1 particularized pleading standard applicable to this motion.  66 A.3d 963, 981, 982 n.162 (Del. Ch. 2013).  Moreover, *Rich* presented facts far different from those here.  In *Rich*, the founder and chairman of the board of Fuqi had for over two years repeatedly stolen and transferred the company's cash to third parties, resulting in a restatement of Fuqi's financial statements, a failure to file its Form 10-K, mass resignation of management and board members, and delisting from NASDAQ.  *Id.* at 968, 971, 973.  In its public filings, Fuqi conceded "extensive problems with internal controls" and "self-disclosed accounting inadequacies." *Id.* at 982-83.  Moreover, despite the company's operations being centered in China, the court found that "there does not seem to have been any regulation of the Company's operations *in China*." *Id.* at 983 (emphasis in original).  Faced with these allegations of extreme misconduct, the court concluded that the board had consciously ignored a parade of red flags and had "allowed $130 million in cash to be transferred out of the company." *Id.* at 984.  Nothing comparable is alleged here.

---

b.      The Complaint Lacks Particularized Allegations That the Director Defendants Consciously Ignored "Red Flags"

The Opposition does not point to any particularized factual allegations demonstrating that the Director Defendants actually received, let alone consciously ignored, red flags concerning alleged misrepresentations in the sale or underwriting of RMBS.  Instead, the Opposition argues that members of the Audit and Risk Policy Committees "should have received" reports which purportedly would have alerted them to misconduct.  Opp. 22-27.  But Plaintiffs' speculation about what the Director Defendants "would have" or "should have" received is entirely irrelevant, as "'[r]ed flags' are only useful when they are either waved in one's face or displayed so that they are visible to the careful observer."  *In re Citigroup Inc. S'holders Litig.*, 2003 WL 21384599, at *2 (Del. Ch. June 5, 2003), *aff'd*, 839 A.2d 666 (Del. 2003).  The requirement of particularized pleading under Delaware law is not met by Plaintiffs' speculation or by improper attempts to supplement their Complaint with the views of "experts" who know no more of the facts than they do.  *See, e.g.*, *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 2013 WL 2156358, at *6 (N.D. Cal. May 17, 2013) (expert's "opinions cannot substitute for facts under the PSLRA").[11] Relying on "experts" is all the more inappropriate because under Delaware law, *see* 8 Del. C. § 220, Plaintiffs had the opportunity before filing their complaints to seek Board records from JPMorgan relating to their alleged claims and thereby discover the actual facts known to the Board, but not one of them did so.  "Both this Court and the Court of Chancery have continually advised plaintiffs who seek to plead facts establishing demand futility that the plaintiffs might successfully have used a Section 220 books and records inspection to uncover such facts."  *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1056 (Del. 2004).

Unable to allege any facts actually known (and ignored) by the Board, Plaintiffs attempt to

---

[11] The Sarsfield and Angelides Declarations submitted by Plaintiffs with the Opposition (Dkt. Nos. 53 & 54) should be disregarded by the Court and stricken.  *See City of Royal Oak Ret. Sys.*, 880 F. Supp. 2d at 1060 (striking expert declaration submitted in opposition to motion to dismiss); *see also Cent. Delta Water Agency v. U.S. Fish and Wildlife Serv.*, 653 F. Supp. 2d 1066, 1080 (E.D. Cal. 2009) (rejecting declarations submitted in opposition to motion to dismiss, noting the "declarations, even if admissible, cannot supplement the complaint"); *Edumoz LLC v. Republic of Mozambique*, 968 F. Supp. 2d 1041, 1050 (C.D. Cal. 2013) (disregarding expert declaration submitted with opposition to motion to dismiss because the declaration "draws legal conclusions regarding the application of th[e] law to the facts of this case" which is a "function[] that the court is competent to perform without the aid of an expert").  They should also be stricken as an attempt to circumvent the page limit for the Opposition.

manufacture red flags through a grab-bag of other allegations.  But allegations regarding actions of lower-level personnel to evade controls (Opp. 28; ¶¶ 141-43, 182), an employee who made a report to certain managing directors[12] (Opp. 23, ¶ 258), or a third party firm retained to assist in due diligence for certain offerings by reviewing certain mortgages (Opp. 23-24), say nothing about what information the Board received.  *See* Mem. 29.  Plaintiffs also attempt to infer knowledge and impose liability based on internal policies (Opp. 30-31), but that is inconsistent with Delaware law,[13] as is their attempt to infer knowledge based on membership on a Board committee.[14]

Plaintiffs next try to evade their pleading burden by arguing for a general presumption of Board knowledge because RMBS "was related to a 'fundamental part of [JPMorgan]'s business.'" Opp. 27 (purporting to quote *Countrywide*, 554 F. Supp. 2d at 1049).  But Plaintiffs not only cite no Delaware authority in support of such a "presumption" (which is inconsistent with the requirement that a plaintiff plead particularized facts), their substitution of "JPMorgan" for "Countrywide" in the above quotation elides the distinction between a company such as Countrywide that focused exclusively on home loans and a global financial institution such as JPMorgan that is "involved in all aspects of the financial markets, including investment banking, asset management, private banking, and private wealth management" (¶ 23).[15]

Plaintiffs' allegations of Board knowledge of alleged misrepresentations in the sale of RMBS at most resemble the kind of allegations repeatedly rejected by the courts as insufficient to

---

[12] The Opposition implies that "Managing Directors" are members of the board of directors (Opp. 23), but as Plaintiffs must know, a managing director of a financial institution such as JPMorgan is an executive, not a board member.

[13] *See Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000) ("[T]he law of corporate fiduciary duties and remedies for violation of those duties are distinct from the aspirational goals of ideal corporate governance practices," which "are not required by the corporation law and do not define standards of liability."); *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 135 (Del. Ch. 2009) ("Although members of the ARM Committee were charged with reviewing and ensuring the accuracy of Citigroup's financial statements under the ARM Committee charter, director liability is not measured by the aspirational standard established by the internal documents detailing a . . . oversight system.").

[14] *See, e.g., Rattner v. Bidzos*, 2003 WL 22284323, at *11 (Del. Ch. Sept. 30, 2003); *In re ITT Corp. Deriv.. Litig.*, 653 F. Supp. 2d 453, 464 (S.D.N.Y. 2009).

[15] Also supporting the allegations of the directors' knowledge in *Countrywide* was the stock buyback authorized by the board at the same time the directors were selling their own shares, *id.* at 1067 ("How could the Board members approve a repurchase of $2.4 billion dollars' worth of stock and nearly contemporaneously liquidate $148 million of their personal holdings just months before the stock dropped some 80-90%?").  The other cases Plaintiffs cite (Opp. 30) are also inapposite, as they included allegations of specific warnings known to the board.  *See McCall v. Scott*, 239 F.3d 808, 820-23 (6th Cir. 2001); *In re Pfizer Inc. S'holder Deriv. Litig.*, 722 F. Supp. 2d 453, 460-61 (S.D.N.Y. 2010); *In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 799-01, 806 (7th Cir. 2001).

DEFS.' REPLY MEM.                           17                    MASTER FILE NO.
                                                                 2:13-cv-02414-KJM-EFB

plead demand futility.  In *In re Goldman Sachs Mortgage Servicing Shareholder Derivative Litigation* the court held that allegations that the directors "knew from various sources, including their own internal reporting structures, about the decline of the residential mortgage industry and the deteriorating quality of subprime mortgages" did not sufficiently allege the directors' knowledge of the purported misrepresentations.  2012 WL 3293506, at *2 (S.D.N.Y. Aug. 14, 2012).  Similarly, in *In re Citigroup Inc. Shareholder Derivative Litigation*, the court found that knowledge of "signs of a deterioration in the subprime mortgage market, or even signs suggesting that conditions could decline further, is not sufficient to show that the directors were or should have been aware of any wrongdoing at the Company or were consciously disregarding a duty somehow to prevent Citigroup from suffering losses."  964 A.2d 106, 115, 128 (Del. Ch. 2009).[16]

### 4.   Plaintiffs Have Failed To Plead with Particularity a Substantial Likelihood of Liability for Alleged Misrepresentations

Plaintiffs ask this Court to infer scienter for alleged misrepresentations because Plaintiffs alleged a federal securities claim or because the Director Defendants served on committees that supposedly would have received certain kinds of information.  Opp. 31-32.  As to the first argument, the standard for a Section 14(a) claim is irrelevant because Delaware law governs the fiduciary claims, including as to scienter.  *Norfolk Cnty. Ret. Sys. v. Jos. A. Bank Clothiers, Inc.*, 2009 WL 353746, at *12 n.104 (Del. Ch. Feb. 12, 2009).[17]  As to the second, membership on a board committee is not sufficient to infer scienter.  Mem. 31.  While Plaintiffs assert that "[c]ourts routinely infer scienter based on the signing of SEC filings" (Opp. 33 (citing *Howard v. Everex Sys.*, 228 F.3d 1057, 1061 (9th Cir. 2000)), *Howard* held only that signing was sufficient to show

---

[16] *See also In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, *20-21 (Del. Ch. Sept. 7, 2011) (the company sale of RMBS, or taking of a short position in RMBS via a synthetic CDO, did not put the board on notice of wrongful conduct); *In re Bank of Am. Corp. Sec., Deriv., & Employee Ret. Income Sec. Act (ERISA) Litig.*, 2013 WL 1777766, at *3, 13 (S.D.N.Y. Apr. 25, 2013) (complaint failed to state a claim for breach of fiduciary duty against directors because it failed to allege that they "consciously failed to monitor BofA's subprime holdings . . . or that they acted with conscious disregard for their responsibilities").

[17] The federal securities cases Plaintiffs cite are thus not only irrelevant, but in any event do not help Plaintiffs.  Opp. 31-32.  *In re Converium Holding AG Secs. Litig.*, 2007 WL 2684069 (S.D.N.Y. Sept 14, 2007), and *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000), did not adjudicate claims against outside directors.  *Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1155 (2008) (S.D. Cal. 2008), dismissed claims against outside directors, noting that presumptions of knowledge *cannot* be made as to outside directors: "This presumption, however, does not necessarily extend to a company's outside directors.  With respect to these defendants, a plaintiff must allege that they participated in the corporation's day-to-day activities or communicated specific information at a particular time."

---

the individual made the statement for purposes of Section 10(b) and analyzed scienter separately.

Finally, Plaintiffs fail to rebut the Defendants' argument that their Complaint does not identify any false or misleading statements.  Nearly all of Plaintiffs' cited paragraphs fail to identify any particular statement at all.  *See* Opp. 33; ¶¶ 5, 8, 40-41, 43, 79, 89, 93, 111, 138, 140-41, 148-49, 228, 232-33, 253.  Plaintiffs refer to one paragraph (¶ 174) containing a statement by Mr. Dimon that Plaintiffs assert in conclusory terms was false, but the Complaint does not allege that any other Board member was involved or knew about the alleged falsity of the statement when it was made.  Only now in their Opposition do Plaintiffs highlight statements in the 2006 Form 10-K they find objectionable (Opp. 32-33), but this does not rectify the deficient Complaint and, more importantly, still does not allege how each of the Director Defendants participated in or knew of the alleged falsity of each of these statements.[18]

### 5.       Waste and Unjust Enrichment

Plaintiffs' argument that allegations of waste are too fact-based to be resolved on a motion to dismiss (Opp. 36) should be rejected; numerous courts have done exactly that.[19]  A claim for unjust enrichment must allege a causal relationship between compensation and breaches of fiduciary duty or some other factual basis for why the compensation was unjustified.  Mem. 34. The Complaint is devoid of any such allegations.

## V.       IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED

This case seeks to pursue claims belonging to JPMorgan, a corporation with its principal place of business in New York City, against its current and former directors, and such claims find their "center of gravity" in the SDNY, not this District.  Plaintiffs fail to address the Defendants' authorities supporting transfer in these circumstances.  Mem. 39-40 & n.20.[20]

---

[18] Also fatal to this claim is the Complaint's failure to identify how the alleged misrepresentations caused damage to JPMorgan.  *See Malpiede v. Townson*, 780 A.2d 1075, 1086-87 (Del. 2001) (in order to avoid dismissal, a claim for breach of the duty of disclosure must allege, among other things, "'how the omission caused injury'").

[19] *E.g.*, *Lewis v. Vogelstein*, 699 A.2d 327, 329 -330 (Del. Ch. 1997); *In re Bidz.com, Inc. Deriv. Litig.*, 773 F. Supp. 2d 844, 854 (C.D. Cal. 2011); *Official Comm. of Bond Holders of Metricom, Inc. v. Derrickson*, 2004 WL 2151336, at *6-7 (N.D. Cal. Feb. 25, 2004); *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005).

[20] Plaintiffs contend there is "no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered" (Opp. 40), citing *In re Hanger Orthopedic Group, Inc.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006).  This is not a securities fraud class action, like *Hanger*, and even as to securities fraud actions, *Hanger* added that "[n]evertheless, as a practical matter, such transfers are routine," cited many cases in

1    Consistent with these authorities, the private and public factors weigh strongly in favor of

2    transfer. *First*, Plaintiffs are mistaken that there is a "strong presumption" in favor of their forum

3    choice in this purported representative suit, a proposition for which they cite only non-derivative

4    cases. Opp. 37; *see* Mem. 37. *Second*, Plaintiffs do not even allege that they are citizens of this

5    District, all but conceding that they have no interest in litigation here. While Plaintiffs cite "this

6    District's interest in the litigation" (Opp. 38), they do not articulate what that supposed interest is,

7    other than to note the investigation by the U.S. Attorney's Office in this District. But Plaintiffs do

8    not allege that that investigation relates to conduct of the Company specifically in California or

9    this District, and even if it did, that would not vest this District with any particular interest in this

10   private civil derivative lawsuit asserted on behalf of JPMorgan.[21] *Third,* the convenience of the

11   parties undoubtedly weighs in favor of transfer to the SDNY, since *no real party in interest*

12   *resides in California* and nominal defendant JPMorgan and two of the Defendants reside in New

13   York (and many others on the East Coast). Plaintiffs do not respond to the many authorities which

14   support transfer of derivative cases to the forum of the corporation's principal place of business.

15   Mem. 38-39. *Fourth*, the Defendants submitted sufficient evidence to show it is likely key non-

16   party witnesses will primarily be based in or near JPMorgan's New York headquarters (Horan

17   Decl. ¶ 4), and courts do not require specific identification of witnesses in order to transfer

18   venue.[22] *Fifth*, Plaintiffs argue that the public factors disfavor transfer, pointing solely to the

19   slightly longer median time from filing to disposition (Opp. 40), but they ignore several other key

20   metrics relating to docket congestion. Mem. 36. All factors weigh in favor of transfer.

21   ## CONCLUSION

22   For all of the foregoing reasons, Defendants' motions should be granted.

---

support of transfer, and noted that "several factors usually lean in favor of transfer." *Id*. at 168.

[21] The assertion that "virtually all of the derivative cases relating to JPMorgan's sale of RMBS securities have been filed in this District" (Opp. 38) is irrelevant and inaccurate. A similar number of derivative actions regarding RMBS have been filed in New York and Delaware. *Steinberg*; *Asbestos Workers; Siegel; Stephen Blau MD Money Purchase Pension Plan Trust v. Dimon*, No. 650654/2014 (N.Y. Sup. Ct.); *Iron Workers Mid-South Pension Fund v. Dimon*, No. 9449-VCN (Del. Ch.).

[22] *Duffer v. United Cont'l Holdings, Inc.*, 2013 WL 2147802, at *4 (S.D. Cal. May 16, 2013); *Cadenasso v. Metro. Life Ins. Co.*, 2014 WL 1510853, at *9 (N.D. Cal. Apr. 15, 2014); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 241, 258 (1981).

1    DATED:  August 22, 2014                    **MORGAN, LEWIS & BOCKIUS, LLP**

2

3                                               By:   /s/ Christopher J. Banks
                                                     CHRISTOPHER J. BANKS

4                                               Franklin Brockway Gowdy (SBN: 47918)
5                                               Christopher J. Banks (SBN: 218779)
                                                Benjamin P. Smith (SBN: 197551)
6                                               Ian T. Long (SBN: 290975)
                                                One Market St., Spear St. Tower
7                                               San Francisco, CA 94105
                                                Tel:  (415) 442-1000
8                                               Fax:  (415) 442-1001

9                                               **DEBEVOISE & PLIMPTON LLP**
                                                Gary W. Kubek (pro hac vice)
10                                              Johanna Skrzypczyk (pro hac vice)
                                                919 Third Avenue
11                                              New York, NY 10022
                                                Tel:  (212) 909-6000
12                                              Fax: (212) 521-7067

13                                              *Attorneys for Nominal Defendant JPMorgan*
                                                *Chase & Co. and Defendants James Dimon,*
14                                              *William B. Harrison, Jr., and Robert I. Lipp*

15   DATED:  August 22, 2014                    **SHEARMAN & STERLING LLP**

16

17                                              By:   /s/ Jaculin Aaron
                                                     JACULIN AARON

18                                              Stuart J. Baskin (pro hac vice)
19                                              Jaculin Aaron (SBN 133983)
                                                599 Lexington Avenue
20                                              New York, NY 10022
                                                Tel:  (212) 848-4000
21                                              Fax:  (212) 848-7179

22                                              **SHEARMAN & STERLING LLP**
                                                Jeffrey S. Facter (SBN 123817)
23                                              Emily V. Griffen (SBN 209162)
                                                Four Embarcadero Center, Suite 3800
24                                              San Francisco, CA  94111-5994
                                                Tel:  (415) 616-1100
25                                              Fax:  (415) 616-1199

26                                              *Attorneys for Defendants James Bell; Crandall*
                                                *C. Bowles; Stephen B. Burke; James S.*
27                                              *Crown; Timothy P. Flynn; Ellen V. Futter;*
                                                *Laban P. Jackson, Jr.; David C. Novak; Lee R.*
28                                              *Raymond; and William C. Weldon*

---

DEFS.' REPLY MEM.                21                    MASTER FILE NO.
                                                       2:13-cv-02414-KJM-EFB