JOSEPH W. COTCHETT (36324)
jcotchett@cpmlegal.com
MARK C. MOLUMPHY (168009)
mmolumphy@cpmlegal.com
BRIAN M. SCHNARR (275587)
bschnarr@cpmlegal.com
ELIZABETH T. TRAN (280502)
etran@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577

*Lead Counsel and Attorneys for Plaintiff Ronald A. Harris, derivatively on behalf of JPMorgan Chase & Co.*

[Counsel for Defendants listed on signature page]

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE JPMORGAN CHASE DERIVATIVE LITIGATION**<br><br>This Document Relates To All Actions | Master File No. 2:13-cv-02414-KJM-EFB<br><br>**REDACTED JOINT STATEMENT RE DISCOVERY DISAGREEMENT FILED PURSUANT TO LOCAL RULE 251**<br><br>Judge: Hon. Kimberly J. Mueller<br>Magistrate: Hon. Edmund F. Brennan<br>Hearing: August 5, 2015<br>Time: 10:00 a.m.<br>Courtroom: 8 |

**REDACTED JOINT STATEMENT RE DISCOVERY DISAGREEMENT FILED PURSUANT TO LOCAL RULE 251**

# TABLE OF CONTENTS

**PAGE NO.**

I. INTRODUCTION AND SUMMARY OF DISPUTE ............................................................. 1

    Plaintiffs' Position ........................................................................................................ 1

    Defendants' Position .................................................................................................... 3

II. RELEVANT PROCEDURAL HISTORY ............................................................................. 4

    Plaintiffs' Position ........................................................................................................ 4

        A.    This Court's Review and Approval of a Jurisdictional Discovery Plan .......... 4

        B.    Defendants' Delay in Providing Responses to Discovery ............................... 5

        C.    The Discovery at Issue ..................................................................................... 6

    Defendants' Position .................................................................................................... 6

        A.    The Court's Approval of Limited Jurisdictional Discovery ............................ 6

        B.    Timing of the Responses ................................................................................... 7

III. INFORMAL EFFORTS TO RESOLVE THE DISPUTE ..................................................... 8

    Plaintiffs' Position ........................................................................................................ 8

    Defendants' Position .................................................................................................... 8

IV. ARGUMENT ............................................................................................................................ 9

    Plaintiffs' Position ........................................................................................................ 9

        A.    Defendants' Objections to the Scope of the Court-Approved Discovery Should be Overruled ........................................................................................... 9

        B.    This Court Should Compel Full and Complete Responses from JPMorgan ........................................................................................................... 10

        C.    The Court Should Compel Full and Complete Responses from Dimon ........ 11

        D.    The Court Should Compel Full and Complete Responses from Harrison ..... 11

    Defendants' Position .................................................................................................... 12

Pursuant to Local Rule 251(c), Plaintiffs, together with nominal Defendant JPMorgan Chase & Co. ("JPMorgan") and inside director Defendants James Dimon and William B. Harrison Jr. (the "Defendants," and collectively with Plaintiffs, the "Parties"), hereby submit a Joint Statement re Discovery Disagreement in connection with responses to document requests that were propounded pursuant to the Court's May 5, 2015 Order approving jurisdictional discovery.  ECF No. 92.

## I.   INTRODUCTION AND SUMMARY OF DISPUTE

**Plaintiffs' Position**

Over the last six months the Honorable Judge Kimberly J. Mueller received extensive briefing and heard oral argument from both sides about the appropriate scope of jurisdictional discovery.  *See* ECF Nos. 74, 78-80, 87-88, 91-92.  At the end of that process, and after careful consideration of each any every discovery request proposed by the Parties, the Court issued an order that included a detailed discovery plan.  ECF No. 94.  Plaintiffs then proceeded in accordance with that plan by serving the exact written discovery requests that had been ordered by the Court.  Defendants' responses to this Court-ordered discovery was, however, incomplete and non-responsive.  Indeed, Defendants significantly limited the scope of their search for responsive documents based on objections and positions that had already been argued and submitted to this Court.  *See* ECF No. 91, Exh. B at 2:17-28 and 8:1-18.  In the face of these very same arguments, this Court ordered Defendants to respond to these particular requests.  Defendants do not get a second bite at the apple, and their objections should be overruled.

Defendants' clear violation of the Court's Order has resulted in significant prejudice to Plaintiffs.  First, Defendants unexcused delay in providing substantive responses has negatively impacted Plaintiffs' ability to complete the jurisdictional discovery plan under the Court's schedule.  Second, the two inside director Defendants Dimon and Harrison[1] concede in verified responses that they ████████████████████████████████████████████████████████████████████████████████████████.  *See* Exh. 2, Dimon's Response to

---

[1]   Emails belonging to the outside director Defendants were not subject to production under the Court's May 5, 2015 Order.  ECF No. 92 at p. 2:12-21.  Accordingly, the instant dispute is limited to responsive documents that belong to Messrs. Dimon and Harrison, and any other company documents of JPMorgan, that are in JPMorgan's possession, custody or control.

**REDACTED JOINT STATEMENT RE DISCOVERY DISAGREEMENT FILED PURSUANT TO LOCAL RULE 251**   1

1  Interrogatory Nos. 2 and 3; Exh. 3, Harrison's Response to Interrogatory No. 3 (submitted with
2  Plaintiffs' Request to Seal, *see* ECF No. 97). To the extent these types of communications are in
3  Defendants' possession, they would be clearly responsive to the Court-approved requests and should
4  have been produced. Yet, because Defendants limited their search to only communications that
5  contained the word "California," many highly relevant documents were excluded outright.[2] For
6  example, any document that included a business name – as opposed to the state where that business
7  was located – would not be produced by Defendants *even if* that business originated billions of dollars
8  of home mortgages in California and sold them to JPMorgan.[3] Similarly, communications or
9  materials exchanged between Defendants and one of JPMorgan's California-based due diligence
10 firms, such as ▮▮▮▮▮▮▮▮▮▮, that discusses residential mortgage pools would not be
11 included in Defendants' production. Again, these types of documents are critical to establishing
12 personal jurisdiction.
13        Instead, under Defendants' limited interpretation of the requests, Plaintiffs received a "null
14 set" of documents from Dimon and Harrison. In other words, not a single email, report,
15 memorandum or other form of written communication was deemed "responsive" by Defendants.
16        Plaintiffs are faced with a September 1, 2015 deadline to file an amended complaint in this
17 case. ECF No. 94.[5] Yet, some unknown quantity of relevant correspondence, reports, or other

---

[2]  Defendants' state, for the first time, that their search was based on "a range of search terms" that were used to "identify communications and other responsive documents." No search term list has ever been disclosed to Plaintiffs during meet and confer. In any event, no matter what search terms were applied by Defendants, they resulted in no responsive documents produced from Dimon or Harrison. At a minimum, these terms should have been revealed to Plaintiffs, and Plaintiffs should have been permitted an opportunity to offer suggestions on a mutual set of terms.

[3]  By way of example, Defendants' approach would exclude any communications that reference ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Exh. 1, Defendant JPMorgan's Objections and Responses to Plaintiffs' Special Interrogatories Concerning Jurisdictional Discovery (submitted with Plaintiffs' Request to Seal, *see* ECF No. 97).

[4]  *See* Exh. 1, Defendant JPMorgan's Response to Interrogatory No. 5 (submitted with Plaintiffs' Request to Seal, *see* ECF No. 97).

[5]  On July 23, 2015, the Parties submitted a stipulation and proposed order to the Court that would extend that deadline to file an amended complaint to October 16, 2015. ECF No. 99.

**REDACTED JOINT STATEMENT RE DISCOVERY DISAGREEMENT FILED PURSUANT TO LOCAL RULE 251**                                                                 2

responsive materials remain unproduced.  Defendants' decision to limit discovery to only those documents that contain the term "California" violates the Court's May 5, 2015 Order.  ECF No. 92.  Plaintiffs ask the Court to overrule Defendants' improper objections and compel full and complete responses.

**Defendants' Position**

Defendants have fully and properly complied with their obligations under the Court's Order.  After receiving full briefing on the parties' respective discovery plans, Judge Mueller rejected Plaintiffs' grossly overbroad proposal.  Thus, after ruling that jurisdictional discovery would be "limited to the time period described in the now-dismissed consolidated complaint, 2005 through 2007," ECF No. 92 at p. 1:21-22, the Court held that:

> [D]iscovery is limited to (a) the *defendant directors' RMBS-related California contacts* and (b) information that may show *JPMorgan's RMBS business targeted California* in 2005, 2006 and 2007.

ECF No. 92 at p. 2:3-5 (emphasis added).  The Court further explained that it is not enough that documents relate to JPMorgan's RMBS business in California, but rather that "discovery must be restricted to tracing the directors' contacts to that business."  *Id*. at p. 2:25-26 (emphasis added).

Defendants responded to the Court-approved document requests in accordance with this clear ruling by the Court.  The primary dispute with Plaintiffs relates to application of the term "RMBS," which is defined in the requests as "any residential mortgage-backed security that JPMorgan evaluated, originated, packaged, marketed, sold or issued in California between 2005 and 2008."[6]  On its face, this definition seems to be limited to "JPMorgan's RMBS business in California," which is consistent with the Court's Order.  But JPMorgan did not market or sell only certain issues of residential mortgage-backed securities in California, as opposed to other states; instead, JPMorgan "marketed" or "sold" all or most such securities broadly to investors in numerous states (as well as some foreign countries).  Such broad-based marketing and selling did not "target" California or involve "California contacts" by any of JPMorgan's directors.  Consequently, documents relating

---

[6]  Plaintiffs do not contest Defendants' limitation of produced documents to those relating to 2005-2007, as the Court's Order provided, and thereby concede that their definition of RMBS was inconsistent with the Court's Order when it sought documents relating to securities from 2005-2008.

**REDACTED JOINT STATEMENT RE DISCOVERY DISAGREEMENT FILED PURSUANT TO LOCAL RULE 251**                                                                                                  3

generally to communications or activities with respect to the broad marketing and selling of residential mortgage-backed securities nationwide (or internationally) are not responsive to requests for documents involving securities "marketed or sold in California," particularly in light of the limitations imposed by the Court's Order.  Moreover, Defendants have not, as Plaintiffs contend, "only searched for communications that contained the word California," but employed a range of search terms designed to identify communications and other responsive documents relating to JPMorgan's RMBS-related California contacts.

Plaintiffs' interpretation of this definition would cause the document requests – contrary to the Court's clear Order – to encompass every communication or other document related to every issue of residential mortgage-backed securities that JPMorgan "evaluated, originated, packaged, marketed, sold or issued" between 2005 and 2007.  It would make no sense to conclude that Judge Mueller, having ruled as an overall limiting principle that "discovery is limited to (a) the defendant directors' RMBS-related California contacts and (b) information that may show JPMorgan's RMBS business targeted California," ECF No. 92 at p.2:3-5, intended that JPMorgan should produce every document reflecting a communication or other involvement of any director defendant (including the CEO Jamie Dimon) with any aspect of JPMorgan's residential mortgage-backed security activities, regardless of whether such documents reflected any connection to, or targeting of, California.

Plaintiffs' motion to compel should be denied because Defendants have responded to the Court's Order consistently with the limitations established by Judge Mueller, as requiring production of all documents encompassed in the relevant requests that involved the marketing, sale or other activity in California relating to JPMorgan's residential mortgage-backed securities.

II.     RELEVANT PROCEDURAL HISTORY

**Plaintiffs' Position**

    A.     This Court's Review and Approval of a Jurisdictional Discovery Plan

On October 24, 2014, Judge Mueller granted Defendants' motions to dismiss Plaintiffs' Consolidated Shareholder Derivative Complaint.  *See* ECF No. 69.  This decision was based, in part, on a failure to allege specific personal jurisdiction.  *Id*.  Leave to amend was granted, and Plaintiffs were allowed to seek jurisdictional discovery after the submittal of a proposed discovery plan.  *Id.*

In November of 2014, the Parties submitted briefing that set forth their respective positions as to whether jurisdictional discovery was warranted, and if so, what the appropriate scope should be. ECF Nos. 74, 78-80. Following a hearing held on February 27, 2015, the Court granted Plaintiffs' request to conduct discovery, and allowed an inquiry into whether "the directors either individually or as a part of a larger plan or strategy took actions directed at California that gave rise to the harm alleged in the complaint." ECF No. 88 at 2:23-26. With that in mind, the Court directed the Parties to meet and confer to develop a joint discovery plan. *Id*. at 3.

Despite best efforts, the Parties ultimately submitted their own proposed discovery plan to the Court. ECF No. 91, Exhs. A, B. The plans included specific and detailed proposals for document requests, interrogatories, definitions, and depositions, and were supported by relevant legal authority about the appropriate scope of jurisdictional discovery. *Id*. These competing proposals were reviewed and resolved by order of this Court dated May 5, 2015. ECF No. 92. In that May 5, 2015 Order, the Court permitted discovery of information related to "(a) the defendant directors' RMBS-related California contacts and (b) information that may show JPMorgan's RMBS business targeted California in 2005, 2006, and 2007." *Id*. Using that guiding principal, Judge Mueller went on to approve a series of specific document requests and interrogatories that were to be answered by the Defendants, including approved definitions. *Id.* at pp. 3-4. This discovery was to be completed within a period of 90 days (or by August 3, 2015), and the Plaintiffs were directed to file an amended complaint by September 1, 2015. *Id.* at p. 4.

### B. Defendants' Delay in Providing Responses to Discovery

On May 12, 2015, Plaintiffs served the discovery that had been approved by the Court on all Defendants. Following the Federal Rules of Civil Procedure, responses to that discovery were due on June 15, 2015. *See* Fed. R. Civ. P. 33(b)(2), 24(b)(2)(A). However, on June 11, 2015 the Defendants requested a fifteen (15) day extension of the deadline to respond. Recognizing the tight timeframe set by the Court's Order, Plaintiffs agreed to extend the deadline to June 30, 2015 only after being assured that they would receive full and substantive responses.

Defendants also requested that the Parties agree to a protective order before any information was to be provided. Negotiations as to the terms of that protective order began on June 26, 2015.

**REDACTED JOINT STATEMENT RE DISCOVERY DISAGREEMENT FILED PURSUANT TO LOCAL RULE 251**

5

That same day, Plaintiffs agreed to treat anything produced by Defendants as "confidential" while that negotiation was ongoing. That offer was refused. Defendants insisted that a final protective order be in place prior to serving any responses.

The final protective order was executed by the Parties and filed on July 7, 2015. ECF No. 93. The chart below provides the dates when Plaintiffs finally received the responses to interrogatories and documents (if any) from the Defendants that are the subject of this motion.

| Defendant | Date Responses to Document Requests Were Received | Date Responses to Interrogatories Were Received | Date Documents Were Received |
|---|---|---|---|
| JPMorgan | July 8, 2015 | July 8, 2015 | July 8, 2015 and July 9, 2015 |
| Harrison | July 10, 2015 | July 10, 2015 | None |
| Dimon | July 17, 2015 | July 17, 2015 | None |

    **C.**    **The Discovery at Issue**

For the convenience of the Court, and pursuant to Local Rule 251(c), Plaintiffs attach to this Joint Statement as Plaintiffs' **Exhibit A**, a document that sets forth the full text of each request at issue, including Defendants' responses and objections thereto.

**Defendants' Position**

    **A.**    **The Court's Approval of Limited Jurisdictional Discovery**

Judge Mueller's October 24, 2014 order granting Defendants' motion to dismiss the Consolidated Shareholder Derivative Complaint addressed only the issue of personal jurisdiction as a threshold issue, and left for future consideration Defendants' other grounds for dismissal, including Plaintiffs' failure to make a demand on the JPMorgan Board of Directors before commencing this derivative action based on the directors' alleged failure to adequately supervise the sale of RMBS and collateral estoppel based on decisions by other courts dismissing similar actions brought by other JPMorgan shareholders. *See* ECF No. 69. As Plaintiffs state, the Court granted leave to amend and allowed Plaintiffs to seek "limited jurisdictional discovery" by submitting a proposed discovery plan. *Id.* at 37-38. The Court subsequently held that such discovery would be limited to the issue of specific jurisdiction (not general jurisdiction) over the defendant directors. ECF No. 88.

Following disagreement over the scope of Plaintiffs' proposed discovery plan, the parties submitted competing proposals. As discussed above, the Court ruled that discovery would involve

**REDACTED JOINT STATEMENT RE DISCOVERY DISAGREEMENT FILED PURSUANT TO LOCAL RULE 251**      6

only "(a) the defendant directors' RMBS-related California contacts and (b) information that may show JPMorgan's RMBS business targeted California in 2005, 2006, and 2007." ECF No. 92 at p. 2:25-26.  The Court approved specific document requests and interrogatories from among those proposed by each of the Parties.  *Id*. at p. 3.

### B. Timing of the Responses

Following entry of the Order, Plaintiffs on May 12, 2015 served various sets of document requests and interrogatories incorporating the approved requests and sought responses by June 15, 2015.  On June 11, 2015, Defendants' counsel sent Plaintiffs' counsel a proposed confidentiality order and informed Plaintiffs that all Defendants (including the outside directors represented by Shearman & Sterling LLP) would require additional time because the requests sought documents and information from as long as ten years ago.  Defendants offered to begin producing documents on a rolling basis once a confidentiality order was in place and requested until June 30, 2015 to provide written responses to the various requests.  When Plaintiffs' counsel did not respond, Defendants' counsel followed up on June 15, 2015, in order to avoid the need to file an emergency motion seeking an extension of time.  Plaintiffs finally responded but sought a commitment that Defendants would complete not only their written responses but all production of documents by June 30, 2015.  Defendants responded that they would begin production once a confidentiality order was entered, but could not commit to complete all production by June 30, 2015, given the scope of the requests and the timeframe involved, which required JPMorgan to find and restore archived data.[7]  Plaintiffs' counsel thereafter agreed that Defendants need not file an emergency motion.

Plaintiffs did not respond to Defendants' proposed confidentiality order for two weeks, until after Defendants had followed up twice seeking to negotiate the proposed order so that Defendants could begin providing written responses and documents.  On June 29, 2015, Plaintiffs finally provided comments, which reflected elements of the model form of the Northern District, rather than that of the Eastern District.  Following the July 4 holiday weekend, counsel reached agreement on

---

[7]   Plaintiffs' counsel were informed that the outside directors anticipated completing their responses by that date.

**REDACTED JOINT STATEMENT RE DISCOVERY DISAGREEMENT FILED PURSUANT TO LOCAL RULE 251**                                                                                          7

the confidentiality order and submitted it to this Court on July 7, after which Defendants began providing documents and written responses.

### III. INFORMAL EFFORTS TO RESOLVE THE DISPUTE

**Plaintiffs' Position**

Some, but not all of the Defendants served responses on July 7, 2015. Plaintiffs immediately took issue with the objections stated therein, and commenced the meet and confer process with those Defendants. The next day, JPMorgan served its responses to the discovery, which contained the same (or substantially similar) objections. Plaintiffs again set forth its position that Defendants had improperly objected to the scope of the discovery, and were withholding information that fell under this Court's May 5, 2015 Order. Plaintiffs requested that Defendants amend their responses. This request was declined.

On July 10, 2015, and pursuant to Local Rule 251(b), Plaintiffs sent Defendants a formal letter that outlined the dispute and requested a telephonic conference. That conference was held on July 13, 2015. Counsel for all Parties were present. Each side discussed their respective positions on a number of issues, some of which were resolved or narrowed based on representations made by counsel. However, despite their best efforts the Parties were unable to resolve a disagreement as to the appropriate scope jurisdictional discovery under the Court's May 5, 2015 Order. A second telephonic conference was held on July 16, 2015, however, the Parties were again unable to resolve this disagreement.

**Defendants' Position**

Plaintiffs asserted on July 8, 2015 that JPMorgan's written responses to the document requests were "defective" and threatened to "move for relief" if JPMorgan did not amend them. Defendants' counsel suggested that counsel for the Parties discuss the issues by telephone, but Plaintiffs' counsel did not respond and instead sent a letter on July 10, 2015 setting forth their position in more detail. Counsel held telephonic conferences on July 13 and July 16, 2015, as described above in Plaintiffs' Position, during which they narrowed, but were not able to completely resolve, the contested issues.

/ / /

/ / /

**REDACTED JOINT STATEMENT RE DISCOVERY DISAGREEMENT FILED PURSUANT TO LOCAL RULE 251**

8

## IV.  ARGUMENT

### Plaintiffs' Position

#### A.  Defendants' Objections to the Scope of the Court-Approved Discovery Should be Overruled

Defendants JPMorgan, Dimon, and Harrison all assert meritless objections to requests that were reviewed and approved by this Court. Based on these objections, they have refused to produce documents that are unquestionably responsive and relevant to the issue of jurisdictional discovery. These objections should be overruled.

First, the objections and positions taken by Defendants in their responses to discovery are not novel. These very same arguments were briefed and presented before Judge Mueller in Defendants' Response to Plaintiffs' Proposed Discovery Plan. *See* ECF No. 91, Exh. B at 2:17-28 and 8:1-18. Specifically, in that brief, Defendants challenged the <u>exact same document requests</u> at issue in this motion, and did so for the <u>exact same reasons</u>. *Id.* at 8:1-18 (objecting to Request Nos. 1-5 to the Director Defendants, and Request Nos. 1-3 to JPMorgan). Yet, having reviewed and considered these positions, Judge Mueller ordered Defendants to response to the requests <u>as written</u>. ECF. No. 92 at p. 3:19-28. Defendants cannot now circumvent Judge Mueller's May 5, 2015 Order by re-interpreting the terms that appear in the requests, or inserting objections that were considered and rejected.

Second, there is no question that highly relevant information was excluded from Defendants' production of documents. Defendants concede that their approach resulted in a "null set" of responsive documents, or stated differently, none at all. However, both Dimon and Harrison submitted <u>verified responses</u> that admit that they ███████████████████████

███████████████████████████████████████████████████

███████████████  *See* Exh. 2, Dimon's Response to Interrogatory Nos. 2 and 3; Exh. 3, Harrison's Response to Interrogatory No. 3 (submitted with Plaintiffs' Request to Seal, *see* ECF No. 97). JPMorgan, on the other hand, provided information in its verified response that reveals billions of dollars of residential mortgages that were purchased by JPMorgan from <u>California-based loan originators</u>, such as ███████████████████████████████████.

To the extent any documents exist that mentioned these California-based loan originators, or mentioned RMBS that were derived from mortgages purchased from these companies, they would not have been captured by Defendants' restrictive search unless they included the word "California". Nor would any documents exchanged between Defendants and any California-based due diligence firms that analyzed pools of California mortgages, unless, of course, those communications or documents expressly reference "California".

The scope of jurisdictional discovery in this case was set by the Court's May 5, 2015 Order. That Order expressly included "information that may show JPMorgan's RMBS business targeted California in 2005, 2006, and 2007." ECF No. 92. That "business" is not limited to the marketing and sale of RMBS in California, as Defendants wish, but was meant to include RMBS that were "evaluated, originated, [and] packaged" in California <u>even if they were sold elsewhere</u>. *Id.* at p. 3:4 (approving Plaintiffs' definition of "RMBS," that includes "any residential mortgage-backed securities that JPMorgan evaluate, originated, packaged, marketed, sold or issued in California").

To avoid any doubt, the Court included specific requests and interrogatories that were to be answered by these Defendants, including the definitions to be applied. There is no room for objections, and anything short of a full and complete response violates that Order. Defendants' objections should be overruled.

**B.    This Court Should Compel Full and Complete Responses from JPMorgan**

In addition to JPMorgan's general objection to the scope of documents that fall under the Court's May 5, 2015 Order, the company also manipulated its answers to Request Nos. 1 and 3 in order to avoid actually searching for documents that would otherwise be considered responsive. Specifically, JPMorgan dramatically reduced the scope of the request approved by the Court by switching the focus away from "JPMorgan's RMBS marketed or sold in California" to "the <u>marketing or sale</u> of JPMorgan's RMBS in California." This sleight of hand artificially limits the scope of JPMorgan's response by switching the focus away from all RMBS marketed or sold in California (the request approved by the Court) to JPMorgan's marketing and sale of RMBS in California. In other words, unless a document related to a marketing or sales campaign that was specifically (and exclusively) focused on California, the document would not be produced. As

described above, this limited response would exclude whole cloth any documents that pertain to JPMorgan's purchase of mortgages from California-based loan originators, or reports created by California-based due diligence providers. JPMorgan should be compelled to answer the request that was ordered by the Court.

### C. The Court Should Compel Full and Complete Responses from Dimon

Similar to JPMorgan, Dimon crafted his answers to Request Nos. 1, 2, 3 and 5 to shift the focus away from "RMBS marketed and sold in California" (again, the actual language of the request) to the "marketing or sale of JPMorgan RMBS." For the reasons discussed above, this switch improperly limits the scope of the requests and allows Dimon to answer that he has no responsive documents in his possession. Further, Dimon incorporated a general objection to the Court-approved definition of "RMBS" into each response. Although the Court <u>specifically approved</u> the definition of "RMBS" in her Order, ECF No. 94 at p. 3, Dimon reinterpreted it "in a manner consistent with the direction of the Court's Order that "discovery is limited to (a) the defendant directors' RMBS-related California contacts and (b) information that may show that JPMorgan's RMBS business targeted California in 2005, 2006 and 2007." This ambiguous sentence leaves considerable wiggle room that allows Dimon to avoid producing Court-ordered documents, and leaves Plaintiffs wondering how he interpreted each request in his responses.

Given this uncertainty, in meet and confer counsel for Dimon explained that his response reflects Defendants' overall position that the requests are overbroad and captured documents beyond the scope of the jurisdictional inquiry.

### D. The Court Should Compel Full and Complete Responses from Harrison

Similar to Dimon, instead of complying with the Court-ordered requests as written, Harrison incorporated a general objection to the term "RMBS" into each of his responses. He also provides the same evasive answer that switches the focus away from "JPMorgan RMBS marketed or sold in California" to "the marketing or sale of JPMorgan's RMBS in California." Harrison's answers should be amended so that there is no doubt that a full and complete response was provided.

/ / /

/ / /

**REDACTED JOINT STATEMENT RE DISCOVERY DISAGREEMENT FILED PURSUANT TO LOCAL RULE 251**   11

**Defendants' Position**

As explained above, in the Introduction and Summary of Dispute, Nominal Defendant JPMorgan and Defendants Dimon and Harrison have fully and properly complied with their obligations under the Court's Order in responding to the document requests as to which Plaintiffs' seek an order to compel. Defendants have not, as Plaintiffs' contend, reinterpreted the requests or reasserted failed objections. Rather, they have responded to the document requests in accordance with Judge Mueller's clear direction that the permitted jurisdictional discovery "is limited to (a) the *defendant directors' RMBS-related California contacts* and (b) information that may show *JPMorgan's RMBS business targeted California*." ECF No. 92 at 2:3-5 (emphasis added). This limitation was so central to the Court's ruling that the Order stated two additional times on the same page that Plaintiffs' could obtain communications with the director defendants if they "were related to JPMorgan's RMBS business in California," *id*. at 2:9-10, and that other documents "detailing JPMorgan's RMBS business in California" could be obtained only if they "trac[ed] the directors' contacts to that business." *Id*. at 2:25-26.

While Plaintiffs contend that Defendants are ignoring the Court's Order, it is in fact Plaintiffs who improperly seek to interpret the Court-approved document requests in a vacuum, ignoring the Court's clear explanation of what discovery was approved and what documents would be responsive. Defendants, consistently with the Court's Order, declined to interpret the document requests in the manner Plaintiffs propose, to require production of every communication with JPMC's current chief executive officer Jamie Dimon, its former chief executive officer (during 2005) William Harrison, Jr., or any outside director defendants that related in any way to any of JPMorgan's residential mortgage-backed securities simply because JPMorgan broadly "marketed" or "sold" those securities to investors in numerous jurisdictions, which included California. Absent some connection to "RMBS-related California contacts" of any of the individual defendants or activities of JPMorgan's RMBS business that "targeted California," ECF No. 92 at 2:3-5, the documents sought by Plaintiffs fall

outside the expressly defined scope of the limited jurisdictional discovery permitted by the Court's Order.[8]

Plaintiffs fare no better with their contention that "highly relevant information was excluded from Defendants' production of documents." *See supra*, at 9. Plaintiffs assert that "Defendants Dimon and Harrison have submitted verified responses [to interrogatories] admitt[ing] that it is likely they communicated with persons or entities involved with the origination of loans that were included in RMBS that were later marketed or sold in California." *Id.* After citing JPMorgan's interrogatory response showing that "billions of dollars of mortgages . . . were purchased by JPMorgan from California-based loan originators," Plaintiffs argue that Defendants would not have produced any documents that mentioned these California-based loan originators or documents exchanged between Defendants and any California-based due diligence firm that analyzed pools of mortgages, unless the documents included the word "California." *Id.*[9]

This argument is wrong in multiple respects. First, neither Dimon nor Harrison said in his interrogatory responses that it is likely that he communicated with any California-based loan originators whose loans were included in RMBS that JPMorgan marketed or sold in California, or anywhere. Dimon said only that in his normal course of business as (at various times) the Chairman, Chief Executive Officer and President of JPMC, he not surprisingly "would have had communications with persons or entities who may have had some responsibility for the origination of loans included in JPMorgan's RMBS marketed or sold in California or who may have assisted in the evaluation, appraisal, underwriting, origination, packaging, marketing, sale or issuance of such RMBS, *such as the heads of the various lines of business at JPMorgan*." Dimon Response to Special

---

[8] Notwithstanding the limitations set forth in the Order, Defendant JPMorgan actually produced *all* references to JPMorgan's residential mortgage-backed securities in the minutes of the Board (or its committees) or in presentations to the Board (or its committees) regardless of whether such materials related to California. JPMorgan did this to show Plaintiffs' counsel (and the Court) that *none* of these Board or committee materials contained anything suggesting that JPMorgan was targeting California in its RMBS-related activities or that the directors were involved in any RMBS activities related to California. If JPMorgan had not taken this broader than required approach to producing Board-related materials in response to Document Request No. 2 addressed to JPMorgan, there would have been no documents to produce.

[9] Of course, "California-based" loan originators, such as Countrywide, made mortgage loans in other parts of the country as well as in California.

**REDACTED JOINT STATEMENT RE DISCOVERY DISAGREEMENT FILED PURSUANT TO LOCAL RULE 251**    13

Interrogatory No. 3 (emphasis added).  Harrison similarly said only that "[i]n my normal course of business, I may have spoken with individuals *at JPMorgan* who may have had some responsibility for origination of loans included in JPMorgan's residential mortgage backed securities that may have been ultimately marketed or sold in California."  Harrison Response to Special Interrogatory No. 3 (emphasis added).  He expressly stated that he did *not* recall "any communication with any third-party that originated loans for inclusion in JPMorgan's RMBS marketed or sold in California or who may have assisted in the evaluation, appraisal, underwriting, origination, packaging, marketing, sale or issuance of such RMBS."  *Id*.

Second, as previously stated, Defendants did not limit their production to documents that "included the word 'California'," but rather used a range of search terms to attempt to identify any responsive documents that involved the marketing or sale of JPMorgan's residential-backed mortgage securities in California.[10]

Lastly, the document requests as to which Plaintiffs seek to compel further production, Requests 1 and 3 to JPMorgan and Requests 1, 2, 3 and 5 to Dimon and Harrison, call for documents involving RMBS "marketed or sold in California" and "the evaluation, appraisal, underwriting, origination, packaging, marketing, sale or issuance *of RMBS* marketed or sold in California" (emphasis added), *not* the origination of *individual loans* that were included in any such RMBS. Where the Court-approved requests required responses dealing with individual loans as well as RMBS, the requests so specified, as in Interrogatories Nos. 6 and 7 to JPMorgan, which sought information concerning "the evaluation, appraisal, underwriting, origination, packaging, marketing, sale or issuance of RMBS (*including the component loans*)" (emphasis added).

/ / /
/ / /
/ / /
/ / /

---

[10]  Dimon's and Harrison's responses were limited to documents that mentioned California only with respect to Document Requests Nos. 6 and 7, which expressly called only for documents that "contain any reference to California in connection with JPMorgan's RMBS."

**REDACTED JOINT STATEMENT RE DISCOVERY DISAGREEMENT FILED PURSUANT TO LOCAL RULE 251**                                                                                       14

In sum, because Plaintiffs have failed to show that Defendants did not comply fully with the document requests at issue, the Court should deny the motion to compel.

Dated: July 23, 2015                    **COTCHETT, PITRE & McCARTHY, LLP**

                                        */s/ Brian M. Schnarr*

JOSEPH W. COTCHETT
MARK C. MOLUMPHY
ELIZABETH T. TRAN
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Lead Counsel and Attorneys for Plaintiff Ronald A. Harris, derivatively on behalf of JPMorgan Chase & Co.*

**DEBEVOISE & PLIMPTON LLP**

                                        */s/ Gary W. Kubek*

JOHANNA SKRZYPCZYK
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000

**MORGAN, LEWIS & BOCKIUS, LLP**
FRANKLIN BROCKWAY GOWDY
CHRISTOPHER J. BANKS
BENJAMIN P. SMITH
One Market St., Spear St. Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

*Attorneys for Nominal Defendant JPMorgan Chase & Co. and Defendants James Dimon, William B. Harrison, Jr., and Robert I. Lipp*