UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IN RE JPMORGAN CHASE
DERIVATIVE LITIGATION

No. 2:13-cv-02414-KJM-EFB


ORDER


This Document Relates to All Actions.

Shareholders have brought a derivative suit against a corporation's directors for their allegedly deceitful and financially-destructive role in the 2008 housing collapse. Defendants are current and former JPMorgan Chase & Co. ("JPMorgan") directors. Plaintiffs are California-based shareholders. Plaintiffs argue defendants breached their fiduciary duties, committed securities violations, and unjustly enriched themselves through defendants' creation and sale of subprime residential mortgage-backed securities ("RMBS"). The court granted defendants' first motion to dismiss. Order Oct. 23, 2014, ECF No. 69 ("Prior Order"). Defendants have moved to dismiss plaintiffs' amended complaint, or alternatively, to transfer the case to New York. *Id.* Mot., ECF No. 123.

The court heard the motion on December 15, 2016. Alexandra Summer, Francis Bottini, Jr., Mark Molumphy and Kelsey Fischer appeared for plaintiffs. Mins., ECF No. 139. Stuart Baskin, Alethea Sargent and Emily Griffen appeared for defendants Bell, Bowles, Burke, Crown, Flynn, Futter, Jackson, Novak, Raymond and Weldon. *Id.* Gary Kubek and Christopher

Banks appeared for nominal defendant JPMorgan and defendants Dimon, Harrison and Lipp. *Id*. As explained below, the court GRANTS defendants' motion to dismiss in part and TRANSFERS the remaining claims to the Southern District of New York.

I.      BACKGROUND

Plaintiffs complain that defendants fraudulently and carelessly mishandled JPMorgan's residential mortgage-backed securities business. First Am. Compl. ¶¶ 1, 2, ECF No. 122 ("FAC"). Understanding plaintiffs' claims in full at this point requires a brief review of the mortgage industry in which JPMorgan operates.

A.  Residential Mortgage-Backed Securities and the 2008 Financial Crisis

Residential mortgage-backed securities or RMBS are bonds backed by payments homeowners make on their mortgage loans. *See id.* ¶ 10. JPMorgan uses a process known as "securitization" to bundle hundreds of mortgage loans into RMBS, which they then market and sell to investors. *Id.* JPMorgan groups or tiers their RMBS based on a risk rating. Risky or subprime RMBS form the lower, cheaper tiers, while safer RMBS form the more expensive tiers. *Id.* ¶¶ 44–45. RMBS are considered subprime or risky when they are backed by mortgagers with impaired credit records, while safer RMBS are backed by more reliable mortgagers. *Id*. Investors choose a tier in which to invest and then their profits mirror the payments mortgagers make. The values of the RMBS fluctuate depending on whether homeowners pay down their mortgage principal early, refinance their mortgages or default.

After the housing market collapsed in 2008, RMBS investors experienced significant fluctuation in returns on investment because foreclosures increased and home prices and interest rates plummeted. *Id.* ¶ 10. The downturn exposed flaws in JPMorgan's RMBS protocol and enflamed investors who felt defrauded and misled. Plaintiffs here contend the named directors played a key role in JPMorgan's misconduct in issuing RMBS. *Id.* ¶¶ 3, 9, 188, 291, 315, 388–89.

B.  Criminal Investigation into JPMorgan's RMBS Activity

Investors' fraud allegations prompted the United States Department of Justice ("DOJ") and various federal and state agencies to investigate whether JPMorgan's RMBS

practices violated criminal laws. *Id.* ¶ 17. On November 15, 2013, JPMorgan announced a $4.5

billion settlement with 21 major institutional investors, and four days later announced a $13

billion settlement with the Department of Justice and other government agencies. *Id.* ¶ 5.

Approximately $300 million of the settlement funds were allocated to investors from California.

*Id.*. This settlement hinged on JPMorgan's RMBS conduct between 2005 and 2007: JPMorgan

admitted it falsely marketed and sold compromised RMBS to investors without warning them the

RMBS did not meet the corporation's internal securitization standards. *Id.* ¶¶ 6, 238, 300, 331.

The settlement did not resolve an ongoing criminal investigation against JPMorgan originating in

this district, the Eastern District of California. FAC ¶¶ 5, 49, 189, 366.

C. Shareholder Derivative Suits

In this case, three JPMorgan shareholders sue JPMorgan's directors for their

alleged involvement in RMBS activity from 2005 to 2007, focusing particularly on this activity's

impact in California. *Id.* at 65–88. This suit is one of many derivative suits attacking

JPMorgan's mishandling of RMBS during the financial crisis, which point to the resulting billion

dollar settlements as proof of damages. Courts uniformly have dismissed these derivative suits at

the outset, at least in part, for not meeting Federal Rule of Civil Procedure 23.1(b)'s pleading

requirements.[1]

Rule 23.1(b)(3) requires that shareholders bringing derivative suits specifically

plead what efforts they undertook to have a corporation's board of directors file the suit on the

corporation's behalf; in other words, did shareholders make a pre-suit demand on the board that

---

[1] *See, e.g.*, *Wietschner v. Dimon*, 32 N.Y.S.3d 77, 79 (N.Y. App. Div.), *leave to appeal denied sub nom*, *Wietschner v. Dimon*, 28 N.Y.3d 901 (N.Y. 2016); *City of Roseville Employees' Ret. Sys. v. Dimon*, 135 A.D.3d 566 (N.Y. App. Div. 2016); *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 807 F.3d 502, 508 (2d Cir. 2015); *City of Providence v. Dimon*, No. CV 9692-VCP, 2015 WL 4594150, *6 (Del. Ch. July 29, 2015) (finding plaintiffs precluded from relitigating demand futility), *aff'd*, 134 A.3d 758 (Del. 2016); *Cent. Laborers' Pension Fund v. Dimon*, No. 14 CIV. 1041 PAC, 2014 WL 3639185, *1 (S.D.N.Y. July 23, 2014), *aff'd*, 638 F. App'x 34 (2d Cir. 2016); *Steinberg v. Dimon*, No. 14 CIV. 688 PAC, 2014 WL 3512848, at *5 (S.D.N.Y. July 16, 2014); *Asbestos Workers Phila. Pension Fund v. Bell*, 990 N.Y.S.2d 436 (N.Y. Sup. 2014); *In re JPMorgan Chase & Co. Deriv. Litig.*, No. 12 CIV. 03878-GBD, 2014 WL 1297824, at *1 (S.D.N.Y. Mar. 31, 2014); *In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig.*, 763 F. Supp. 2d 423, 541–43 (S.D.N.Y. 2011); *In re Goldman Sachs Grp., Inc. S'holder Litig.*, No. CIV.A. 5215-VCG, 2011 WL 4826104, *12 (Del. Ch. Oct. 12, 2011).

was rejected?  Alternatively, the Rule requires that shareholders plead the specific reasons they have not asked the board to bring their claims; to show why a demand on the board would have been futile.  Fed. R. Civ. P. 23.1(b)(3)(A), (B) (providing that the complaint must "(3) state with particularity—(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."); *Potter v. Hughes*, 546 F.3d 1051, 1062 (9th Cir. 2008).  A derivative suit cannot proceed without showing either demand refusal or excusal.  Fed. R. Civ. P. 23.1(b)(3).

A separate derivative suit brought in the Southern District of New York, and dismissed there, is particularly relevant here.  *See Steinberg v. Dimon*, 2014 WL 3512848 (S.D.N.Y. July 16, 2014).  Defendants argue *Steinberg*'s judgment precludes plaintiffs from re-litigating similar claims and issues here.  Mot. at 4–8.  In *Steinberg*, a shareholder derivatively sued fifteen JPMorgan directors in New York for breaching their fiduciary duties, wasting corporate assets, unjustly enriching themselves, and violating section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) ("Securities Act").  *See* Baskin Decl., Ex. D (Steinberg Compl.), ECF No. 124-4.  The New York district court dismissed the complaint for insufficiently pleading demand futility under Rule 23.1.  *Steinberg*, 2014 WL 3512848 at *5.

D.  <u>This Case</u>

Plaintiffs contend defendants exposed JPMorgan to financial risk and ruin through the corporation's subprime mortgage business by destabilizing internal standards and controls, fraudulently marketing RMBS, and concealing material information from investors.  FAC ¶ 10.  Plaintiffs bring three California state claims and one federal claim.  They made no pre-suit demand on JPMorgan's board and allege doing so would have been futile.  *Id.* ¶ 296 ("making a demand would be a futile and useless act as the majority of JPMorgan's directors are not able to conduct an independent and objective investigation of the alleged wrongdoing").

Plaintiffs' state law claims allege: (1) Defendants breached their fiduciary duties by putting their own pecuniary interests above the company's; (2) defendants wasted corporate assets by compensating executives and directors for illegal conduct; and (3) defendants unjustly

1    enriched themselves.  *Id.* ¶¶ 357, 370, 373.  Plaintiffs' fourth federal claim alleges certain named

2    defendants violated section 14(a) of the Securities Act by issuing false and misleading 2011 and

3    2012 proxy statements that lured shareholders into blindly reinstating leadership incumbents and

4    approving risky proposals.  *Id.* ¶¶ 377–95.  Plaintiffs name defendants Bowles, Burke, Cote,

5    Crown, Dimon, Futter, Jackson, Raymond and Weldon in connection with both proxy statements,

6    defendants Gray and Novak regarding only the 2011 proxy statement, and defendant Bell

7    regarding only the 2012 proxy statement.  *Id.* ¶¶ 378–79.

8              E.  Prior Dismissal and Amended Complaint

9              The court dismissed plaintiffs' prior complaint in 2014, with leave to amend.  *See*

10   Prior Order; First Consolidated Compl., ECF No. 29; Defs.' First Mot. Dismiss, ECF No. 48.

11   The court found defendants lacked sufficient ties to California to sustain personal jurisdiction as

12   to plaintiffs' state claims and that plaintiffs' federal claim failed under Rule 12(b)(6).  Prior Order

13   at 24.  After two years of jurisdictional discovery, plaintiffs filed the operative first amended

14   complaint.  *See* Order Granting Discovery, ECF No. 92; FAC (filed April 28, 2016).  Although

15   the amended complaint raises the same four claims as stated in the original complaint, it offers

16   more detail about JPMorgan's California-specific RMBS business, FAC at 65–88, bolsters

17   plaintiffs' theories and explanation as to why JPMorgan's proxy statements were misleading, and

18   changes the relief sought under its federal claim, *compare* Compl. ¶¶ 304–08, *with* FAC ¶¶ 377–

19   95.  Defendants now revive their initial jurisdictional arguments in seeking to dismiss the

20   amended complaint.  Plaintiffs oppose, Opp'n, ECF No. 132, and defendants reply, ECF No. 133.

21   II.      ORDER OF ANALYSIS

22              Defendants raise multiple jurisdictional inquiries and so the court must first

23   consider the proper order of analysis.  *Potter*, 546 F.3d at 1055; *see also Ruhrgas AG v. Marathon*

24   *Oil Co*., 526 U.S. 574, 584 (1999) (explaining although "subject-matter jurisdiction necessarily

25   precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional

26   issues") (citation omitted).  A federal court must independently ensure it has subject matter

27   jurisdiction over every claim and personal jurisdiction over every party.  The parties do not

28

                                             5

dispute the court's subject matter jurisdiction here: The federal claim presents a federal question and the state law claims satisfy diversity jurisdiction. FAC ¶ 18.

The parties do dispute the court's personal jurisdiction over defendants with respect to the state law claims. Mot. at 14–19; Opp'n at 22–24. Because JPMorgan is neither incorporated in California nor principally located here, FAC ¶ 23, defendants argue plaintiffs have not shown each defendant has sufficient contacts with California to trigger this court's personal jurisdiction over them. California's personal jurisdiction standard requires that each defendant have at least some minimum contacts with California to warrant haling them into court here. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A)). Defendants' argument based on absence of contacts is warranted as to the state claims, as discussed below.

Plaintiffs' federal claim, however, derives from the federal Securities Act, which confers "personal jurisdiction over the defendant in any federal court" provided "[the] defendant has minimum contacts with the United States . . . ." *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985) (citing 15 U.S.C. § 78(a)(a)); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 (1979). JPMorgan is a Delaware corporation with its principal place of business in New York, and the individual defendants are citizens of the United States, FAC ¶¶ 23, 27–40; *Vigman*, 764 F.2d at 1316. Personal jurisdiction adheres as to the federal claim.

If plaintiffs' federal claim withstands dismissal, and if plaintiffs' state claims factually relate to their federal claim, the court has discretion to exercise pendent personal jurisdiction over the defendants as to all claims in this suit without separately analyzing defendants' relationships with California. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004).

III.     PENDENT PERSONAL JURISDICTION

If plaintiffs' state claims "arise[] out of the same nucleus of operative facts" as the federal claim that granted the court personal jurisdiction, the court may exercise personal jurisdiction over defendants with respect to the entire case. This discretionary pendent personal jurisdiction doctrine derives from "considerations of judicial economy, convenience and fairness

to litigants." *Id.* (internal citation and quotation marks omitted). Claims are sufficiently factually related to trigger the doctrine when a plaintiff "'would ordinarily be expected to try them all in one judicial proceeding.'" *Rep. of the Phil. v. Marcos*, 862 F.2d 1355, 1359 (9th Cir. 1988) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). That claims advance different theories of liability does not diminish their factual relatedness. *See*, *e.g.*, *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1070–73 (9th Cir. 2011) (finding pendent personal jurisdiction where federal and state claims all based on corporation's misappropriating college catalogs).

Here, the court previously found plaintiffs' state and federal claims sufficiently factually related to trigger pendent personal jurisdiction. *See* Prior Order at 23. Plaintiffs' amended complaint maintains the same factual basis for their claims and defendants raise no new arguments to challenge their factual relatedness. *Compare* Compl. ¶¶ 191–212, *with* FAC ¶¶ 263–84. Plaintiffs' state law claims are rooted in allegations that defendants dragged JPMorgan into the risky RMBS business, manufactured a culture of security law violations, poorly managed JPMorgan's employees, and ultimately forced JPMorgan into a position of having to agree to multi-billion-dollar settlements. *See* FAC ¶¶ 356–76. Plaintiffs' federal claim is based in allegations that JPMorgan's proxy statements mischaracterized its leadership's risk management and internal controls. *Id.* ¶¶ 377–95. Plaintiffs say, in essence, the proxy statements were misleading because they did not disclose the wrongs plaintiffs allege in their state law claims. *Id.* Plaintiffs' state and federal claims derive from the same basic factual allegations.

Even if the interest of judicial economy warrants exercising pendent personal jurisdiction over defendants as to plaintiffs' state law claims, jurisdiction fundamentally is not established. If plaintiffs' federal claim cannot proceed, any pendent personal jurisdictional hook vanishes.

IV.    FEDERAL CLAIM

As noted, defendants move to dismiss plaintiff's federal claim, arguing that a New York district court's dismissal of a related shareholder derivative suit precludes the claim here as a matter of law. Mot. at 13 (citing *Steinberg*, 2014 WL 3512848, at *5).

The doctrines of claim preclusion and issue preclusion define whether a prior judgment has a preclusive effect. Under claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (internal citation omitted). Conversely, issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs by way of a different claim. *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001). By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979).

The *Steinberg* court dismissed the derivative suit before it, finding the plaintiff there inadequately pled demand futility. Before assessing whether claim or issue preclusion applies, this court thus examines the demand futility requirements in shareholder derivative suits as relevant here.

A. Proving Demand Futility Under Delaware Law

Under Federal Rule of Civil Procedure 23.1(b), a plaintiff may bring a shareholder derivative suit only if she "allege[s] with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors." *Potter*, 546 F.3d at 1056. Failure to so allege is excusable only if demand would have been futile. Fed. R. Civ. P. 23.1.

To assess whether demand is futile, the court applies the law of the state in which the corporation is incorporated. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 109 n.10 (1991). JPMorgan is incorporated in Delaware. FAC ¶ 23. Delaware law provides two different demand futility inquiries, depending on if the suit challenges board conduct and judgment in general, as compared to an affirmative board decision *See Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008). If a derivative suit challenges a decision the corporate board made, the court evaluates demand futility under the two-pronged *Aronson* test. *See Aronson v. Lewis*, 473 A.2d

805, 815 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Under this test, the court first evaluates the directors' independence and disinterestedness and then focuses on the substance of the challenged transaction and the directors' approval of it. *See id.* at 814.

When a derivative claim does not challenge a particular decision the board made as a whole, *Rales* governs. *See Rattner v. Bidzos*, 2003 WL 22284323, at *8 (Del. Ch. 2003) (citing *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)). Under *Rales*, a court must determine whether the plaintiffs' particularized factual allegations raise a reasonable doubt, at the time the plaintiffs filed suit, about the board's ability to properly exercise its independent and disinterested business judgment in responding to a demand. *Id.* (citing *Rales*, 634 A.2d at 934). If the derivative plaintiffs satisfy this burden, demand is excused as futile. *Id.* So, under Delaware law, when shareholders allege board misconduct but do not identify a specific board decision, the court considers the claim's merit to assess whether it raises a reasonable doubt that a majority of the board of directors were "incapable of making an impartial decision regarding the pursuit of the litigation." *Wood*, 953 A.2d at 140. One way to raise reasonable doubt is to show a majority of the board faced a "substantial likelihood" of personal liability from the legal action that has been brought. *Rales*, 634 A.2d at 936 (citation omitted). In making this assessment, courts focus on strength of the underlying claim's merits: The higher the chance of success on the claim the more likely demand as to that claim is futile.

To determine if the *Steinberg* court's Rule 23.1(b) dismissal precludes plaintiffs from litigating a claim or issue in this court, the court must decide initially whether federal or state preclusion rules govern.

B. Choice of Law for Preclusion Analysis

Determining which preclusion law governs depends on the nature of the potentially precluding judgment. If a federal court sitting in diversity jurisdiction issued the arguably precluding opinion, then the preclusion rules of the state in which that court sits would apply. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–08 (2001)). But if the prior case rested on a federal question, then

federal courts apply the "federal rule[s]" of res judicata, which the United States Supreme Court has ultimate authority to declare. *Semtek*, 531 U.S. at 508; *Heiser v. Woodruff*, 327 U.S. 726, 733 (1946) ("It has been held in non-diversity cases since *Erie R. Co. v. Tompkins*, that the federal courts will apply their own rule of res judicata."); *First Pacific Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1128 (9th Cir. 2000) ("When considering the preclusive effect of a federal court judgment, we apply the federal [preclusion] law.") (citation omitted).

Here, federal common law determines *Steinberg*'s preclusive effect because *Steinberg* addressed a federal question. That *Steinberg* also involved state law claims does not change this court's conclusion because the *Steinberg* court considered those claims on the basis of supplemental jurisdiction only. Steinberg Compl. ¶ 9.

C.  Federal Issue Preclusion

Issue preclusion or collateral estoppel prevents parties from relitigating the same issues actually adjudicated in an earlier judgment. This narrow doctrine applies only "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) (citation and quotations marks omitted).

Defendants contend that because the members of the board of directors sued here are the same board members upon whom Steinberg attempted to show demand was futile, the *Steinberg* court's Rule 23.1(b) dismissal bars plaintiffs from re-litigating demand futility as to their federal claim. Because plaintiffs must prove demand futility before proceeding on their federal claim, concluding that issue preclusion applies would defeat their claim. The parties dispute only whether the demand futility question in *Steinberg* was "identical" to the demand futility question raised here.

1.  Federal Common Law on Identicality of Demand Futility Issue

Whether the demand futility inquiry in one case presents an identical question in a later derivative suit against the same board is a question of first impression under the federal common law. Three published circuit court opinions have addressed this question, but all three pertained to state preclusion law; they do not help shape federal law, although the reasoning

advanced in each may be persuasive. *See In re Sonus Networks, Inc., S'holder Derivative Litig.*, 499 F.3d 47 (1st Cir. 2007); *Freedman v. Redstone*, 753 F.3d 416 (3d Cir. 2014); *Arduini v. Hart*, 774 F.3d 622 (9th Cir. 2014). As detailed below, *Sonus*, *Freedman* and *Arduini* together stand for the principle that two questions must be answered in determining whether a dismissal for failure to plead demand futility with respect to a corporate board in one case bars a shareholder from relitigating demand futility as to that same board in a later suit. First, are the factual differences between the first and second suit such that the inquiry into the directors' interestedness is different in the latter. Second, are the different facts plaintiffs include in the second suit truly "new" in the sense that they were unavailable to the plaintiff at the time of the first suit.

a. First Circuit's *Sonus* Opinion

The First Circuit's *Sonus* opinion articulated a rule that if one court determines demand is futile as to a particular board of directors, issue preclusion bars subsequent attempts to relitigate demand futility against the same board unless a later complaint includes "new" factual allegations that alter the demand futility inquiry. *Sonus*, 499 F.3d at 62-63. The *Sonus* court explained that although the shareholder-plaintiffs there had included different facts in their second suit, those facts were not "new" because they had always been available; the plaintiffs just chose not to plead them in the first suit. *Id.*

Although persuasive, *Sonus* does not control in this case because that decision was based on Massachusetts preclusion law, which leniently applies issue preclusion's "identity" element. *See id.* at 62. Specifically, the *Sonus* court cited a Massachusetts case, noting its proposition that "even if there is not complete identity between the issues, issue preclusion may be appropriate where the issues overlap substantially." *Id.* (parenthetical following citation to *Comm'r of Dept. of Employment & Training v. Dugan*, 697 N.E.2d 533, 537 (Mass. 1998)). This more lenient "substantial overlap" standard is not endorsed in the federal common law.

b. Third Circuit's *Freedman* Opinion

The Third Circuit in *Freedman* tackled the same question as did the First in *Sonus* but reached a different conclusion. In *Freedman*, the shareholder-plaintiffs derivatively sued a corporation's board of directors in state court in New York, where the corporation's principal

place of business was located, and the state court dismissed the complaint for failure to show demand futility as to certain directors. 753 F.3d at 420, 425. The shareholders then sued the same board seven years later in federal court. *Id.* at 426. Their second complaint included factual allegations that the first suit did not. *Id.* The defendants argued the earlier New York decision precluded plaintiffs from relitigating demand futility as to a particular board member, but the district court disagreed and found issue preclusion did not bar plaintiffs from relitigating demand futility. *See Freedman v. Redstone*, No. 12-cv-1052-SLR, 2013 WL 3753426, at *1 (D. Del. July 16, 2013). It reasoned that the inquiry called for into director disinterestedness and independence was not necessarily the same in the second suit because the relevant relationships might have changed in the seven years between the two suits. *Id.* at *7.

The Third Circuit affirmed the district court decision, explaining that under New York law "a prior ruling on a director's independence does not necessarily apply in a future proceeding addressing the same topic," because "[a] determination of a director's independence [ ] is concerned with a possibly fluid relationship and, accordingly, differs from the determination of a fixed historical fact in the first litigation. . . ." *Freedman*, 753 F.3d at 425. The *Freedman* court highlighted the differences between each suit's factual allegations and focused on the seven-year gap between their presentation to the court. *Id.* at 426 ("it would be inappropriate" to assume the director had the same relationship with an executive after seven years lapsed). Unlike *Sonus*, the *Freedman* court did not focus on whether the new facts included in the second suit were known and available at the time of the first suit; instead, the court focused on how much the facts and circumstances differed between the two suits as framed by plaintiff's complaint. Although persuasive, *Freedman* applied New York preclusion law; it did not contribute to the federal common law on issue preclusion.

c. The Ninth Circuit's *Arduini* Opinion

The Ninth Circuit in *Arduini* reviewed both *Freedman* and *Sonus* in finding that a Nevada state court's dismissal of a prior suit based on demand futility precluded Arduini from relitigating demand futility in federal court. *Arduini*, 774 F.3d at 630–32 (reviewing preclusive effect of *Fosbre v. Matthews*, 2010 WL 2696615, at *1 (D. Nev. 2010)). The Circuit endorsed

the *Sonus* approach, focusing on whether the new allegations bore on the level of directors' interestedness and whether the facts were unavailable at the time of the first suit. *Id.* at 632 (citing *Sonus*; concluding allegations in Arduini's second complaint did not raise any new facts regarding interestedness of relevant board members). It also explained that even under *Freedman*'s approach preclusion applied because Arduini's demand futility allegations "[we]re essentially identical to those raised in *Fosbre*." *Id.* at 638. In making this finding, the *Arduini* court referenced counsel's concession that "the suit was identical to [the prior suit,] *Fosbre*." *Id.* at 630. But, like *Sonus* and *Freedman*, *Arduini* also applied state preclusion law and did not develop the federal common law.

Each opinion nonetheless provides a persuasive backdrop for this court's analysis.

2. Discussion

The parties dispute whether *Steinberg* precludes plaintiffs from asserting demand futility here. Defendants argue issue preclusion applies, but plaintiffs contend issue preclusion does not bar the court from analyzing demand futility as to their federal claim because the claim differs materially from that presented by Steinberg. If the demand futility issue here is "identical" to the issue in *Steinberg*, then plaintiffs' federal claim fails as a matter of law under Rule 23.1.

a. *Steinberg*'s Demand Futility Inquiry

In *Steinberg*, the New York district court dismissed a derivative suit against JPMorgan because the complaint did not contain sufficient facts to satisfy demand futility. In that case, Steinberg, the shareholder plaintiff, brought three state claims and one federal claim against fifteen current and former directors. *See* Steinberg Compl. ¶¶ 244–84. Steinberg's federal claim, which informs the preclusion analysis here, alleged violations of section 14(a) of the Securities Act based on the directors' allegedly misleading proxy statements. *Id.* ¶¶ 273–84. Steinberg claimed that making a demand on the board to bring this claim would have been futile, citing eight director-defendants' alleged lack of independence to conclude a majority of the board's eleven members were "interested." *See id.* ¶¶ 206, 210–39. Because the parties agreed demand was futile as to one director, Board Chair Dimon, the court considered only the independence of seven, non-management director defendants. *Steinberg*, 2014 WL 3512848, at *5.

13

To analyze demand futility as to these seven directors, the *Steinberg* court framed the rule as follows: Demand is futile "whenever a majority of the board of directors faces a 'substantial likelihood' of personal liability" in the face of the particular claim being analyzed. *Id.* (citing *Rales*, 634 A.2d at 936). To assess whether the directors faced a "substantial likelihood" of liability, the court analyzed each claim's merits separately. *Id.* If a claim had a substantial likelihood of success, demand would be futile as to that specific claim.

The court concluded the likelihood of success of Steinberg's federal claim was low, and therefore found demand was not futile as to that claim. *Id.* The court explained that the board's mere "execution of . . . financial reports, without more, is insufficient to create an inference that the directors had actual or constructive notice of any illegality." *Id.* (citing *Wood*, 953 A.2d at 142). The court added that "Steinberg must establish scienter, and again fails to do so," saying "[the federal claim] is far too general and there is no essential link from the misstatements to the shareholder approval sought." *Id.* (citation omitted). The court concluded, "[a]s a result, it is unlikely that any of the [seven] [d]irectors breached his or her fiduciary duty in connection with the alleged misrepresentations, and therefore demand cannot be excused on this basis." *Id.* The court dismissed Steinberg's federal claim because the complaint did not show the directors faced a "substantial likelihood" of liability on that claim such that it was reasonable to doubt their ability to exercise disinterested and independent judgment in considering a demand. *Id.*

        b. <u>Comparison Between Plaintiffs' and Steinberg's Demand Futility Inquiry</u>

Whether the *Steinberg* dismissal bars plaintiffs from litigating demand futility in this court depends on how similar the demand futility inquiry is when comparing the two cases. The strength of the underlying claims for which demand was required or excused is critical in determining the identity of the two demand inquiries. A claim's strength directly affects the nature of the demand futility analysis because a director is more likely to refuse to bring a claim that may implicate his or her own conduct if that claim is likely to succeed. This is the rationale that prompted Delaware courts to establish the "substantial likelihood of success" theory. *See*

1  *generally Rales*, 634 A.2d 927.  So, if the federal claim here has a stronger likelihood of success

2  than Steinberg's federal claim, the demand futility issue is not "identical" across the two suits.

3          In both cases the shareholders focus their section 14(a) Securities Act claims, in

4  part, on JPMorgan's 2011 and 2012 proxy statements.  But the specific misstatements and

5  omissions identified within those two statements differ in the two complaints.  In this case,

6  plaintiffs cite misstatements about the director nominees'[2] independence and about the board's

7  recommendation to vote against the shareholder proposal to divest Dimon of his role as chairman.

8  FAC ¶¶ 264–68.  In her case, Steinberg alleged JPMorgan's proxy statements were false and

9  misleading because they did not disclose "the true financial condition of the [c]ompany" and "the

10  true state of the [c]ompany's risk management structure."  Steinberg Compl. ¶¶ 91–92.  Also,

11  plaintiffs here seek only "injunctive and equitable relief," FAC ¶ 394, whereas Steinberg sought

12  damages and an order "void[ing] the election of [the director nominees]."  Steinberg Compl.

13  ¶¶ 117–18.  This difference in relief matters because by seeking only injunctive relief, plaintiffs

14  in this case enjoy a presumption of causation that Steinberg did not.  *See Mills v. Elec. Auto-Lite*

15  *Co.*, 396 U.S. 375, 384 (1970).  In contrast, Steinberg's inadequate allegations regarding

16  causation provided one reason the court found demand was not futile on her federal claim.

17  *Steinberg*, 2014 WL 3512848, at *12–13.

18          Because plaintiffs here have a greater likelihood of success on the merits of their

19  federal claim than Steinberg did, the demand futility issue here is not "identical" to the demand

20  futility issue in *Steinberg*.  Plaintiffs' federal claim is not barred by issue preclusion.

21          The court's conclusion here does not hinge on whether the second suit in this case

22  and in *Steinberg* added allegations that were available at the time of the first suit.  A focus on the

23  availability of facts at an earlier time is better suited to analysis of the broader claim preclusion

24  doctrine.

25  /////

26

27          [2]  A director nominee is "[a]n individual who is given the role of a non-executive
   director on the firm's board of directors, in place of another person. . . ."  *Nominee Director*
28  *Definition*, Black's Law Dictionary (2d Online Ed.).

D. <u>Federal Claim Preclusion</u>

Defendants argue that, even without issue preclusion, res judicata bars plaintiffs from bringing their Securities Act claim because the claim arises from the same basic facts as did Steinberg's Securities Act claim.

"Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Moitie*, 452 U.S. at 398 (citations omitted); *Allen v. McCurry*, 449 U.S. 90, 94 (1980). To establish a res judicata bar against plaintiffs' federal claim here, defendants must show: (1) *Steinberg* was a "judgment on the merits"; (2) plaintiffs are the same as, or in privity with Steinberg; and (3) plaintiffs' federal claim is "based on the same transaction" as Steinberg's claim. As discussed below, defendants do satisfy each element.

1. <u>Judgment on the Merits</u>

To show that the *Steinberg* Rule 23.1(b) dismissal was a final judgment on the merits, defendants cite New York preclusion law for the proposition that because demand futility is a substantive rather than procedural issue, a decision on futility is necessarily a final judgment on the merits. *See* Mot. at 6 (citing *Henik ex rel. LaBranche & Co. v. LaBranche*, 433 F. Supp. 2d 372, 378–79 (S.D.N.Y. 2006)). Plaintiffs do not dispute that *Steinberg* was a "final decision on the merits." Opp'n at 9 (arguing only that *Steinberg* did not involve the same claims).

Under federal preclusion law, the issue is not as clear-cut as defendants suggest. Defendants cite no controlling authority for the proposition that a dismissal for demand futility is always a final decision on the merits, and the Ninth Circuit has expressly left the question open. *See Arduini*, 774 F.3d at 629 n.4 (explaining a dismissal for failure to plead demand futility is final for purposes of issue preclusion, but stating "[w]e express no opinion on whether claim preclusion could apply in this case."). This element thus demands further analysis.

In *Steinberg*, the court dismissed the complaint because it lacked sufficient factual allegations to excuse the pre-suit demand requirement. *Steinberg*, 2014 WL 3512848, at *9. Although it appears no court has yet determined whether a Rule 23.1(b) dismissal constitutes a

final decision on the merits as a matter of federal common law, other courts have addressed the state analogue in applying various state preclusion rules.

a. <u>Circuit Court Opinions</u>

The First Circuit in *Sonus*, *supra*, is the only federal appellate court to directly answer whether a Rule 23.1(b) dismissal constitutes a final decision on the merits under the claim preclusion doctrine. *Sonus*, 499 F.3d at 62. *Sonus* held that a decision on demand futility was a final judgment on the merits under issue preclusion, as discussed above, but not so under claim preclusion. *Id.* Although *Sonus* applied Massachusetts law, it answered unsettled claim and issue preclusion questions and thus examined the principles on a broader level. *Id.*

*Sonus* ultimately found that applying claim preclusion to a dismissal for failure to plead satisfaction of a precondition to suit is incompatible with the idea that failure to satisfy a precondition generally can be cured. *Id.* at 61–62 ("dismissal of a derivative suit for failure to plead demand or excuse is of course a type of dismissal for inadequate pleadings, [but] it is also a dismissal for failure to accomplish a precondition . . ."). *Sonus* based its conclusion on two Supreme Court precedents. *Id.* at 58, 62. In *Costello v. United States*, the Supreme Court explained dismissal for failure to satisfy a precondition to suit should not trigger claim preclusion if that precondition is satisfied between a first and second suit. 365 U.S. 265, 285–88 (1961). In *Semtek*, *supra*, the Supreme Court concluded a dismissal with prejudice will "ordinarily (though not always)" determine the res judicata question. 531 U.S. at 505. Simply put, the *Sonus* court's holding turned on whether the demand futility issue was "curable."

Although no other circuit court has examined whether a demand futility dismissal constitutes a final decision on the merits for res judicata purposes, several circuits have addressed the question in the context of a prior dismissal for failure to meet a precondition to suit. In these circumstances, federal appellate courts have uniformly held that claim preclusion should not attach. In *Singh v. Gonzales*, the Ninth Circuit reasoned that a prior court's dismissal for failure to exhaust the administrative review process or to comply with *Lozada*'s procedural requirements[3] were not "final judgments on the merits." 499 F.3d 969, 975 (9th Cir. 2007). In

_____

[3] In *Matter of Lozada*, 19 I. & N. Dec. 637, 637 (BIA 1988), the Board of Immigration

17

*Horner v. Ferron*, the Circuit held that a dismissal for appellant's failure to "ma[k]e a preliminary request of union officials to take action" was a "procedural ground which is capable of correction" and therefore res judicata would not prevent appellants from correcting the procedural mistake in a subsequent and independent action. 362 F.2d 224, 230 (9th Cir. 1966). In *Lake Lucerne Civic Ass'n Inc. v. Dolphin Stadium Corp*, the Eleventh Circuit observed "[i]n ordinary circumstances a second action on the same claim is not precluded by dismissal of a first action for prematurity or failure to satisfy a precondition to suit. No more need be done than await maturity, satisfy the precondition, or switch to a different substantive theory that does not depend upon the same precondition." 878 F.2d 1360, 1366 n.7 (11th Cir. 1989) (citation omitted). Each court focused on the curability of the complaint's defect between suits one and two.

### b.  District Court and State Court Decisions

District and state courts that have analyzed the claim preclusive effect of a dismissal for failure to plead demand futility have reached contradictory conclusions. For example, in *Kaplan v. Bennett*, 465 F. Supp. 555 (S.D.N.Y. 1979), a district court in New York ruled that a prior court's dismissal was not final, but in *Henik*, *supra*, 433 F. Supp. 2d at 379–80, a court in the same district concluded a prior dismissal for failure to plead demand futility was a final decision on the merits under both issue and claim preclusion doctrines.

A recent Delaware state court decision has specifically analyzed *Steinberg*'s preclusive effect. *See City of Providence v. Dimon*, No. CV 9692-VCP, 2015 WL 4594150, *6 (Del. Ch. July 29, 2015). In *Providence*, the court held that the *Steinberg* Rule 23.1(b) dismissal was a final judgment on the merits for claim preclusion purposes. *Id.* The *Providence* court, however, applied only New York preclusion law to reach its conclusion. *Id.* (concluding "[t]his Court []is required to give [*Steinberg*'s judgment] the same force and effect as [it] would be afforded in New York courts under the New York law of preclusion.") Because *Steinberg* was a

Appeals held that to perfect an ineffective assistance of counsel claim, the immigrant must first (1) file a motion to reopen, (2) file an affidavit detailing the agreement his counsel allegedly violated, (3) inform the counsel what he did wrong and give him a chance to respond, and (4) explain whether a complaint has been filed with the appropriate authorities regarding counsels' ethical or legal responsibilities, and if not, explain why not. *See id.* at 639. *See also Castillo-Perez v. I.N.S.*, 212 F.3d 518, 525 (9th Cir. 2000) (describing *Lozada*'s holding).

federal court judgment based on federal-question jurisdiction, federal common law rules determine *Steinberg*'s preclusive effect in this court. The *Providence* holding neither acknowledged *Steinberg* was a federal case nor distinguished between *Steinberg*'s federal and state law judgments. *Providence*, therefore, does not inform this court's decision here more than any other nonbinding state law case. Additionally, because *Providence* applied New York preclusion law to assess whether *Steinberg*'s dismissal was a final decision on the merits, that opinion does not provide a basis for issue preclusion, preventing this court from analyzing the same question under the federal common law. New York preclusion rules apply a different framework to answer the question.

Other courts assessing whether a dismissal based on demand futility is a final decision on the merits have focused on whether the failure to plead futility was a fatal error rather than a curable pleading defect. *See, e.g.*, *In re Bed Bath & Beyond Deriv. Litig.*, No. CIV.A. 06-5107(JAP), 2007 WL 4165389, at *7 (D.N.J. Nov. 19, 2007) (applying res judicata after declaring demand futility dismissal a "final decision on the merits" in large part because the cover page of court's dismissal decision was marked "Final Disposition."); *Shearer v. Adams* (*Shearer II*), No. 3:11-00099, 2012 WL 1076299, at *6 (M.D. Tenn. Mar. 29, 2012). *In Shearer II*, the court focused on the finality of the prior court's dismissal for failure to plead demand futility, noting that the prior dismissal was with prejudice and that the plaintiff did not contest the decision's finality at that time. *Shearer II*, 2012 WL 1076299, at *6. Specifically, the court explained, "if there was any question as to whether [the presiding judge] intended to bar subsequent suit based upon the same facts even in light of a new demand, that question was answered when he declined to sign [p]laintiff's proposed order, which would allow [p]laintiff to re-file, and reaffirmed that the dismissal was with prejudice." *Id.*

At least one court, however, has rejected a focus on curability. *See Bazata v. Nat'l Ins. Co. of Wash.*, 400 A.2d 313, 314 (D.C. 1979). In *Bazata*, the plaintiff's first derivative suit was dismissed for failure to make a demand, but the plaintiff later made a demand and refiled. *Id.*. The *Bazata* trial court held that the prior dismissal triggered res judicata because it relied on a substantive analysis as to whether the directors breached their duties: The plaintiff's subsequent

"curing" of the demand defect did not alter this conclusion. *Id.* at 315–16; *but see Ex Parte Capstone Dev. Corp.*, 779 So.2d 1216, 1219 (Ala. 2000) (expressly rejecting *Bazata* and declining to apply res judicata in the same situation).

In sum, the law on whether a prior dismissal based on demand futility precludes a later action based on the same underlying claims is unsettled.

### c. Discussion

Given the absence of controlling authority answering the question whether the *Steinberg* dismissal for failure to plead demand futility is a final decision on the merits for purposes of claim preclusion, this court must fashion a rule drawn from persuasive principles in other cases. The most consistent and persuasive rule recognizes that whether a prior court's Rule 23.1(b) dismissal constitutes a final judgment on the merits depends on whether that court treated the error in not pleading demand futility as fatal rather than curable. In applying this "fatal versus curable" rule here, the court notes an important distinction between a shareholder's omission of sufficient detail to assess if demand was futile, a curable defect, and a shareholder's affirmative pleading of facts that show demand was not futile, a defect more likely to be fatal. The latter would more likely prompt a dismissal that is final for purposes of claim preclusion.

This rule squares with the two Supreme Court precedents on which the First Circuit relied on *Sonus. See Costello*, 365 U.S. at 285–88 (1961) (dismissal for failure to satisfy a precondition to suit should not trigger claim preclusion if that precondition can be satisfied before bringing the second suit); *Semtek*, 531 U.S. at 505 (whether dismissal is with or without prejudice will ordinarily determine the res judicata question). The rule also is consistent with the rationale articulated in *Singh*, 499 F.3d at 974–75, *Horner*, 362 F.2d at 230, and *Lake Lucerne*, 878 F.2d at 1360 n.7. In each of these cases, the court focused on whether the prior dismissal was permanent, and was hesitant to apply claim preclusion where a plaintiff could cure the defect and then properly re-file the claim.

Whether *Steinberg* is preclusive of plaintiffs' federal claim depends on whether the *Steinberg* dismissal was final. The *Steinberg* court did not address finality: It did not expressly say whether the dismissal was with prejudice or whether the pleading defect was curable. But

1    without a contrary directive, the court assumes the dismissal was with prejudice.  *See* Fed. R. Civ.

2    P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision . . .

3    operates as an adjudication on the merits."); *see also Martin v. Beck*, No. 2:14-CV-2956 KJM

4    KJN, 2015 WL 502946, at *2 (E.D. Cal. Feb. 5, 2015) ("[G]enerally, 'a dismissal for failure to

5    state a claim under Rule 12(b)(6) is presumed . . . to be rendered with prejudice.'") (quoting

6    *McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009)); *Isis Pharm., Inc. v. Santaris*

7    *Pharma A/S Corp.*, No. 3:11-CV-2214-GPC-KSC, 2014 WL 4793029, at *2 (S.D. Cal. Sept. 25,

8    2014); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278 n.8 (5th Cir. 1993) ("it is well

9    established that a dismissal is presumed to be with prejudice unless the order explicitly states

10   otherwise").

11        Also, the nature of the opinion and its language indicates that the dismissal for

12   failure to plead demand futility was permanent and final.  As noted above, the *Steinberg* court

13   analyzed the substance of the demand futility issue by assessing the likelihood of success of

14   Steinberg's underlying claims.  *See Steinberg*, 2014 WL 3512848, at *3–5.  After analyzing each

15   claim independently, the court concluded that even if Steinberg could prove all allegations, he

16   could not show demand on the defendant board was futile with respect to any claim; the court

17   granted the defendants' motion to dismiss the complaint, directing the clerk to enter judgment

18   "and close this case." *Id.* at *5.  The court did not mention the potential for amendment or

19   curability, nor did Steinberg ask.  *See generally id.*  In short, *Steinberg* treated the pleading

20   deficiency as a fatal error that could not be cured.

21        The persuasive opinions reviewed above, and res judicata principles generally,

22   compel the conclusion that *Steinberg* was a final decision on the merits.  This conclusion is a

23   narrow one; the court does not determine that dismissal for failure to plead demand futility is

24   always a final decision on the merits for res judicata purposes.  Rather, there are many

25   conceivable scenarios in which a dismissal for failure to plead demand futility may not be a final

26   determination.  In this case, however, defendants have satisfied the first element of res judicata.

27   /////

28   /////

2.  <u>Same Parties</u>

To successfully argue that *Steinberg* precludes plaintiffs from bringing their federal claim, defendants must also show the parties in the *Steinberg* suit are the same parties or in privity with the parties in this action. Plaintiffs do not dispute that they are in privity with Steinberg. *See* Opp'n at 9 (arguing only that *Steinberg* did not involve the same claims).

As a matter of law, plaintiffs and Steinberg are in privity. *Arduini*, 774 F.3d at 633 ("the majority of courts that have addressed this issue have held that shareholders asserting derivative suits are in privity"); *Sonus*, 499 F.3d at 64 ("the prevailing rule [is] that the shareholder in a derivative suit represents the corporation," and "if the shareholder can sue on the corporation's behalf, it follows that the corporation is bound by the results of the suit in subsequent litigation, even if different shareholders prosecute the suits") (citations omitted); *see also Ross v. Bernhard*, 396 U. S. 531, 538 (1970); *Goldman v. Northrop Corp.*, 603 F.2d 106, 109 (9th Cir. 1979).

The defendants in both suits also are in privity despite the slight variation in the set of directors the respective plaintiffs chose to name in the two suits. Altering the mix of director-defendants does not bar claim preclusion unless defendants named only in the second suit either were inadequately represented in the prior suit or were unknown or unavailable at the time of the prior suit. *See Sturgell*, 553 U.S. at 893–84 (parties who share same interests were adequately represented in previous litigation are in privity with parties in previous litigation and their claims are subject to res judicata); *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) (even when parties are not identical, privity exists if there is "sufficient commonality of interest" between the parties) (citation omitted); *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367–68 (2d Cir. 1995); *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir. 1972).

Each defendant named here was known and available when Steinberg filed suit. Plaintiffs raise no contrary arguments. That the two suits were filed within one month of each other reinforces this conclusion. *See* Original Compl., ECF No. 1 (filed March 2014); Steinberg Compl. (filed February 2014). The parties in this case are in privity with the parties in *Steinberg*, which satisfies the second res judicata element.

3.  <u>Same Claims</u>

Finally, to successfully argue that *Steinberg* precludes plaintiffs from bringing their federal claim here, defendants must show plaintiffs' claim is either the same claim or a claim derived from the same underlying facts as Steinberg's claim.  Plaintiffs argue their federal claim is not the same claim because it varies significantly from Steinberg's.

Typically, res judicata principles require that once a claim is brought to a final conclusion, all other claims "aris[ing] out of the same transactional nucleus of facts" are barred. *Frank v. United Airlines, Inc*., 216 F.3d 845, 851 (9th Cir. 2000) (citation omitted).  This doctrine is broad and does "not only bar[] the relitigation of previously litigated claims" but also those "claims that are closely related to the claims unsuccessfully litigated in a prior case." *See Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2340 (2016) (citing *Moitie*, 452 U.S. at 398; *Montana v. United States*, 440 U.S. 147, 153 (1979)); *see also Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir 1982) ("the doctrine of res judicata [] bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties") (internal citation and quotation marks omitted).  Thus, unlike issue preclusion, claim preclusion focuses on what could have been litigated in the prior suit, not what was actually litigated.

The rationale for precluding claims that parties could have brought, but did not, mirrors the rationale underlying issue preclusion: A party who has had a full and fair opportunity to litigate a claim should not be allowed to try again.  *See Kremer v. Chemical Const. Corp*., 456 U.S. 461, 481 n.22 (1982) ("While our previous expressions of the requirement of a full and fair opportunity to litigate have been in the context of collateral estoppel or issue preclusion, it is clear from what follows that invocation of res judicata or claim preclusion is subject to the same limitation.").  Determining what claim could have been litigated in the prior suit involves evaluating what underlying facts generated each claim.  *Woman's Health*, 136 S. Ct. at 2340; *Helfer*, 224 F. 3d at 1128.  Claims in the second suit are barred if they are based on "any part of the transaction, or series of connected transactions, out of which the [prior] action arose." *Woman's Health*, 136 S. Ct. at 2340; *see also Helfer*, 224 F. 3d at 1128 (explaining res judicata

bars subsequent claims that "arise from the same transactional nucleus of facts") (citation omitted).

### a. Parties' Arguments

Plaintiffs do not dispute that their federal claim and Steinberg's federal claim rely, in part, on allegations that JPMorgan's 2011 and 2012 proxy statements contained false or misleading statements regarding effective oversight of risk management. Opp'n at 12. Instead, plaintiffs cite multiple ways in which they say their claim materially differs from Steinberg's and argue "[b]ecause of the material differences . . . neither res judicata nor collateral estoppel is applicable." *Id.* at 13. Plaintiffs maintain that, unlike their claim, Steinberg's claim mentioned neither director independence nor shareholder proposals regarding Dimon's role as chairman as grounds for the proxy statements' falsity. *Id.* at 12 (citing Steinberg Compl. ¶¶ 71–95). Plaintiffs also emphasize the difference in the relief they seek, namely that Steinberg sought monetary damages, while plaintiffs here renounce monetary damages. *Id.* at 13. Plaintiffs add that the *Steinberg* complaint differs materially from theirs because Steinberg's complaint named defendants that plaintiffs did not name: Braunstein, Cavanaugh, Cote, Drew and Gray; and Steinberg's complaint did not name three defendants plaintiffs named: Flynn, Harrison and Lipp. *Id.* at 9. Finally, plaintiffs detail how Steinberg's complaint did not include the extensive allegations or identify defendants' RMBS strategy in California as the fundamental basis for any of their claims. *Id.*

Defendants maintain that plaintiffs miss the mark because claim preclusion applies irrespective of these alleged differences "as long as the same claims were or could have been raised in the prior action." Reply at 8. Alternatively, defendants argue, plaintiffs' argument is factually incorrect because the federal claims in both cases are virtually identical. *Id.*

### b. Discussion

Although the differences between Steinberg's federal claim and the federal claim here are relevant to the court's issue preclusion analysis, they lack force when it comes to claim preclusion. Contrary to plaintiffs' assertions, whether claim preclusion applies does not depend on whether Steinberg's complaint raised the exact facts, theories of recovery, or even prayers for

relief as plaintiffs do here. *Woman's Health*, 136 S. Ct. at 2340; *Constantini v. Trans World Airlines*, 681 F.2d 1201 n.2 (9th Cir. 1982) ("[a]ppellant has apparently confused res judicata with the related but distinct doctrine of collateral estoppel, which does apply only when 'an issue is actually and necessarily determined'") (citation omitted); *Saylor v. Lindsley*, 391 F.2d 965, 969 n.6 (2d Cir. 1968) ("the allegations in both suits clearly pertain to the same disputed transactions and arise out of the same operative facts . . . a new theory does not create a new cause of action.") (citations omitted).

Rather, the claim preclusion analysis turns on whether the federal claims in both suits arise from the same basic events. Plaintiffs cite JPMorgan's 2011 and 2012 proxy statements as grounds for their federal claim; Steinberg relied on the very same documents in bringing her federal claim. *Compare* Steinberg Compl. ¶¶ 273–84, *with* FAC ¶¶ 377–95. Specifically, plaintiffs here allege defendants Dimon, Bell, Bowles, Burke, Cote, Crown, Futter, Gray, Jackson, Novak, Raymond and Weldon "issued, caused to be issued, and participated in the issuance of materially false and misleading written statements and material omissions to shareholders that were contained in the Company's 2011 and 2012 Proxy Statements." FAC ¶ 378. Steinberg's claim mirrors this language but adds one more year: "Defendants Dimon, Bowles, Burke, Cote, Crown, Futter, Jackson, Raymond and Weldon issued, caused to be issued, and participated in the issuance of materially false and misleading written statements to shareholders that were contained in the Company's Proxy Statements issued on April 7, 2011, April 4, 2012, and April 10, 2013." Steinberg Compl. ¶ 277.

The federal claim in each case derives from the same underlying facts. Both claims are based, in large part, on the same 2011 and 2012 proxy statements. That Steinberg's complaint references a 2013 proxy statement as well does not change the complaints' sufficient overlap for claim preclusion purposes. Both claims allege misstatements regarding the independence of the JPMorgan director nominees, the shareholder proposal to divest Dimon of his role as chairman, defendants' misrepresentation of information about the underlying mortgage loans in securities filings, and the omission of material information regarding JPMorgan's true

financial condition and risk management structure. *Compare* Steinberg Compl. ¶¶ 273–84, *with* FAC ¶¶ 377–95. Plaintiffs' federal claim could have brought in *Steinberg*.

To the extent plaintiffs argued claim preclusion does not apply because they have alleged different and better theories of recovery, and more evidence and greater evidentiary support for their claims than Steinberg did, the Supreme Court has expressly rejected that argument: "[The argument that] petitioners now have better evidence than they did at the time of the first case . . . is contrary to a cardinal rule of res judicata, namely, that a plaintiff who loses in a first case cannot later bring the same case simply because it has now gathered better evidence. Claim preclusion, does not contain a 'better evidence' exception." *Woman's Health*, 136 S. Ct. at 2335. Plaintiffs' argument that their alternative set of director defendants prevents the application of claim preclusion fails as well because the substance of plaintiffs' claim derives from the same facts as Steinberg's. To conclude otherwise would frustrate res judicata's purpose.

Defendants have satisfied res judicata's final element: Plaintiffs could have raised their federal claim in *Steinberg* because the same facts form the basis of the claim in each suit. Claim preclusion bars plaintiffs' Securities Act claim as a matter of law.

### E. Conclusion Regarding Preclusion

Because plaintiffs' federal claim is precluded as a matter of law, the court GRANTS defendants' motion to dismiss this claim, with prejudice. As noted above, the court therefore does not have pendent personal jurisdiction over defendants based on plaintiffs' state law claims. The court might still maintain personal jurisdiction over defendants if they have sufficient contacts with California. The court dismissed plaintiff's original complaint in part based on inadequate California-specific contacts to trigger specific personal jurisdiction over defendants. The court now assesses whether plaintiffs' amended complaint has overcome this previous shortcoming.

## V.     PERSONAL JURISDICTION

Defendants all are citizens of states other than California and they resist plaintiffs' efforts to hale them into this court. When, as here, defendants contend the court lacks personal jurisdiction over them, the burden lies with the plaintiffs to allege "facts that if true would support

jurisdiction" over each defendant. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citation omitted). Personal jurisdiction standards differ from state to state; federal courts apply the test of the state in which they sit. *Schwarzenegger*, 374 F.3d at 800 (citation omitted). California's personal jurisdiction test, which mirrors federal due process requirements, mandates "minimum contacts" between the defendant and California such that the court's exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citation omitted); *Schwarzenegger*, 374 F.3d at 800–01. *See also* Cal. Code. Civ. P. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). Plaintiffs can establish jurisdiction in California through two avenues: General personal jurisdiction or specific personal jurisdiction. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984). Plaintiffs here rely on only the latter. Opp'n at 13–20.

California's specific personal jurisdiction test requires plaintiffs to show: (1) Each defendant purposefully directed his or her activities to California or purposefully availed him or herself of California's forum; and (2) plaintiffs' claims arise from or relate to those activities. *Schwarzenegger*, 374 F.3d at 802. If plaintiff makes this showing, then defendants must show that the court's exercising personal jurisdiction over them would be unreasonable or unfair. *Id.*

A. Purposeful Availment Generally

Plaintiffs must first show defendants purposefully directed activities to, or availed themselves of, California. *Id.* Plaintiffs need not prove defendants ever stepped foot in California. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Rather, plaintiffs may show purposeful availment if defendants (1) committed an intentional act (2) aimed at California (3) that they knew would likely cause harm in California. *Schwarzenegger*, 374 F.3d at 803. To be an intentional act, a defendant must have intended to perform the physical act and not just intended its result. *Id.* at 806 (citing Restatement (Second) of Torts § 2 (1964)). Because due process requires defendants' connection with California to be such that they could "reasonably anticipate being haled into court []here," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

286, 297 (1980), plaintiffs must show "something more" than the mere foreseeability that defendants' acts may harm California.  *Schwarzenegger*, 374 F.3d at 805 (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)).  This contextual inquiry depends on the nature of the wrongs plaintiffs allege.  *Id.* at 807.

Here, because JPMorgan is incorporated elsewhere and principally located outside California, plaintiffs must show each defendant had sufficiently purposeful contact with California to warrant haling them into court here.

B.  <u>Purposeful Availment in Shareholder Derivative Suits</u>

Derivative suits are tools for shareholders to protect a corporation from its directors and managers.  *Rosenbloom v. Pyott*, 765 F.3d 1137, 1147 (9th Cir. 2014) (citations omitted).  Although the shareholders are the named plaintiffs, the claims they bring belong to the corporation.  *See id.*; *Kamen*, 500 U.S. at 101.  JPMorgan is a Delaware corporation with its principal place of business in New York.  FAC ¶ 23.  To succeed on their derivative claims, plaintiffs seek to show defendants purposefully directed harm toward the corporation, meaning defendants directed harmful acts toward New York and Delaware.  Yet to withstand a jurisdictional dismissal, plaintiffs must also sufficiently allege defendants directed harmful activities to California.  The court previously has addressed this conundrum.  Prior Order at 7–13.  Finding no controlling authority that discerned a test for assessing specific personal jurisdiction in this scenario, the court looked to other courts' handling of this question.  *Id.*  The parties have not asked the court to reconsider the law of the case, and no intervening authority justifies doing so.  The court thus once again applies the same rule it articulated before.

The court's prior order framed the limitations of specific personal jurisdiction when shareholders derivatively sue directors in a state where the corporation is neither incorporated nor principally located.  In these scenarios, shareholders must plead other foundational facts to connect the defendants to the forum.  *See* Prior Order at 13 (citing *Beene v. Beene*, No. C 11-6717 JSW, 2012 WL 3583021, at *1, 6 (N.D. Cal. Aug. 20, 2012) and *Young v. Colgate-Palmolive Co*., 790 F.2d 567, 570–71 (7th Cir. 1986)).

For example, in *Greenspun*, the Ninth Circuit affirmed the presence of personal jurisdiction where the corporation held board meetings and developed real property in the forum state. *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1206–08 (9th Cir. 1980). In *D'Addario*, a Virginia district court found the exercise of jurisdiction over a Florida corporation's directors proper based in large part on their previous voluntary contacts with that very court. *D'Addario v. Geller*, 264 F. Supp. 2d 367, 381–82 (E.D. Va. 2003) ("defendants cannot reasonably assert unfair surprise at being sued in Virginia, particularly when they have voluntarily presented [the corporation's] financial condition before this court in the salvage action."). Then, in *Doltz*, a Pennsylvania district court found jurisdiction adhered to the directors of a Florida corporation because they wrote paychecks for Pennsylvania-based employees, talked to the Pennsylvania-based plaintiff about company issues frequently, regularly communicated with and visited the Pennsylvania office, and prequalified the company to bid on Pennsylvania jobs. *Doltz v. Harris & Assocs. Grooving, Inc.*, No. CIV.A.01-5458, 2002 WL 524185, at *1–2 (E.D. Pa. Apr. 5, 2002).

In *Openwave*, a California district court found jurisdiction proper when the defendants had no personal contact with California, but had conceived of and participated in a "plan or scheme" targeting California. *See Openwave Sys. Inc. v. Fuld*, No. C 08-5683 SI, 2009 WL 1622164, at *11–12 (N.D. Cal. June 6, 2009). *Openwave* is not a derivative case, but persuasively defines the outer limits of this court's jurisdiction. *See In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 2012 WL 1322884, at *9 (C.D. Cal. April 16, 2012) ("The *Openwave* decision pushes the boundaries of personal jurisdiction, but the *Openwave* plaintiff at least provided an allegation that the out-of-state defendants had specifically directed their actions to California.").

In sum, these cases show that to sustain their derivative action here, plaintiffs must allege foundational facts proving each defendant had direct and purposeful contact with California. And if plaintiffs stake their jurisdiction claim on *Openwave*'s "plan or scheme" premise (rather than a physical presence in the forum) they must "clearly" and "substantially" allege that defendants targeted California. *See* Prior Order at 14. The court dismissed plaintiffs'

initial complaint because it did not meet this standard.  *See id.* at 28–29.  It did not allege defendants intentionally pursued more RMBS business in California than other states, or that defendants "pursued a strategy" to sell RMBS to California investors.

C. Discussion

In their amended complaint, plaintiffs provide more details about JPMorgan's California-specific contacts and business.  *See generally* FAC at 65–88.  Plaintiffs do not aver that defendants ever stepped foot in California, arguing instead defendants were instrumental in enacting a plan that targeted California.  Because plaintiffs stake personal jurisdiction on *Openwave*'s plan or scheme premise, they must "clearly" and "substantially" allege how defendants specifically targeted California to withstand dismissal.  *See* Prior Order at 13–14.

Upon close review, as explained below, the court finds the amended complaint does not offer the link that was missing from plaintiffs' prior complaint.  Plaintiffs now allege that more than half of JPMorgan's subprime loans underlying the RMBS issued between 2005 through 2007 originated in California, *id.* ¶ 222, that JPMorgan purchased the defective loans primarily from California-based originators, *id.* ¶¶ 111, 194–227, and that California was particularly hard hit by the housing collapse that plaintiffs partially attribute to JPMorgan's misconduct, *id.* ¶¶ 194, 198–200, 205, 207, 209, 247.  Plaintiffs also allege JPMorgan's Risk Policy Committee regularly provided defendants California-specific data, *id.* ¶¶ 239–52, and that each defendant knew the harm JPMorgan was causing to California but chose to pursue growth in its business here regardless, *id.* ¶¶ 194, 198–200, 205, 207, 209, 239–52.  Plaintiffs characterize JPMorgan's focus on California's mortgage market as a key component of its unlawful RMBS program.  *Id.* ¶¶ 194–238.  These new allegations, plaintiffs contend, "are sufficient to exercise personal jurisdiction."  Opp'n at 23:12–13.  But they are not, under the law as this court discerns it after much careful consideration.

Although plaintiffs detail JPMorgan's impact in California, this impact, no matter how great, does not establish personal jurisdiction over any individual defendant.  The sheer magnitude of JPMorgan's California-based business, though significant, does not show any defendant targeted California.  Plaintiffs do not mention, let alone argue against, the logical

conclusion that natural market forces, not defendants' purposeful business decisions, could explain California's consistently prominent presence in JPMorgan's business statistics and data reports. Specifically, as defendants argue, California's sizable population and the dynamism of California's real estate market undermine plaintiffs' purposeful direction argument: These factors explain how California could have more of JPMorgan's RMBS business than any other state without any director having pursued a conscious strategy. *See* Mot. at 17. To accept plaintiffs' argument, the court would have to infer that because the individual defendants knew JPMorgan did substantial RMBS business in California, JPMorgan logically was harmed in California, and defendants in knowing as much purposefully directed their actions here. *See* Opp'n at 23. But knowledge does not equate to intent or purposeful direction. The complaint must plead more than the passive receipt of information to establish defendants purposefully directed activity towards California. *See* Prior Order at 16. The amended complaint, including its exhibits, does not suffice.

Plaintiffs' new allegations do not show defendants consciously decided to package more mortgage loans here than in other states, or that any defendant specifically discussed, proposed or approved a California-focused policy. Although plaintiffs add a bare allegation that defendants "targeted" California, FAC ¶ 194, without factual support this statement is an unsupported legal conclusion. *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (court need not accept truth of "a legal conclusion couched as a factual allegation," nor an allegation that contradicts material attached to or incorporated by reference into complaint) (citation omitted). Plaintiffs' opposition brief also proclaims defendants targeted California despite knowing of problems in the RMBS program and the risks it posed; but they cite no supporting allegations and so at this point the court concludes they are unable to do so. *See* Opp'n at 23:10–12.

Many of plaintiffs' exhibits incorporated into the complaint do not discuss California. *See* Exs. D, F, K, M, N, O, Q & R. Of the board documents that do reference California, several relate to the subprime market or real estate market generally; they do not relate to the RMBS activity on which plaintiffs stake their claims. *See* ECF Nos. 122-4 at 36–38 (Ex. L), 122-5 at 9–10 (Ex. P) & 122 -7 at 42–50 (Ex. V) (depicting weakening real estate markets in

many states and regions, including California; ECF Nos. 122-7 at 16–27 (Ex. U), 122-8 at 41–49 (Ex. Y) & 122-8 at 65–75 (Ex. Z) (all displaying graphs and price increases for the housing market across various regions).

Other exhibits address only JPMorgan's home mortgage business: These exhibits not only appear irrelevant to an RMBS-focused lawsuit, but also show a well-diversified, as opposed to California-focused, distribution of outstanding real estate loans. *See* ECF No. 122-2 at 69 (Ex. H) ("the geographic distribution of outstanding consumer real estate loans is well diversified"); ECF No. 122-3 at 72 (Ex. I) (same).

Of the exhibits that reference RMBS activity, not one isolates California. Rather, they show general trends and conditions in multiple states. *See, e.g.*, FAC ¶¶ 254, 261 (citing Exhibit U, showing trends in California plus nine other states, and listing California second of ten states affected by sub-prime mortgages); *id.* ¶ 259 (citing Exhibit X, which explains "market influences on subprime mortgage performance and highlights California, New York, and Florida"); *Id.* ¶ 260 (citing Exhibit Y, showing home mortgage price appreciation across four markets, Los Angeles being the only one in California); *id.* ¶ 262 (citing Exhibit Z pages 70–71 and 76, showing "house price appreciation trends" in southern California, the Midwest and the Northeast); *see also* FAC ¶¶ 46–47, 250, 257–58 (citing Exhibit L, showing signs of weakening in "many regions" including "Massachusetts, California, portions of the Midwest among others," and Exhibits P, V, W, each showing "weaknesses in Massachusetts, California among others" plus "Michigan, Ohio, and other Midwest states").

Plaintiffs might establish jurisdiction by showing defendants targeted a defined group of states, including California. But plaintiffs' allegations, taken together, depict ever-changing trends and regions and do not show purposeful targeting of California alone, or a group of states that includes California. Plaintiffs have not met their jurisdictional burden.

D. Conclusion

Plaintiffs do not sufficiently allege facts showing defendants purposefully directed their activities towards California, either individually or as part of a scheme. Plaintiffs' broad jurisdictional allegations overlook the clarity this court said was needed. Because plaintiffs have

not shown defendants purposefully availed themselves of California, they cannot hale defendants into this court.  In the interest of justice, however, the court will transfer plaintiffs' state claims to the Southern District of New York, rather than dismissing these claims outright.  At hearing, plaintiffs confirmed their preference for transfer over dismissal, if it comes to that.

## VI.  VENUE TRANSFER

Defendants seek transfer of this case under 28 U.S.C. § 1404(a)[5] or § 1406(a).[6] Mot. at 44–49.  Because the court lacks jurisdiction over defendants, transfer is proper only under § 1406(a).  *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of s[ection] 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.").

Rather than dismiss the remaining state law claims based on defendants' insufficient contacts with California, the court elects to transfer these claims to the Southern District of New York where venue and jurisdiction are proper.  *See* 28 U.S.C. § 1401.  The court thus need not analyze the convenience of litigating the case here as compared to New York.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 265–66 (1981)  ("there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum.")

The court therefore GRANTS defendants' alternative motion to transfer plaintiffs' remaining claims to the Southern District of New York.

---

[5] 28 U.S.C. § 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

[6] 28 U.S.C. § 1406(a) provides, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

VII.   <u>CONCLUSION</u>

The court GRANTS defendants' motion to dismiss in part as follows:

(1)   The court DISMISSES with prejudice plaintiffs' fourth claim, alleging violations of section 14(a) of the federal Securities Act, as barred by res judicata;

(2)   The court does not have specific personal jurisdiction over defendants as to plaintiffs' first, second and third state law claims and accordingly TRANSFERS them to the Southern District of New York under 28 U.S.C. § 1406(a); and

(3)   The court DENIES as moot the remainder of defendants' motion to dismiss. This resolves ECF No. 123.

DATED:  June 30, 2017.

_____
UNITED STATES DISTRICT JUDGE